**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **MAY'S DISTRIBUTING CO. INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No.** |
| **v.** | ) | |
| | ) | **2:06-cv-702-MEF** |
| **TOTAL CONTAINMENT, INC., ET AL.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**NOTICE OF FILING**

Come now the Plaintiffs and give Notice of the Filing of the documents attached hereto. Those documents include:

| | | |
|---|---|---|
| 1. | Exhibit A | Memorandum Opinion and Order |
| 2. | Exhibit B | Plaintiff's First Amended Complaint |
| 3. | Exhibit C | Plaintiff's Second Amended Complaint |
| 4. | Exhibit D | Plaintiff's Third Amended Complaint |
| 5. | Exhibit E | Fourth Amended Complaint and Class Definition |

Respectfully submitted,


/s/ Russell Jackson Drake
Attorney for Plaintiffs

**OF COUNSEL:**

Russell Jackson Drake, Esq.
Nicola T. Drake, Esq.
WHATLEY, DRAKE & KALLAS, LLC
2323 2nd Avenue North
Post Office Box 10647
Birmingham, AL  36202-0647
jdrake@whatleydrake.com
ndrake@whatleydrake.com

L. Cooper Rutland, Jr., Esq.
RUTLAND & BRASWELL, LLC
208 North Prairie Street
Union Springs, AL  36089
randb@ustconline.net
randb3@ustconline.net

Wesley L. Laird, Esq.
LAIRD, BAKER & BLACKSTOCK,
LLC
501 North Main Street
Opp, AL 36467
wes@laird-baker-blackstock.com

Lynn W. Jinks, III, Esq.
Jinks, Daniel & Crow
P. O. Box 350
Union Springs, AL  36089
lwj@jinkslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Attorneys for Ticona Polymers, Inc.
Alan T. Rogers, Esq.
BALCH & BINGHAM, LLP
Post Office Box 306
Birmingham, AL 35201-0306
arogers@balch.com
rlaurie@balch.com

Paul A. Clark, Esq.
BALCH & BINGHAM, LLP
Post Office Box 78
Montgomery, AL 36101
pclark@balch.com

Paul M. O'Connor III, Esq.
Seth A. Moskowitz, Esq.
Jon Avins, Esq.
KASOWITZ, BENSON, TORRES &
FRIEDMAN
1633 Broadway
New York, NY  10019-6799
poconnor@kasowitz.com
smoskowitz@kasowitz.com

Walter B. Calton, Esq.
Post Office Box 696
Eufaula, AL  36072-0696
wcalton@bellsouth.net

2

Attorneys for Cleveland Tubing, Inc.
James H. McLemore, Esq.
CAPELL & HOWARD, P.C.
150 South Perry Street (36104)
Post Office Box 2069
Montgomery, Alabama 36102-2069
jhm@chlaw.com

T. Harold Pinkley, Esq.
MILLER & MARTIN, LLP
1200 First Union Tower
150 Fourth Avenue North
Nashville, TN 37219
hpinkley@millermartin.com

Lynda M. Hill, Esq.
James Williams, Esq.
MILLER & MARTIN, PLLC
Suite 1000, Volunteer Bldg.
832 Georgia Avenue
Chattanooga, TN 37402
lhill@millermartin.com
jwilliams@millermartin.com

Attorneys for Dayco Products, Inc.
and Mark IV Industries, Ltd.
Joseph T. Carpenter Esq. (CAR038)
Nathan C. Prater, Esq.
Brian Mosholder, Esq.
John DeShazo, Esq.
CARPENTER, PRATER, INGRAM
& MOSHOLDER LLP
303 Sterling Centre
4121 Carmichael Road
Montgomery, AL 36106
jccarpenter@carpenterfirm.com
nprater@carpenterfirm.com
bmosholder@carpeterfirm.com
jdeshazo@carpenterfirm.com

Kimberly W. Sayoc, Esq.
LIPPES SILVERSTEIN MATHIAS &
WEXLER 700 Guaranty Building
28 Church Street
Buffalo, NY  14202-3950
ksayoc@lippes.com

L. Shane Seaborn, Esq.
Myron C. Penn, Esq.
PENN & SEABORN, LLC
Post Office Box 688
Clayton, AL  36106

Attorneys for Underwriters
Laboratories, Inc.
Walter E. McGowan, Esq.
GRAY, LANGFORD, SAPP,
MCGOWAN, GRAY &
NATHANSON
P.O. Box 830239
Tuskegee, AL  36083-0239
wem@glsmgn.com

Charles Donald, Marshall, III, Esq.
John Olinde, Esq.
Brent Arnold Talbot, Esq..
Robert S. Rooth, Esq.
CHAFFE McCALL, PHILLIPS,
TOLER & SARPY
2300 Energy Centre
1100 Poydras Street
New Orleans, LA  70163
(504) 585-7000
talbot@chaffe.com
olinde@chaffe.com
marshall@chaffe.com
rooth@chaffe.com

James E. Blazek
Adams & Reese, LLP
One Shell Square
701 Poydras Street, Suite 4500
New Orleans, LA  70139

/s/ Russell Jackson Drake
OF COUNSEL

**Exhibit A**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MAY'S DISTRIBUTING COMPANY, INC.)
                                                    )
      PLAINTIFF,                        )
                                                    )
v.                                                  )   CASE NO. 2:04-CV-535-F
                                                    )
TOTAL CONTAINMENT, INC., et al.,                    )
                                                    )
      DEFENDANTS.                      )

## MEMORANDUM OPINION AND ORDER

This cause is now before the Court on Plaintiff's Motion to Remand (Doc. # 25). During the course of its *de novo* review of this motion, the Court has thoroughly considered the numerous submissions of the parties in support of and in opposition to the motion, including the supplemental materials filed in January of 2005. The Court has also received and considered the Report and Recommendation of United States Bankruptcy Judge William R. Sawyer to the United States District Judge (Doc. # 58) and the objection filed in response to the Recommendation (Doc. # 60). For the reasons set forth in this Memorandum Opinion and Order, the Court finds that the Motion to Remand (Doc. # 25) is due to be GRANTED.

### PROCEDURAL HISTORY

On January 3, 2003, Plaintiff May's Distributing Company, Inc. (hereinafter "May's Distributing") filed suit in the Circuit Court for Bullock County, Alabama. May's Distributing named Total Containment, Inc. (hereinafter "Total Containment") and Oil Equipment, Inc. (hereinafter "Oil Equipment") as Defendants. Pursuant to the Alabama Rules of Civil Procedure, May's Distributing also identified a number of fictitious

defendants. Later, May's Distributing filed Plaintiff's First Amended Complaint which added the following defendants in addition to Total Containment and Oil Equipment: Dayco Products, Inc. (hereinafter "Dayco"); Mark IV Industries, Ltd. (hereinafter "Mark IV"); Parker Hannifin Corporation (hereinafter "Parker"); Ticona Polymers, Inc. (hereinafter "Ticona"); Shell Chemical L.P. (hereinafter "Shell"); and Cleveland Tubing, Inc. (hereinafter "Cleveland Tubing"). Subsequently, May's Distributing filed Plaintiff's Second Amended Class Action Complaint which added the following defendants: Atofina Chemicals, Inc. (hereinafter "Atofina"); Elf Atochem North America, Inc. (hereinafter "Elf"); and Underwriters Laboratories (hereinafter "UL").

While the case was pending in the Circuit Court for Bullock County, a number of the defendants filed answers to one or more versions of the Complaint. It also appears that a number of motions were filed, including: (1) May Distributing's Motion to Approve Voluntary Dismissal of Defendant Shell Chemical LP[1]; (2) Ticona's September 19, 2003 Motion to Dismiss; and (3) Atofina's May 10, 2004 Motion to Dismiss or in the Alternative to Abate. These motions were filed with this Court as exhibits to the Notice of Removal (Doc. # 1) when this case was removed to this Court. From the record before this Court, it would appear that none of these motions were addressed by the Circuit Court for Bullock County prior to the removal of the case.

---

[1] Although the Order by the Circuit Court for Bullock County granting this motion was not filed as part of the record with the Notice of Removal, the Court has subsequently received a copy of the Order. Consequently, Shell was terminated as a party to this action.

2

On March 4, 2004, Total Containment filed for bankruptcy protection in the United States Bankruptcy Court for the Eastern District of Pennsylvania. On June 1, 2004, Cleveland Tubing removed this case to this Court pursuant to 28 U.S.C. §§ 1334, 1446, and 1452 and Rule 9027 of the Federal Rules of Bankruptcy Procedure. As grounds for the removal, Cleveland Tubing specifically argued that the outcome of this action will have an effect on the administration of Total Containment's bankruptcy and on the rights and obligations of Total Containment. Cleveland Tubing further argued that Total Containment had agreed to indemnify Cleveland Tubing. Finally, Cleveland Tubing cites the need for the parties in this action to conduct discovery against Total Containment. In sum, Cleveland Tubing contends that this Court has jurisdiction over this matter because it is "related to" Total Containment's bankruptcy.

On July 2, 2004, May's Distributing filed Plaintiff's Motion to Remand (Doc. # 25). On July 20, 2004, Cleveland Tubing's Motion to Transfer Venue (Doc. # 33) was filed. By the motion to transfer, Cleveland Tubing sought to move this case from this Court to the United States District Court for the Eastern District of Pennsylvania. On that same date, Cleveland Tubing's Motion to Stay Decision on Remand (Doc. # 35) pending a ruling on Cleveland Tubing's Motion to Transfer Venue was also filed. Cleveland Tubing also timely submitted a brief (Doc. # 36) in opposition to the Motion to Remand. After May's Distributing filed its reply brief on the Motion to Remand, Cleveland Tubing filed another motion. Cleveland Tubing's Motion to Strike Plaintiff's Reply Brief or in the Alternative Motion for Leave to File a Sur-reply (Doc. # 42) was filed on August 2, 2004. Cleveland

Tubing argued that May's Distributing had raised new substantive legal arguments in its reply brief. Consequently, Cleveland Tubing asked that the new arguments be stricken or that it be given leave to respond in a sur-reply. Rather than striking the new arguments, this Court allowed Cleveland Tubing to submit its sur-reply. May's Distributing filed its opposition (Doc. # 45) to Cleveland Tubing's request that this Court delay its decision on the motion to remand until after decision the motion to transfer venue, and Cleveland Tubing was permitted to file a reply brief on the issue of transfer (Doc. # 48).

After considering the arguments of the parties, this Court declined to entertain the question of the appropriateness of transfer until after it determined that it has subject matter jurisdiction. Accordingly, this Court decided in this case that it would be appropriate to first address the issues raised by the motion to remand. Accordingly, Cleveland Tubing's Motion to Stay Decision on Remand (Doc. # 35) was denied. Pursuant to 28 U.S.C. § 157(c)(1), the Court referred Plaintiff's Motion to Remand (Doc. # 25) to a Judge of the United States Bankruptcy Court for the Middle District of Alabama for proposed findings of fact and conclusions of law. On January 21, 2005, Chief United States Bankruptcy Judge William R. Sawyer provided the requested proposed findings of fact and conclusions of law on Plaintiff's Motion to Remand. Specifically, Judge Sawyer recommended that the motion to remand be granted and that the civil action be remanded to the Circuit Court for Bullock County, Alabama. Cleveland Tubing objects to this recommendation.

## RELEVANT FACTS AND FACTUAL ALLEGATIONS

### A. Factual Predicate for May's Distributing's Claims Against Defendants

4

May's Distributing operates a business that distributes oil and gasoline products and operates convenience stores and retail gasoline stations. May's Distributing alleges that it contracted with Oil Equipment for the installation of flexible underground pipes and sump pump systems distributed by Total Containment and manufactured by Total Containment or one or more fo the other defendants. May's Distributing alleges that the Total Containment pipe was designed, manufactured, marketed, sold, and distributed as a product that safely retains fuel using a pipe within a pipe system for added protection. May's Distributing further alleges that in September of 2002, it learned that the Total Containment pipe was defective and that as a result of either that product defect or alleged defective installation, it was damaged. May's Distributing seeks damages on its own behalf and as a class representative of all those gasoline station owners who are similarly situated.

## B. Relationship Between Total Containment and Cleveland Tubing

Total Containment markets underground piping systems, a portion of which is composed of flexible corrugated pipe. Total Containment's underground piping systems are primarily used in the construction and retrofitting of gasoline service stations and other facilities which move and contain the flow of liquid fuels. Cleveland Tubing had experience and expertise in the manufacture of flexible corrugated pipe like that used in Total Containment's underground piping systems.

Total Containment was looking for a source for corrugated secondary containment pipe and Cleveland Tubing was willing to manufacture this pipe for Total Containment. Total Containment and Cleveland Tubing entered into a letter agreement dated November

5

12, 1990, by the terms of which Cleveland Tubing was to manufacture and supply pipe to Total Containment.

On December 2, 1992, Cleveland Tubing and Total Containment entered into a more formal supply agreement. By the terms of the December 2, 1992 Supply Agreement, Cleveland Tubing was to manufacture, sell and deliver exclusively to Total Containment and to no other customer and Total Containment was to exclusively purchase from Cleveland Tubing and from no other supplier the pipe Total Containment needed in North American in conjunction with its underground piping systems. As part of this Supply Agreement, Total Containment agreed to provide Cleveland Tubing with forecasts of its future requirements on a reasonably timely basis. Pursuant to this Supply Agreement, Cleveland Tubing agreed to utilize standard quality control procedures to assure Total Containment is provided with pipe of high quality particularly in light of its intended use. Cleveland Tubing also warranted and represented that the pipe it supplied to Total Containment would be manufactured in accordance with applicable federal, state, country and local laws, regulations and orders. The Supply Agreement also affirmed that the parties had agreed upon certain molds, extrusion dies, and specifications for the pipe to be supplied. The Supply Agreement contained provisions addressing confidentiality, the term and termination of the agreement, a non-competition agreement, a limited warranty from Cleveland Tubing that the pipe was free from defects in material and workmanship when used for it intended purposes without misuse or abuse. The Supply Agreement contained choice of law provision which made Pennsylvania law applicable to the agreement. The Supply Agreement addressed patent

6

infringement issues, force majeure, trade names and trademarks, interpretation of the agreement and severability, and other issues.

For purposes of the motion before this Court, perhaps the most important provisions of the 1992 Supply Agreement are the provisions on indemnification. In Section 8.1, Cleveland Tubing agrees to indemnify Total Containment for certain claims suits and proceedings. In Section 8.2, Total Containment agreed to indemnify Cleveland Tubing for certain claims, suits, or proceedings. Those sections of the 1992 Supply Agreement provide as follows:

> 8.1 Except for claims for patent infringement, which are subject to Article IX, [Cleveland] Tubing shall, at its own expense, defend, indemnify, and hold [Total Containment] harmless from and against any and all claims, suits, or proceedings by third parties for losses and damages in any way arising out of or based upon the manufacture of the Pipe by [Cleveland Tubing] or any subcontractor of [Cleveland Tubing] under this Agreement, or the performance of [Cleveland Tubing's] obligations under this Agreement. Such losses and damages shall include any reasonable attorneys' fees and costs [Total Containment] incurs in such defense. [Total Containment] shall give [Cleveland Tubing] prompt notice, in writing, of any such claim, suit or proceeding. [Total Containment] shall also permit [Cleveland Tubing], through [Cleveland Tubing's] counsel, to defend the same under its full control and give [Cleveland Tubing] all information, assistance and authority to enable it to do so.

> 8.2 Except for claims of patent infringement, which are subject to Article IX, [Total Containment] shall, at its own expense, defend, indemnify and hold [Cleveland Tubing] harmless from and against any and all claims, suits, or proceedings by third parties for losses and damages based upon the performance of [Total Containment's] obligations under this Agreement. Such losses and damages shall include any reasonable attorneys' fees and costs [Cleveland Tubing] incurs in the defense of same.

7

> [Cleveland Tubing] shall give [Total Containment] prompt
> notice, in writing, of any such claim, suit, or proceeding.
> Tubing shall also permit [Total Containment], through [Total
> Containment's counsel], to defend the same under its control
> and give [Total Containment] all information, assistance, and
> authority to enable it to do so.

Art. VIII, Indemnification December 2, 1992 Supply Agreement Ex to Notice of Removal

(Doc. # 1).

On November 20, 1997, Cleveland Tubing and Total Containment entered into a new

Supply Agreement. Once again, Cleveland Tubing agreed to manufacture, sell and deliver

pipe exclusively to Total Containment and Total Containment agreed to purchase pipe from

Cleveland Tubing. Cleveland Tubing agreed to utilize certain specified quality control

procedures and to manufacture pipe to comply with Total Containment's written

specifications. Total Containment agreed to provide forecasts of its future requirements.

The 1997 Supply Agreement further provided that Total Containment could provide an on-

site person to inspect all phases in the manufacture of the pipe. Like the 1992 Supply

Agreement, the 1997 Supply Agreement addressed a wide variety of other topics and

included indemnification provisions. Those indemnification provisions are set forth below:

> 8.1 Except for claims for patent infringement, which are subject
> to Article IX, [Cleveland Tubing] shall, at its own expense,
> defend, indemnify, and hold [Total Containment] harmless from
> and against any and all claims, suits, fines, penalties or
> proceedings by third parties for losses and damages in any way
> arising out of or based upon the performance of Cleveland's
> obligations under this Agreement; provided that this section 8.1
> shall not be interpreted, and is not intended, to provide for
> indemnification for claims against [Total Containment] resulting
> from the design of the product or from materials provided or

8

specified by [Total Containment]. Such losses and damages shall include any reasonable attorneys' fees and costs [Total Containment] incurs in such defense. [Total Containment] shall give [Cleveland Tubing] prompt notice, in writing, of any such claim, suit or proceeding. [Total Containment] shall also permit [Cleveland Tubing], through [Cleveland Tubing's] counsel, to defendant the same under its full control and give [Cleveland Tubing] all information, assistance and authority to enable it to do so.

8.2 Except for claims of patent infringement, which are subject to Article IX, [Total Containment] shall, at its own expense, defend, indemnify and hold [Cleveland Tubing] harmless from and against any and all claims, suits, or proceedings by third parties for losses and damages based upon [Total Containment's] performance of its obligations under this Agreement, including any claim against [Cleveland Tubing] resulting from the design of the product or from materials supplied by [Total Containment]. Such losses and damages shall include any reasonable attorneys' fees and costs [Cleveland Tubing] incurs in the defense of the same. [Cleveland Tubing] shall give [Total Containment] prompt notice, in writing, of any such claim, suit, or proceeding. [Cleveland Tubing] shall also permit [Total Containment], through [Total Containment's] counsel, to defend the same under its control and give [Total Containment] all information, assistance and authority to enable it to do so.

Art. VIII, Indemnification November 20, 1997 Supply Agreement Ex to Notice of Removal (Doc. # 1).

## DISCUSSION

In the Plaintiff's Motion to Remand (Doc. # 25), May's Distributing seeks remand of this action for three reasons[2]: (1) a procedural defect in the notice of removal due to the

---

[2] In its reply brief, May's Distributing raises new procedural arguments in support of removal not alluded to in its original motion, such as the timeliness of the removal, waiver

9

failure of all defendants to unanimously join in the removal petition; (2) a lack of subject

matter jurisdiction over this action because it is not "related to" the bankruptcy of Total

Containment as alleged; and (3) its contention that this Court should abstain from hearing

this matter and return it to its state court forum pursuant to 28 U.S.C. § 1334(c) or general

equitable grounds. This Memorandum Opinion and Order will focus on the second and third

arguments for remand.[3]

**A.  Subject Matter Jurisdiction Pursuant to 28 U.S.C. § 1334(b)**

> **1.     Cleveland Tubing's Objection To The Recommendations Assessment of
> the Contractual Indemnification Provisions Between Total Containment
> and Cleveland Tubing.**

The claimed statutory basis for subject matter jurisdiction over this action is 28 U.S.C.

---

of the right to remove by litigation in state court.  Because this Court is persuaded by the
more substantive grounds for remand, the Court need not and will not address these
procedural grounds, which arguably were waived by May's Distributing's failure to timely
raise them.

[3] It appears to the Court that the first ground is not an appropriate ground for remand
of this action.  Plaintiff's "rule of unanimity" argument is plainly a procedural defect in the
removal rather than a substantive argument that subject matter jurisdiction is lacking.
Procedural defects must be raised in motions to remand filed within thirty days of the filing
of the Notice of Removal.  When they are not so raised, they are waived.  In this case, the
Notice of Removal was filed on June 1, 2004.  Accordingly, the Plaintiff's Motion to
Remand (Doc. #25), which was not filed until July 2, 2004, was filed too late to raise any
procedural defects in the removal because it was filed more than thirty days after the Notice
of Removal was filed.  Nevertheless, the Court, like the Bankruptcy Judge in his
Recommendation, need not reach this basis for remand, nor any of the arguments relating to
procedural defects whether raised in the motion to remand or thereafter, because it is
persuaded by Plaintiff's substantive arguments on subject matter jurisdiction and abstention.

§ 1334(b), which provides that

> Notwithstanding any Act of Congress that confers exclusive
> jurisdiction on a court or courts other than the district courts, the
> district courts shall have original but not exclusive jurisdiction
> of all civil proceedings arising under title 11, or arising in or
> related to cases under title 11.

28 U.S.C. § 1334(b). The sole contention in support of removal is that this case is "related

to" a case under title 11, namely Total Containment's bankruptcy. The Recommendation of

Judge Sawyer is that this Court find that in the circumstances of this case, there is no "related

to" jurisdiction within the meaning of § 1334(b) and for that reason the case should be

remanded. Specifically, the Recommendation finds that this civil action is a mere precursor

to any potential liability owed by Total Containment to Cleveland Tubing under the

indemnification agreements between them. This Court agrees.

As this Court has explained recently,

> The test for determining whether a civil proceeding is related to
> bankruptcy is whether the outcome of the proceeding could
> conceivably have an effect on the estate being administered in
> bankruptcy. The proceeding need not necessarily be against the
> debtor or the debtor's property.   An action is related to
> bankruptcy if the outcome could alter the debtor's rights,
> liabilities, options, or freedom of action (either positively or
> negatively) and which in any way impacts upon the handling and
> administration of the estate.

*Transouth Fin. Corp. v. Murry,* 311 B.R. 99, 105-06 (M.D. Ala. 2004) (citing *In re Toledo,*

170 F.3d 1340, 1345 (11th Cir. 1999) and *Miller v. Kemira, Inc.,* 910 F.2d 784 (11th Cir.

1990)). "The key word ... [in the] test is 'conceivable,' which makes the jurisdictional grant

extremely broad." *In re Toledo,* 170 F.3d at 1345. Nevertheless, this broad jurisdictional

grant is not so broad as to bring a case within the scope of § 1334(b) merely because there may be common issue of fact between a civil proceeding and a controversy involving the bankruptcy estate and judicial economy alone does not justify federal jurisdiction. *See, e.g., Pacor, Inc. v. Higgins*, 743 F.2d 984, 994-95 (3rd Cir. 1984)[4]. Moreover, as noted by Judge Sawyer, there is ample authority for the proposition that a potential claim for contribution or indemnification between Cleveland Tubing and Total Containment is not sufficient to create "related to" jurisdiction.

This Court finds that contrary to Cleveland Tubing's assertions any claims between Cleveland Tubing and Total Containment pursuant to either the 1992 or the 1997 Supply Agreements are merely potential indemnity claims and as such they are not sufficient to create "related to" jurisdiction over this action. Like the indemnification which existed in the *Pacor* case, the indemnification agreements at issue in this case are contingent. Just because Cleveland Tubing is claiming that its indemnification rights have been implicated and has filed a claim for attorneys' fees incurred to date in this litigation does not mean that there has been an adjudication that the indemnification provision of the Supply Agreements have been implicated or that the outcome of this litigation could conceivably have an effect on Total Containment's bankruptcy estate.

     **2.**     **Cleveland Tubing's Objection Relating to the Import of the Lifting of the Automatic Stay**

---

[4] The Eleventh Circuit Court of Appeals adopted the *Pacor* test in *Miller,* 910 F.2d at 787-88.

On or about November 7, 2004, May's Distributing filed a motion with the United

States Bankruptcy Court for the Eastern District of Pennsylvania in Bankruptcy Case No.:

04-13144BIF. After making a variety of arguably misrepresentations to the Bankruptcy

Court, May's Distributing sought relief from the automatic stay which existed by virtue of

Total Containment's bankruptcy. The Bankruptcy Court in Pennsylvania entered the Order

proposed by May's Distributing noting on it that it was entered by default. On January 12,

2005, May's Distributing filed a copy of the Bankruptcy Court Order with this Court and

argued that as a result of that Order, this Court had no jurisdiction over this case. Cleveland

Tubing promptly filed a response to May's Distributing's submission arguing that the Order

was obtained improperly and that May's Distributing's arguments were void of merit and

irrelevant. At the instruction of the undersigned, both filings (Doc. # 56 and Doc. # 57) were

immediately delivered to Judge Sawyer. While it is true that he does not mention them in the

Recommendation, it is not true, as Cleveland Tubing claims in its objection, that he had no

opportunity to consider them.

Ironically, after vigorously arguing on January 17, 2005 (Doc. # 57) that the Order of

the Pennsylvania Bankruptcy was not binding on this Court and irrelevant to this Court's

jurisdiction, in its February 7, 2005, Cleveland Tubing now claims that the lifting of the stay

is a crucial change in the circumstances of the case which supports a finding that "related to"

jurisdiction exists. Specifically, Cleveland Tubing now contends that the lifting of the stay

shows that May's Distributing intends to proceed with its claims against Total Containment

in this action and that it is able to do so which necessarily means that this action is "related

13

to" Total Containment's bankruptcy proceedings.

Cleveland Tubing also vigorously argues that the fact that different plaintiffs who have sued Total Containment in a separate lawsuit in Louisiana have conceded that there exists "related to" jurisdiction over that action because it has a potential to deplete the assets of Total Containment's bankruptcy estate supports its contention that there exists "related to" jurisdiction in this case. As a starting point, the Court notes that the attorneys or plaintiffs in the Louisiana case have for strategic reasons of their own conceded a legal point rather than contesting it. The plaintiff's attorneys in this case have elected a different strategy and are contesting the existence of "related to" jurisdiction. A case in which the adversary system is functioning such as this one arguably leaves a court in a better position to determine the merits of a given issue.

This Court does not agree with May's Distributing's bald assertion that the lifting of the stay in Pennsylvania strips this Court of any arguable basis for "related to" jurisdiction. On the other hand, the Court is also not persuaded by Cleveland Tubing's contention that the lifting of the stay, in the circumstances presented by this case, constitutes a more solid ground for a finding that "related to" jurisdiction exists over this action. If, as Cleveland Tubing contends, the Order was a product of some fraud on the Bankruptcy Court, it would seem that the Order could be rescinded or altered upon a proper motion.

**B. Permissive Abstention Pursuant to 28 U.S.C. § 1334(c)(1)**

Assuming *arguendo* that this Court "related to" jurisdiction over this action, May's Distributing asks this Court to abstain from entertaining this action and invokes 28 U.S.C.

14

§ 1334(c)(1). Section 1334(c)(1) provides as follows:

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1). Courts addressing a question of permissive abstention may consider

the twelve non-exclusive factors.

> Although [§ 1334(c)(1)] does not provide specific factors to be considered, courts have developed a set of considerations to aid in the determination of whether abstention in this context is warranted: (1) the effect, or lack thereof, on the efficient administration of the bankruptcy estate if the discretionary abstention is exercised, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of related proceedings commenced in state court or other non-bankruptcy courts, (5) the jurisdictional basis, if any, other than § 1334, (6) the degree of relatedness or remoteness of the proceedings to the main bankruptcy case, (7) the substance rather than the form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden on the bankruptcy court's docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to jury trial, and (12) the presence in the proceeding of non-debtor parties. *See Cassidy v. Wyeth-Ayerst Laboratories*, 42 F. Supp. 2d 1260, 1263 (M.D. Ala. 1999) (citing *Matter of Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 6 F.3d 1184, 1189 (7th Cir. 1993)).

*Retirement Sys. of Ala. v. Merrill Lynch & Co.*, 209 F. Supp. 2d 1257, 1267-68 (M.D. Ala. 2002).

15

The Recommendation clearly and accurately sets forth the twelve factors to be analyzed and then concludes that this case is a proper case for permissive abstention. Cleveland Tubing does not dispute that the twelve factors noted are the ones to be analyzed. Instead, Cleveland Tubing objects to the discussion in the Recommendation of certain of the factors and to the conclusion that the balancing of the factors supports abstention in this case.

The Recommendation finds, and Cleveland Tubing does not dispute, that the third, seventh, eighth, and eleventh factors either are inapplicable or do not favor either party. Moreover, there is no dispute that of the remaining eight factors, the second, tenth and twelfth factors favor remand. Cleveland Tubing objects to the analysis in the Recommendation of the first, fourth, fifth, sixth, and ninth factors.

With respect to the first factor, the Court is not persuaded that the exercise of permissive abstention in this case would have an effect on the efficient administration of the bankruptcy estate. Moreover, this Court is not persuaded that this action is more than remotely related to Total Containment's bankruptcy, if it is at all related. Consequently, the Court finds that the first and sixth factors favor abstention and remand. The Court agrees with Cleveland Tubing that the existence of the Louisiana litigation arguably favors the continued exercise of jurisdiction by this Court; thus, the Court finds that the fourth factor does not favor remand and abstention in this case. The Court finds no merit whatsoever in Cleveland Tubing's objection to the Recommendation on the fifth factor. The issue before this Court is the existence of subject matter jurisdiction as of the time of the Notice of Removal. It is beyond dispute that the sole predicate for subject matter jurisdiction

16

articulated in the Notice of Removal is § 1334. Cleveland Tubing argues that in the last several months a voluntary act of May's Distributing, namely the dismissal of its claims against a non-diverse defendant, has created another basis for subject matter jurisdiction, namely diversity. Nonetheless, Cleveland Tubing has never amended its Notice of Removal to assert this additional basis for jurisdiction and consequently, it is not properly before this Court. This is especially true, where as here, the time for removal pursuant to the diversity statute has now expired. Thus, the Recommendation correctly notes that there is no basis other than § 1334 properly before this Court and the fifth factor favors remand and abstention. The Court overrules Cleveland Tubing's objection to the Recommendation with respect to the ninth factor and finds that it too favors remand and abstention.

This Court also agrees that when all the relevant factors for permissive abstention are balanced and considered as a whole, permissive abstention is appropriate in this case. Accordingly, the Court finds that even if there is some arguable basis for subject matter jurisdiction pursuant to § 1334, permissive abstention and remand are appropriate.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED as follows:

(1) To the extent that the Report and Recommendation of United States Bankruptcy Judge William R. Sawyer to the United States District Court (Doc. # 58) is consistent with this Memorandum Opinion and Order, it ADOPTED.

(2) To the extent that Cleveland Tubing has objected, in Cleveland Tubing, Inc.'s Objections to the Report and Recommendations of United States Bankruptcy Judge William

R. Sawyer to the United States District Court (Doc. # 60), to some portion of the Report and Recommendation of United States Bankruptcy Judge William R. Sawyer to the United States District Court (Doc. # 58), the objections are OVERRULED.

(3) Plaintiff's Motion to Remand (Doc. # 25) is GRANTED.

(4) It is hereby ORDERED that this case is REMANDED to the Circuit Court for Bullock County, Alabama.

(5) The Clerk is DIRECTED to take appropriate steps to promptly effect the remand.

(6)  Any pending motions are left for resolution by the Circuit Court for Bullock County, Alabama.

DONE this the 16th day of February, 2005.


                                    /s/ Mark E. Fuller
                          _____
                          CHIEF UNITED STATES DISTRICT JUDGE

18

**Exhibit B**



COPY

*Filed 7-3-03*

# IN THE CIRCUIT COURT OF BULLOCK COUNTY, ALABAMA

May's Distributing Company, Inc.,        )
individually and as class representative of  )
all those gasoline station owners similarly  )
situated,                                     )
                                    )
       Plaintiff,                           )
                                     )
       vs.                                  )     Civil Action No. 03-02
                                     )
Total Containment, Inc.,                      )
Oil Equipment Company, Inc.,                  )
Dayco Products, Inc.,                         )
Mark IV Industries, Ltd.                      )
Parker Hannifin Corporation,                  )
Ticona Polymers, Inc., Shell Chemical, LP,    )
Cleveland Tubing, Inc.,                       )
and Fictitious Defendants A through FF,       )
those individuals, partnerships,              )
corporations, sole proprietorships, or other  )
entities whose identities are unknown at      )
the present time but whose names will be      )
substituted by amendment when ascertained,    )
                                     )
       Defendants.                          )

## PLAINTIFF'S FIRST AMENDED COMPLAINT

### Parties

1.     Plaintiff May's Distributing Company, Inc. (hereinafter referred to as "May's") is a corporation incorporated under the laws of the state of Alabama with its principle place of business being at 102 Martin Luther King Blvd., Union Springs in Bullock County, Alabama. Plaintiff operates a business that distributes oil and gasoline products and operates convenience stores and motor fuel dispensing facilities, including convenience stores and motor fuel dispensing facilities in Bullock County, Alabama. May's brings this suit individually and on behalf of all those motor fuel dispensing facility owners similarly situated in the United States.

2.     Defendant Total Containment, Inc. (hereinafter referred to as "TCI") is a foreign corporation incorporated under the laws of the State of Pennsylvania. TCI does business in the State of Alabama. TCI manufactures, sells and distributes underground thermoplastic flexible pipe and sump systems (hereinafter referred to as "flexible pipe") for use at motor fuel dispensing facilities.

3.     Defendant Oil Equipment Company, Inc. (hereinafter referred to as "OEC") is a

corporation incorporated under the laws of the state of Alabama with its principle place of business at 511 North 11th Street, Birmingham, Jefferson County, Alabama 35203. OEC installs flexible pipe for use at motor fuel dispensing facilities.

4.    Defendant Dayco Products, Inc. ("Dayco") is a foreign corporation incorporated under the laws of Delaware. Dayco does business in the State of Alabama. Dayco designs, manufactures, sells and distributes component parts of flexible pipe which were provided and/or sold to TCI.

5.    Defendant Mark IV Industries, Ltd. ("Mark IV") is a foreign corporation incorporated under the laws of Canada. Mark IV does business in the State of Alabama directly and/or indirectly. Mark IV is a successor entity to Defendant Dayco Products, Inc.

6.    Defendant Parker Hannifin Corporation ("Parker Hannifin") is a foreign corporation incorporated under the laws of Ohio. Parker Hannifin does business in the State of Alabama. Parker Hannifin presently is a successor entity to Defendant Dayco Products, Inc.

7.    Defendant Ticona Polymers, Inc. ("Ticona") is a foreign corporation incorporated under the laws of Delaware. Ticona does business in the State of Alabama directly and/or indirectly. Ticona designs, manufactures, sells and distributes component parts of flexible pipe which were provided and/or sold to TCI.

8.    Defendant Shell Chemical, LP ("Shell") is a foreign corporation incorporated under the laws of Delaware. Shell does business in the State of Alabama. Shell designs, manufactures, sells and distributes component parts of flexible pipe which were provided and/or sold to TCI.

9.    Defendant Cleveland Tubing, Inc. ("Cleveland") is a foreign corporation incorporated under the laws of Tennessee. Cleveland does business in the State of Alabama. Cleveland designs, manufactures, sells and distributes component parts, specifically the secondary containment pipe) of flexible pipe which were provided and/or sold to TCI.

10.    Fictitious defendants A through F, whether singular or plural, are those individuals, partnerships, sole proprietorships, corporations, or other entities which designed the underground thermoplastic flexible pipe and sump systems or the components thereof which were manufactured, sold and/or distributed by TCI (hereinafter referred to as the "TCI flexible pipe product").

11.    Fictitious defendants G through M, whether singular or plural, are those individuals, partnerships, sole proprietorships, corporations, or other entities which manufactured, sold and/or distributed the TCI flexible pipe product.

12.    Fictitious defendants N through R, whether singular or plural, are those individuals, partnerships, sole proprietorships, corporations or other entities which marketed, supplied and/or distributed the TCI flexible pipe product.

13.    Fictitious defendants S through Z, whether singular or plural, are those individuals, partnerships, sole proprietorships, corporations or other entities which designed, manufactured, marketed, supplied and/or distributed liner thermoplastics or other materials used by all defendants (including fictitious defendants).

14.    Fictitious defendants AA through FF, whether singular or plural, are those individuals, partnerships, sole proprietorships, corporations, or other entities which are responsible for any or all of the liabilities of defendants (including fictitious defendants) named herein.

## Jurisdiction and Venue

15.    This Court has jurisdiction of this case pursuant to § 12-11-30 of the Code of Alabama.

16.    Defendants do business directly, indirectly and/or by agent in Alabama, including in this Circuit.

17.    Venue is proper in this Court pursuant to Rule 82, Ala.R.Civ.P. and Code of Alabama § 6-3-7.

## Statement of Facts

18.    In 1997, May's contracted with OEC to install underground thermoplastic flexible pipes and sump systems distributed by TCI and designed and manufactured by one or more of the following defendants:  Dayco; Mark IV, Parker Hannifin; Ticona; Shell; Cleveland; and/or Fictitious Defendants A through Z at its convenience store and gas station

19.    The pipe to be installed was TCI flexible pipe. The TCI flexible pipe was designed, manufactured, marketed, sold, and distributed as a product that safely retains fuel, utilizing a pipe within a pipe system for added protection.

20.    OEC installed the TCI flexible pipe as specified by the contract.  On or about September 5, 2002, May's discovered that the TCI flexible pipe is defective.  OEC inspected and tested the TCI flexible pipe and discovered that its properties had changed in that it permitted permeation of fuel outside the barriers of the TCI flexible pipe, and that it failed to retain its shape and rigidity, by elongation, swelling and other defects.

21.    Plaintiff May's suffered damages as a result of the defective TCI flexible pipe.

## Class Action Allegations

22.    The Plaintiff brings this action, under Alabama common law and statutes, individually and on behalf of a class of similarly situated persons located throughout the United States.

23.    The class is so numerous that joinder of all members of the class is impracticable.  Because of the wide use of flexible pipe and sump systems at motor fuel dispensing facilities over a substantial period of time in the United States, Plaintiff believes there are thousands of members of the class.

24.    There are questions of law and fact common to the class.  The principal common issues for the Class are:

a.    Whether the TCI flexible pipe is defective;

b.    Whether the components of the TCI flexible pipe are defective;

c.    Whether the defendants knew or should have known that the TCI flexible pipe was defective;

d.    Whether the defendants knowingly sold a defective product;

e.    Whether the conduct of the defendants was fraudulent;

f.    Whether the conduct of the defendants constituted negligence, recklessness and/or wantonness in regard to the class;

g.    Whether defendants negligently, recklessly and/or wantonly designed, manufactured and/or marketed TCI flexible pipe;

h.    Whether defendants failed to adequately inspect or test the TCI flexible pipe;

i.    Whether defendants failed to give warnings or to give adequate warnings regarding the limitations of the TCI flexible pipe;

j.    Whether defendants made an express warranty(ies) concerning TCI flexible pipe;

k.    Whether the defendants breached an express warranty(ies) regarding the TCI flexible pipe;

l.    Whether the defendants breached an implied warranty(ies) regarding the TCI flexible pipe.

25.    The claims of the plaintiff are typical of the claims of the class and the plaintiff will fairly and are based on and arise out of the same facts constituting the wrongful conduct of the defendants.

26.    Plaintiff will adequately protect the interest of the class.  To that end, plaintiff has retained counsel experienced in class action litigation.  Neither plaintiff nor its counsel have any interest which might cause them not to vigorously pursue this action.

27.    The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the defendants herein.

28.    A class action is superior to any other available method, if there is any, for the fair and efficient adjudication of this controversy.

29.    There will be no difficulty in the management of this action as a class action.

## Count One –Negligence
### (against Defendant OEC)

30.    Plaintiff adopts and incorporates the allegations of all prior paragraphs herein.

31.    OEC had a duty to properly install the TCI flexible pipe and negligently installed the said TCI flexible pipe.

32.    As a proximate result of said negligence, the TCI flexible pipe failed and Plaintiff May's will be caused to replace and repair said TCI flexible pipe, and will suffer damages therefrom, including, but not limited to, the cost of replacement of the TCI flexible pipe, the cost of cleanup of any spills, and other costs associated therewith.

WHEREFORE, the premises considered, Plaintiff demands judgment against defendant OEC for such compensatory damages as the evidence supports and a jury awards, plus costs of suit.

## Count Two – Wantonness
### (against Defendant OEC)

33.    Plaintiff adopts and incorporates the allegations of all prior paragraphs herein.

34.    OEC wantonly installed the TCI flexible pipe.

35.    As a proximate result of said wantonness, the TCI flexible pipe failed.

36.    As a proximate result of said wantonness, the TCI flexible pipe failed and Plaintiff May's will be caused to replace and repair said TCI flexible pipe, and will suffer damages therefrom, including, but not limited to, the cost of replacement of the TCI flexible pipe, the cost of cleanup of any spills, and other costs associated therewith.

WHEREFORE, the premises considered, Plaintiff demands judgment against defendant OEC for such compensatory damages as the evidence supports and a jury awards, a separate amount in punitive damages, plus costs of suit.

## Count Three – Breach of Warranty of Fitness for a Particular Purpose
### and Merchantability
### (against all Defendants except OEC)

37.    Plaintiff adopts and incorporates the allegations of all prior paragraphs herein.

38.    Defendants TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Shell, Cleveland and fictitious defendants A through Z were merchants with respect to the TCI flexible pipe complained of and sold the pipe in question to plaintiff. The TCI flexible pipe was designed, manufactured, and sold for the purpose of containing gasoline, a product that is inherently explosive and dangerous, and was used by plaintiff solely for the purpose for which it was intended.

39.    The TCI flexible pipe was defective and unmerchantable. Said TCI flexible pipe failed by leaking, permeating fuels, failing to retain its properties including (but not limited to) shape, rigidity and permeation. Said TCI flexible pipe no longer will contain fuel, therefore, it is no longer fit for the purpose for which it was designed, manufactured, and sold.

40.    As a proximate result of this defect, Plaintiff May's TCI flexible pipe failed and leaked and Plaintiff May's will be caused to replace and repair said product, and will suffer

damages therefrom, including, but not limited to, the cost of replacement of the TCI flexible pipe system, the cost of cleanup of any spills, and other costs associated therewith.

WHEREFORE, the premises considered, Plaintiff demands judgment against defendants TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Shell, Cleveland and fictitious defendants A through FF for such compensatory damages as the evidence supports and a jury awards, a separate amount in punitive damages, plus costs of suit.

## Count Four –Misrepresentation
### (against all Defendants except OEC)

41.    Plaintiff adopts and incorporates the allegations of all prior paragraphs herein.

42.    Prior to entering into the contract to install the TCI flexible pipe, Defendants TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Shell, Cleveland and fictitious defendants A through Z innocently, negligently, wantonly, willfully, oppressively, maliciously, or intentionally represented falsely that the TCI flexible pipe was the state of the art underground pipe system for petroleum fuel. TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Shell, Cleveland and fictitious defendants A through Z further represented that the TCI flexible pipe was designed to contain fuel products under pressure and was designed to be installed at motor fuel dispensing facilities to connect the fuel pump with the underground storage tanks. TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Shell, Cleveland and fictitious defendants A through Z further represented that the TCI flexible pipe would not fail or permeate fuels (or otherwise leak) for at least thirty years and that in the event that the inner pipe did leak, the outer pipe would contain the fuel and prevent any spill into the ground.

43.    Plaintiff detrimentally relied on these representations in entering into the contract and in causing the TCI flexible pipe to be installed.

44.    As a proximate result of said misrepresentation, the Plaintiff May's suffered damage as the TCI flexible pipe failed and leaked. Plaintiff May's will be caused to replace and repair said TCI flexible pipe, and will suffer damages therefrom, including, but not limited to, the cost of replacement of the TCI flexible pipe, the cost of cleanup of any spills, and other costs associated therewith.

WHEREFORE, the premises considered, Plaintiff demands judgment against defendants TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Shell, Cleveland and fictitious defendants A through FF for such compensatory damages as the evidence supports and a jury awards, a separate amount in punitive damages, plus costs of suit.

## Count Five  Suppression of Material Facts
### (against all Defendants except OEC)

45.    Plaintiff adopts and incorporates the allegations of all prior paragraphs herein.

46.    Defendants TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Shell, Cleveland and fictitious defendants A through Z knew or should have known that the TCI flexible pipe would fail, thereby causing fuel leakage and that said TCI flexible pipe, if already installed, should be replaced.

47.    Defendants TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Shell, Cleveland and fictitious defendants A through Z wantonly, willfully, oppressively, intentionally, and/or maliciously concealed this fact to the detriment of Plaintiff and failed to notify Plaintiff of their superior knowledge.

48.    As a proximate result of said suppression of facts, the Plaintiff May's suffered damages as said TCI flexible pipe failed and leaked.  As a proximate result, Plaintiff May's will be caused to replace and repair said TCI flexible pipe, and will suffer damages therefrom, including, but not limited to, the cost of replacement of the TCI flexible pipe, the cost of cleanup of any spills, and other costs associated therewith.

WHEREFORE, the premises considered, Plaintiff demands judgment against defendants TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Shell, Cleveland and fictitious defendants A through FF for such compensatory damages as the evidence supports and a jury awards, a separate amount in punitive damages, plus costs of suit.

## Count Six –Deceit
### (against all Defendants except OEC)

49.    Plaintiff adopts and incorporates the allegations of all prior paragraphs herein.

50.    Defendants TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Shell, Cleveland and fictitious defendants A through Z had knowledge that the TCI flexible pipe was not fit for the purpose it was designed and being sold for at the time it was distributed for sale to Plaintiff. Defendants TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Shell, Cleveland and fictitious defendants A through Z further knew or should have known that if said TCI flexible pipe was installed that it would fail and cause the Plaintiff to suffer damages.

51.    With such knowledge, defendants TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Shell, Cleveland and fictitious defendants A through Z wantonly, willfully, intentionally, oppressively, or maliciously concealed these facts from the installer, OEC, and Plaintiff, and from the marketplace as a whole, and sold the TCI flexible pipe with reckless disregard for the rights of others.

52.    As a proximate result of said deceit, the TCI flexible pipe failed and leaked and Plaintiff May's will be caused to replace and repair said TCI flexible pipe, and will suffer damages therefrom, including, but not limited to, the cost of replacement of the TCI flexible pipe, the cost of cleanup of any spills, and other costs associated therewith.

WHEREFORE, the premises considered, Plaintiff demands judgment against defendants TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Shell, Cleveland and fictitious defendants A through FF for such compensatory damages as the evidence supports and a jury awards, a separate amount in punitive damages, plus costs of suit.

## Count Seven –Negligent and/or Wanton Design
### (against all named Defendants except OEC and Fictitious Defendants A – F, AA - FF)

53.    Plaintiff adopts and incorporates the allegations of all prior paragraphs herein.

54.     Defendants TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Shell, Cleveland and Fictitious Defendants A through F negligently and/or wantonly designed the TCI flexible pipe.

55.     As a proximate result of said negligence and/or wantonness and/or defect, the TCI flexible pipe failed and leaked and Plaintiff May's will be caused to replace and repair said TCI flexible pipe, and will suffer damages therefrom, including, but not limited to, the cost of replacement of the TCI flexible pipe, the cost of cleanup of any spills, and other costs associated therewith.

WHEREFORE, the premises considered, Plaintiff demands judgment against defendants TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Shell, Cleveland and fictitious defendants A through F, and AA through FF, for such compensatory damages as the evidence supports and a jury awards, a separate amount in punitive damages, plus costs of suit.

### Count Eight – Negligent and/or Wanton Manufacturing
### (against all named Defendants except OEC and Fictitious Defendants G – M, AA-FF)

56.     Plaintiff adopts and incorporates the allegations of all prior paragraphs herein.

57.     Defendants TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Shell, Cleveland and Fictitious Defendants G through M negligently and/or wantonly manufactured the TCI flexible pipe that was sold to plaintiff.

58.     As a proximate result of said negligence and/or wantonness and/or defect, the TCI flexible pipe failed and leaked and Plaintiff May's will be caused to replace and repair said TCI flexible pipe, and will suffer damages therefrom, including, but not limited to, the cost of replacement of the TCI flexible pipe, the cost of cleanup of any spills, and other costs associated therewith.

WHEREFORE, the premises considered, Plaintiff demands judgment against defendants TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Shell, Cleveland and fictitious defendants G through M and AA through FF for such compensatory damages as the evidence supports and a jury awards, a separate amount in punitive damages, plus costs of suit.

### Count Nine – Negligent and/or Wanton Distribution of a Dangerous Product
### (against all named Defendants except OEC and Fictitious Defendants N - R, AA-FF)

59.     Plaintiff adopts and incorporates the allegations of all prior paragraphs herein.

60.     Defendants TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Shell, Cleveland and Fictitious Defendants N through R knew or should have known that if the TCI flexible pipe failed that it would create a hazardous and dangerous condition to the environment that could potentially harm the ecosystem and even humans and would require a clean up.

61.     Defendants TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Shell, Cleveland and Fictitious Defendants N through R negligently and/or wantonly distributed this product into the marketplace where it was purchased by Plaintiff. The TCI flexible pipe was defective.

62.    As a proximate result of said negligence and/or wantonness and/or defect, the TCI flexible pipe failed and leaked and Plaintiff May's will be caused to replace and repair said TCI flexible pipe, and will suffer damages therefrom, including, but not limited to, the cost of replacement of the TCI flexible pipe, the cost of cleanup of any spills, and other costs associated therewith.

WHEREFORE, the premises considered, Plaintiff demands judgment against defendants TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Shell, Cleveland and fictitious defendants N through R, and AA through FF, for such compensatory damages as the evidence supports and a jury awards, a separate amount in punitive damages, plus costs of suit.

## Count Ten - Strict Liability
### (against all named Defendants except OEC and Fictitious Defendants A -FF)

63.    Plaintiff adopts and incorporates the allegations of all prior paragraphs herein.

64. This is a count for strict liability under Alabama's Extended Manufacturer's Liability Doctrine ("AEMLD").

65.    TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Shell, Cleveland, and fictitious defendants A through Z designed, manufactured, sold, and/or distributed into the marketplace a defective product, the TCI flexible pipe used by plaintiff.

66.    TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Shell, Cleveland, and fictitious defendants A through Z knew or should have known how the TCI flexible pipe would be used by plaintiff, i.e. for the containment of gasoline and the movement of gasoline from his storage tanks to his pumps.

67.    TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Shell, Cleveland and fictitious defendants A through Z could have reasonably anticipated or should have known that if the TCI flexible pipe failed, it would cause injury to property or person, even when used for the purpose for which it was intended.

68.    TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Shell, Cleveland and fictitious defendants A through Z are strictly liable for the defective product, the TCI flexible pipe.

69.    As a proximate result of said defect, the TCI flexible pipe failed and leaked and Plaintiff May's will be caused to replace and repair said TCI flexible pipe, and will suffer damages therefrom, including, but not limited to, the cost of replacement of the TCI flexible pipe, the cost of cleanup of any spills, all other costs associated therewith.

WHEREFORE, the premises considered, Plaintiff demands judgment against defendant TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Shell, Cleveland and fictitious defendants A through FF for such compensatory damages as the evidence supports and a jury awards, a separate amount in punitive damages, plus costs of suit.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY**

Attorneys for Plaintiff:

_Wesley L. Laird_

Wesley L. Laird (LAI005)
Laird, Baker & Blackstock, LLC
501 North Main Street
Opp, Alabama 36467
(334) 493-9715

_L. Cooper Rutland, Jr._

L. Cooper Rutland, Jr. (RUT010)
Rutland and Braswell, LLC
208 North Prarie Street
Union Springs, AL 36089
(334) 738-4770

OF COUNSEL:

Russell Jackson Drake  (DRA006)
Vivian Vines Campbell (CAM061)
Whatley Drake, LLC
2323 Second Avenue North
P.O. Box 10647
Birmingham, AL 35202-0647
(205) 328-9576

Ronald W. Russell
Capouano, Beckman & Russell
560 South McDonough Street
Montgomery, AL 36103
(334) 834-4874

James M. Cawley Jr.
DeHay & Elliston LLP
3700 Buffalo Speedway Suite 1000
Houston, Texas 77098
(713) 626-0126

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon the following counsel by placing a copy of same in the U.S. Mail on this the 1st day of July, 2003.

Neil R. Clement, Esq.
Adams and Reese/Lange Simpson
2100 3rd Avenue North, Suite 1100
Birmingham, Alabama   35203

J. Ross Forman, Esq.
Wilson F. Green, Esq.
Ronald W. Farley, Esq.
Burr & Forman
3100 SouthTrust Tower
420 North 20th Street
Birmingham, Alabama   35203

_____
Of Counsel

**Exhibit C**



## IN THE CIRCUIT COURT OF BULLOCK COUNTY, ALABAMA

May's Distributing Company, Inc.,                )
individually and as class representative of      )
all those gasoline station owners similarly      )
situated,                                        )
                                                 )
    Plaintiff,               )
                                                 )
    vs.                       )    Civil Action No.03-02
                                                 )
Total Containment, Inc.,                         )
Oil Equipment Company, Inc.,                     )
Dayco Products, Inc.,                            )
Mark IV Industries, Ltd.                         )
Parker Hannifin Corporation,                     )
Ticona Polymers, Inc., Shell Chemical, LP,       )
Cleveland Tubing, Inc.,                          )
and Fictitious Defendants A through FF,          )
those individuals, partnerships,                 )
corporations, sole proprietorships, or other     )
entities whose identities are unknown at         )
the present time but whose names will be         )
substituted by amendment when ascertained,       )
                                                 )
    Defendants.               )
                                                 )

## PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT

    1.    Plaintiff May's Distributing Company, Inc. (hereinafter referred to as "May's") adopts and incorporates herein, as set out here in full, Paragraphs 1 through 69 of Plaintiff's First Amended Complaint.

    2.    Defendant Atofina Chemicals, Inc. ("Atofina") is a foreign corporation incorporated under the laws of Pennsylvania. Atofina does business in the State of Alabama directly and/or indirectly. Atofina designs, manufactures, sells and distributes component parts of flexible pipe including, but not limited to, a resin known as Kynar, which was provided and/or sold to TCI.

    3.    Defendant Elf-Atochem North America, Inc. ("Elf-Atochem") is a foreign corporation incorporated under the laws of Pennsylvania. Elf-Atochem does business in the State of Alabama directly and/or indirectly. Elf-Atochem is the parent company of Defendant Atofina. Elf-Atochem designs, manufactures, sells and distributes component parts of flexible pipe including, but not limited to, a resin known as Kynar, which was provided and/or sold to TCI.

4.    Defendant Underwriters Laboratories, Inc. ("UL") is a foreign corporation incorporated under the laws of Delaware.  UL does business in the State of Alabama directly and/or indirectly.  UL issued certifications of TCI's flexible pipe.

Attorneys for Plaintiff:

_____
L. Cooper Rutland, Jr. (RUT010)
Rutland and Braswell, LLC
208 North Prarie Street
Union Springs, AL  36089
(334) 738-4770

**OF COUNSEL:**

RUTLAND & BRASWELL, LLC
208 North Prairie Street
Union Springs, Alabama 36089

Lynn W. Jinks, III
Christy Crow
JINKS, DANIEL & CROW, LLC
Post Office Box 350
Union Springs, Alabama 36089

Russell Jackson Drake
Vivian Vines Campbell
WHATLEY DRAKE, LLC
Post Office Box 10647
Birmingham, Alabama  35202

Ronald W. Russell
Joel K. Gregg
CAPOUANO, BECKMAN & RUSSELL, LLC
560 South McDonough Street
Montgomery, Alabama 36103

Wesley L. Laird
LAIRD, BAKER & BLACKSTOCK, LLC
501 North Main Street
Opp, Alabama 36467

Nicola Thompson Drake
Attorney At Law
1827 1st Avenue North, Suite 210

2

Birmingham, AL 35203

James M. Cawley, Jr.
DEHAY & ELLISTON, LLP
3700 Buffalo Speedway, Suite 1000
Houston, TX 77098

## PLEASE SERVE DEFENDANTS VIA CERTIFIED MAIL AS FOLLOWS:

Atofina Chemicals, Inc.
CSC Lawyers Incorporating Service
150 S. Perry Street
Montgomery, AL 36104

Elf-Atochem North America, Inc.
2000 Market Street
Philadelphia, PA 19103

Underwriters Laboratories, Inc.
2000 Interstate Park Drive, Suite 204
Montgomery, AL 36109

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon the following counsel by placing a copy of same in the U.S. Mail on this the _1st_ day of _April_, 2004

Attorney for Defendant Oil Equipment Company, Inc.
Neil R. Clement, Esq.
ADAMS & REESE/LANGE SIMPSON
2100 3rd Avenue North, Suite 1100
Birmingham, Alabama 35203

Attorneys for Defendant Total Containment, Inc.
J. Ross Forman, Esq.
Wilson F. Green, Esq.
Ronald W. Farley, Esq.
BURR & FORMAN
3100 SouthTrust Tower
420 North 20th Street
Birmingham, Alabama 35203

Attorneys for Defendant Ticona Polymers, Inc.
Alan T. Rogers, Esq.
BALCH & BINGHAM, LLP
Post Office Box 306
Birmingham, Alabama 35201-0306

Paul A. Clark, Esq.
BALCH & BINGHAM, LLP
Post Office Box 78
Montgomery, Alabama 36101

Paul M. O'Connor III, Esq.
KASOWITZ, BENSON, TORRES & FRIEDMAN, LLP
1633 Broadway
New York, New York   10019-6799

Walter B. Calton, Esq.
Attorney At Law
Post Office Box 696
Eufala, Alabama  36072-0696

Attorneys for Defendant, Parker Hannifan Corporation
William H. Brooks, Esq.
LIGHTFOOT, FRANKLIN & WHITE, LLC
400 20th Street North
Birmingham, Alabama   35203

William McCandless
DENARDIS, MCCANDLESS & MILLER, P.C.
70 Macomb Place, Suite 200
Mt. Clemons, Michigan   48043

Attorneys for Defendant Cleveland Tubing, Inc.
James H. McLemore, Esq.
CAPELL & HOWARD, P.C.
150 South Perry Street (36104)
Post Office Box 2069
Montgomery, Alabama 36102-2069

T. Harold Pinkley, Esq.
MILLER & MARTIN, LLP
1200 One Nashville Place
150 Fourth Avenue North
Nashville, Tennessee 37219

Attorney for Defendants Dayco Products, Inc. and Mark IV Industries, Ltd.
Kimberly W. Sayoc, Esq.
LIPPES SILVERSTEIN MATHIAS
& WEXLER, LLP
700 Guaranty Building
28 Church Street
Buffalo, New York 14202-3950

L. Shane Seaborn
Myron C. Penn
PENN & SEABORN, LLC
Post Office Box 688
Clayton, Alabama 36106

Joseph T. Carpenter Esq.
Nathan C. Prater
CARPTENTER, PRATER, INGRAM
& MOSHOLDER, LLP
303 Sterling Centre
4121 Carmichael Road
Montgomery, AL 36106

_____
Of Counsel

**Exhibit D**



COPY

IN THE CIRCUIT COURT OF BULLOCK COUNTY, ALABAMA

**FILED IN OFFICE**

**SEP 2 9 2005**

**CLERK-REGISTER, BULLOCK CO., ALA.**

| | |
|---|---|
| May's Distributing Company, Inc., individually and as class representative of all those gasoline station owners similarly situated, | ) ) ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Civil Action No.03-02 ) |
| Total Containment, Inc., Dayco Products, Inc., Mark IV Industries, Ltd. Parker Hannifin Corporation, Ticona Polymers, Inc., Underwriters Laboratories, Inc., Cleveland Tubing, Inc., and Fictitious Defendants A through FF, those individuals, partnerships, corporations, sole proprietorships, or other entities whose identities are unknown at the present time but whose names will be substituted by amendment when ascertained, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## PLAINTIFF'S THIRD AMENDED COMPLAINT

### Existing Parties

1.      Plaintiff May's Distributing Company, Inc. (hereinafter referred to as "May's") is a corporation incorporated under the laws of the state of Alabama with its principle place of business being at 102 Martin Luther King Blvd., Union Springs in Bullock County, Alabama. Plaintiff operates a business that distributes oil and gasoline products and operates convenience stores and motor fuel dispensing facilities, including convenience stores and motor fuel dispensing facilities in Bullock County, Alabama. May's brings this suit individually and on behalf of all those motor fuel dispensing facility owners similarly situated in the United States.

2.      Defendant Total Containment, Inc. (hereinafter referred to as "TCI") is a foreign corporation incorporated under the laws of the State of Pennsylvania. TCI does business in the State of Alabama. TCI manufactures, sells and distributes underground thermoplastic flexible pipe and sump systems (hereinafter referred to as "flexible pipe") for use at motor fuel dispensing facilities.

3.      Defendant Dayco Products, Inc. ("Dayco") is a foreign corporation incorporated

1

under the laws of Delaware. Dayco does business in the State of Alabama. Dayco designs, manufactures, sells and distributes component parts of flexible pipe which were provided and/or sold to TCI.

4.    Defendant Mark IV Industries, Ltd. ("Mark IV") is a foreign corporation incorporated under the laws of Canada. Mark IV does business in the State of Alabama directly and/or indirectly. Mark IV is a successor entity to Defendant Dayco Products, Inc.

5.    Defendant Parker Hannifin Corporation ("Parker Hannifin") is a foreign corporation incorporated under the laws of Ohio. Parker Hannifin does business in the State of Alabama. Parker Hannifin presently is a successor entity to Defendant Dayco Products, Inc.

6.    Defendant Ticona Polymers, Inc. ("Ticona") is a foreign corporation incorporated under the laws of Delaware. Ticona does business in the State of Alabama directly and/or indirectly. Ticona designs, manufactures, sells and distributes component parts of flexible pipe which were provided and/or sold to TCI.

7.    Defendant Cleveland Tubing, Inc. ("Cleveland") is a foreign corporation incorporated under the laws of Tennessee. Cleveland does business in the State of Alabama. Cleveland designs, manufactures, sells and distributes component parts, specifically the secondary containment pipe) of flexible pipe which were provided and/or sold to TCI.

10.    Fictitious defendants A through F, whether singular or plural, are those individuals, partnerships, sole proprietorships, corporations, or other entities which designed the underground thermoplastic flexible pipe and sump systems or the components thereof which were manufactured, sold and/or distributed by TCI (hereinafter referred to as the "TCI flexible pipe product").

11.    Fictitious defendants G through M, whether singular or plural, are those individuals, partnerships, sole proprietorships, corporations, or other entities which manufactured, sold and/or distributed the TCI flexible pipe product.

12.    Fictitious defendants N through R, whether singular or plural, are those individuals, partnerships, sole proprietorships, corporations or other entities which marketed, supplied and/or distributed the TCI flexible pipe product.

13.    Fictitious defendants S through Z, whether singular or plural, are those individuals, partnerships, sole proprietorships, corporations or other entities which designed, manufactured, marketed, supplied and/or distributed liner thermoplastics or other materials used by all defendants (including fictitious defendants).

14.    Fictitious defendants AA through FF, whether singular or plural, are those individuals, partnerships, sole proprietorships, corporations, or other entities which are responsible for any or all of the liabilities of defendants (including fictitious defendants) named herein.

## Additional Party

4.     Through this Third Amended Complaint, Plaintiff substitutes Defendant Underwriters Laboratories, Inc. ("UL") as Ficticious Defendant AA.  UL is a foreign corporation incorporated under the laws of Delaware.  UL does business in the State of Alabama directly and/or indirectly.  UL issued certifications of TCI's flexible pipe.

## Jurisdiction and Venue

15.     This Court has jurisdiction of this case pursuant to § 12-11-30 of the Code of Alabama.

16.     Defendants do business directly, indirectly and/or by agent in Alabama, including in this Circuit.

17.     Venue is proper in this Court pursuant to Rule 82, Ala.R.Civ.P. and Code of Alabama § 6-3-7.

## Statement of Facts

18.     In 1997, May's contracted to install underground thermoplastic flexible pipes and sump systems distributed by TCI and designed and manufactured by one or more of the following defendants:  Dayco; Mark IV, Parker Hannifin; Ticona; and Cleveland Tubing, Inc.; and/or Fictitious Defendants A through Z at its convenience store and gas station

19.     The pipe to be installed was TCI flexible pipe.  The TCI flexible pipe was designed, manufactured, marketed, sold, and distributed as a product that safely retains fuel, utilizing a pipe within a pipe system for added protection.

20.     Prior to TCI flexpipe being marketed and sold, it was inspected and certified as safe for its intended use by Defendant Underwriters Laboratories ("UL").

20.     On or about September 5, 2002, May's discovered that the TCI flexible pipe is defective.  The installer inspected and tested the TCI flexible pipe and discovered that its properties had changed in that it permitted permeation of fuel outside the barriers of the TCI flexible pipe, and that it failed to retain its shape and rigidity, by elongation, swelling and other defects.

21.     Plaintiff May's suffered damages as a result of the defective TCI flexible pipe.

## Class Action Allegations

22.     The Plaintiff brings this action, under Alabama common law and statutes, individually and on behalf of a class of similarly situated persons located throughout the United States.

23.     The class is so numerous that joinder of all members of the class is impracticable.  Because of the wide use of flexible pipe and sump systems at motor fuel

3

dispensing facilities over a substantial period of time in the United States, Plaintiff believes there are thousands of members of the class.

24. There are questions of law and fact common to the class. The principal common issues for the Class are:

    a.    Whether the TCI flexible pipe is defective;

    b.    Whether the components of the TCI flexible pipe are defective;

    c.    Whether the defendants knew or should have known that the TCI flexible pipe was defective;

    d.    Whether UL diligently tested and inspected the flexpipe before providing a certification that it met standards and was safe for use for its intended purpose;

    e.    Whether the defendants knowingly sold a defective product;

    f.    Whether the conduct of the defendants was fraudulent;

    g.    Whether the conduct of the defendants constituted negligence, recklessness and/or wantonness in regard to the class;

    h.    Whether defendants negligently, recklessly and/or wantonly designed, manufactured and/or marketed TCI flexible pipe;

    i.    Whether defendants failed to adequately inspect or test the TCI flexible pipe;

    j.    Whether defendants failed to give warnings or to give adequate warnings regarding the limitations of the TCI flexible pipe;

    k.    Whether defendants made an express warranty(ies) concerning TCI flexible pipe;

    l.    Whether the defendants breached an express warranty(ies) regarding the TCI flexible pipe;

    m.    Whether the defendants breached an implied warranty(ies) regarding the TCI flexible pipe.

25. The claims of the plaintiff are typical of the claims of the class and are based on and arise out of the same facts constituting the wrongful conduct of the defendants.

26. Plaintiff will adequately protect the interest of the class. To that end, plaintiff has retained counsel experienced in class action litigation. Neither plaintiff nor its counsel has any interest which might cause them not to vigorously pursue this action.

27. The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the defendants herein.

28. A class action is superior to any other available method, if there is any, for the fair and efficient adjudication of this controversy.

29. There will be no difficulty in the management of this action as a class action.

## Count One – Negligence

30.    Plaintiff adopts and incorporates the allegations of all prior paragraphs herein.

31.    Each defendant had a duty to ensure that TCI flexpipe was designed, manufactured, tested, inspected and certified in a manner that rendered the pipe safe for its intended use and each defendant failed in their duties.

32.    As a proximate result of the defendants' negligence, the TCI flexible pipe failed and Plaintiff May's will be caused to replace and repair said TCI flexible pipe, and will suffer damages therefrom, including, but not limited to, the cost of replacement of the TCI flexible pipe, the cost of cleanup of any spills, and other costs associated therewith.

WHEREFORE, the premises considered, Plaintiff demands judgment against defendants for such compensatory damages as the evidence supports and a jury awards, plus costs of suit.

## Count Two – Wantonness

33.    Plaintiff adopts and incorporates the allegations of all prior paragraphs herein.

34.    Each defendant wantonly failed in fulfilling its duty to ensure that TCI flexpipe was designed, manufactured, tested, inspected and certified in a manner that rendered the pipe safe for its intended use and each defendant failed in their duties.

35.    As a proximate result of defendants' wantonness, the TCI flexible pipe failed.

36.    As a proximate result of said wantonness, the TCI flexible pipe failed and Plaintiff May's will be caused to replace and repair said TCI flexible pipe, and will suffer damages therefrom, including, but not limited to, the cost of replacement of the TCI flexible pipe, the cost of cleanup of any spills, and other costs associated therewith.

WHEREFORE, the premises considered, Plaintiff demands judgment against defendants for such compensatory damages as the evidence supports and a jury awards, a separate amount in punitive damages, plus costs of suit.

## Count Three - Breach of Warranty of Fitness for a Particular Purpose and Merchantability

### (Against Each Defendant Except Underwriters Laboratories)

37.    Plaintiff adopts and incorporates the allegations of all prior paragraphs herein.

38.    Defendants TCI, Dayco, Mark IV, Parker Hannifin, Ticona, and Cleveland and fictitious defendants A through Z were merchants with respect to the TCI flexible pipe complained of and sold the pipe in question to plaintiff. The TCI flexible pipe was designed, manufactured, and sold for the purpose of containing gasoline, a product that is inherently explosive and dangerous, and was used by plaintiff solely for the purpose for which it was intended.

5

39.   The TCI flexible pipe was defective and unmerchantable. Said TCI flexible pipe failed by leaking, permeating fuels, failing to retain its properties including (but not limited to) shape, rigidity and permeation. Said TCI flexible pipe no longer will contain fuel, therefore, it is no longer fit for the purpose for which it was designed, manufactured, and sold.

40.   As a proximate result of this defect, Plaintiff May's TCI flexible pipe failed and leaked and Plaintiff May's will be caused to replace and repair said product, and will suffer damages therefrom, including, but not limited to, the cost of replacement of the TCI flexible pipe system, the cost of cleanup of any spills, and other costs associated therewith.

WHEREFORE, the premises considered, Plaintiff demands judgment against defendants TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Cleveland Tubing Inc. and fictitious defendants A through F for such compensatory damages as the evidence supports and a jury awards, a separate amount in punitive damages, plus costs of suit.

<u>Count Four –Misrepresentation</u>

41.   Plaintiff adopts and incorporates the allegations of all prior paragraphs herein.

42.   Defendants TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Cleveland Tubing Inc., UL and fictitious defendants A through Z innocently, negligently, wantonly, willfully, oppressively, maliciously, and/or intentionally represented falsely that the TCI flexible pipe was the state of the art underground pipe system for petroleum fuel. Defendants TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Cleveland Tubing Inc., UL and fictitious defendants A through Z further represented that the TCI flexible pipe was designed to contain fuel products under pressure and was designed to be installed at motor fuel dispensing facilities to connect the fuel pump with the underground storage tanks. Defendants TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Cleveland Tubing Inc., UL and fictitious defendants A through Z further represented that the TCI flexible pipe would not fail or permeate fuels (or otherwise leak) for at least thirty years and that in the event that the inner pipe did leak, the outer pipe would contain the fuel and prevent any spill into the ground.

43.   Plaintiff detrimentally relied on these representations in entering into a purchase contract for TCI flex pipe and in causing the TCI flexible pipe to be installed.

44.   As a proximate result of said misrepresentation, the Plaintiff May's suffered damage as the TCI flexible pipe failed and leaked. Plaintiff May's will be caused to replace and repair said TCI flexible pipe, and will suffer damages therefrom, including, but not limited to, the cost of replacement of the TCI flexible pipe, the cost of cleanup of any spills, and other costs associated therewith.

WHEREFORE, the premises considered, Plaintiff demands judgment against defendants TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Cleveland Tubing Inc., UL and fictitious defendants A through Z for such compensatory damages as the evidence supports and a jury awards, a separate amount in punitive damages, plus costs of suit.

6

## Count Five  Suppression of Material Facts

45.    Plaintiff adopts and incorporates the allegations of all prior paragraphs herein.

46.    Defendants Defendants TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Cleveland Tubing Inc., UL and fictitious defendants A through Z knew or should have known that the TCI flexible pipe would fail, thereby causing fuel leakage and that said TCI flexible pipe, if already installed, should be replaced.

47.    Defendants TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Cleveland Tubing Inc., UL and fictitious defendants A through Z wantonly, willfully, oppressively, intentionally, and/or maliciously concealed this fact to the detriment of Plaintiff and failed to notify Plaintiff of their superior knowledge.

48.    As a proximate result of said suppression of facts, the Plaintiff May's suffered damages as said TCI flexible pipe failed and leaked.  As a proximate result, Plaintiff May's will be caused to replace and repair said TCI flexible pipe, and will suffer damages therefrom, including, but not limited to, the cost of replacement of the TCI flexible pipe, the cost of cleanup of any spills, and other costs associated therewith.

WHEREFORE, the premises considered, Plaintiff demands judgment against defendants Defendants TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Cleveland Tubing Inc., UL and fictitious defendants A through Z for such compensatory damages as the evidence supports and a jury awards, a separate amount in punitive damages, plus costs of suit.

## Count Six –Deceit

49.    Plaintiff adopts and incorporates the allegations of all prior paragraphs herein.

50.    Defendants Defendants TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Cleveland Tubing Inc., UL and fictitious defendants A through Z had knowledge that the TCI flexible pipe was not fit for the purpose it was designed and being sold for at the time it was distributed for sale to Plaintiff. Defendants TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Cleveland Tubing Inc., UL and fictitious defendants A through Z further knew or should have known that if said TCI flexible pipe was installed that it would fail and cause the Plaintiff to suffer damages.

51.    With such knowledge, defendants Defendants TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Cleveland Tubing Inc., UL and fictitious defendants A through Z wantonly, willfully, intentionally, oppressively, or maliciously concealed these facts from the installer and Plaintiff, and from the marketplace as a whole, and sold the TCI flexible pipe with reckless disregard for the rights of others.

52.    As a proximate result of said deceit, the TCI flexible pipe failed and leaked and Plaintiff May's will be caused to replace and repair said TCI flexible pipe, and will suffer damages therefrom, including, but not limited to, the cost of replacement of the TCI flexible pipe, the cost of cleanup of any spills, and other costs associated therewith.

WHEREFORE, the premises considered, Plaintiff demands judgment against defendants Defendants TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Cleveland Tubing Inc., UL and fictitious defendants A through Z for such compensatory damages as the evidence supports and a jury awards, a separate amount in punitive damages, plus costs of suit.

### Count Seven – Negligent and/or Wanton Design
### (against all named Defendants except Underwriters Laboratories and Fictitious AA - FF)

53.     Plaintiff adopts and incorporates the allegations of all prior paragraphs herein.

54.     Defendants TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Cleveland Tubing, Inc. and Fictitious Defendants A through F negligently and/or wantonly designed the TCI flexible pipe.

55.     As a proximate result of said negligence and/or wantonness and/or defect, the TCI flexible pipe failed and leaked and Plaintiff May's will be caused to replace and repair said TCI flexible pipe, and will suffer damages therefrom, including, but not limited to, the cost of replacement of the TCI flexible pipe, the cost of cleanup of any spills, and other costs associated therewith.

WHEREFORE, the premises considered, Plaintiff demands judgment against defendants TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Cleveland Tubing Inc. and fictitious defendants A through F, for such compensatory damages as the evidence supports and a jury awards, a separate amount in punitive damages, plus costs of suit.

### Count Eight – Negligent and/or Wanton Manufacturing
### (against all named Defendants except Underwriters Laboratories and Fictitious AA - FF)

56.     Plaintiff adopts and incorporates the allegations of all prior paragraphs herein.

57.     Defendants TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Cleveland Tubing Inc. and Fictitious Defendants G through M negligently and/or wantonly manufactured the TCI flexible pipe that was sold to plaintiff.

58.     As a proximate result of said negligence and/or wantonness and/or defect, the TCI flexible pipe failed and leaked and Plaintiff May's will be caused to replace and repair said TCI flexible pipe, and will suffer damages therefrom, including, but not limited to, the cost of replacement of the TCI flexible pipe, the cost of cleanup of any spills, and other costs associated therewith.

WHEREFORE, the premises considered, Plaintiff demands judgment against defendants TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Cleveland Tubing Inc. and fictitious defendants G through M for such compensatory damages as the evidence supports and a jury awards, a separate amount in punitive damages, plus costs of suit.

### Count Nine – Negligent and/or Wanton Distribution of a Dangerous Product
### (against all named Defendants except Underwriters Laboratories and Fictitious AA - FF)

59.     Plaintiff adopts and incorporates the allegations of all prior paragraphs herein.

60.     Defendants TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Cleveland Tubing

and Fictitious Defendants N through R knew or should have known that if the TCI flexible pipe failed that it would create a hazardous and dangerous condition to the environment that could potentially harm the ecosystem and even humans and would require a clean up.

61.     Defendants TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Cleveland Tubing and Fictitious Defendants N through R negligently and/or wantonly distributed this product into the marketplace where it was purchased by Plaintiff. The TCI flexible pipe was defective.

62.     As a proximate result of said negligence and/or wantonness and/or defect, the TCI flexible pipe failed and leaked and Plaintiff May's will be caused to replace and repair said TCI flexible pipe, and will suffer damages therefrom, including, but not limited to, the cost of replacement of the TCI flexible pipe, the cost of cleanup of any spills, and other costs associated therewith.

WHEREFORE, the premises considered, Plaintiff demands judgment against defendants TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Cleveland Tubing and fictitious defendants N through R, for such compensatory damages as the evidence supports and a jury awards, a separate amount in punitive damages, plus costs of suit.

## Count Ten -Strict Liability

**(against all named Defendants except Underwriters Laboratories and Fictitious AA - FF)**

63.     Plaintiff adopts and incorporates the allegations of all prior paragraphs herein.

64.  This is a count for strict liability under Alabama's Extended Manufacturer's Liability Doctrine ("AEMLD").

65.     TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Cleveland Tubing Inc., and fictitious defendants A through Z designed, manufactured, sold, and/or distributed into the marketplace a defective product, the TCI flexible pipe used by plaintiff.

66.     TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Cleveland Tubing Inc., and fictitious defendants A through Z or should have known how the TCI flexible pipe would be used by plaintiff, i.e. for the containment of gasoline and the movement of gasoline from his storage tanks to his pumps.

67.     TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Cleveland Tubing Inc., and fictitious defendants A through Z could have reasonably anticipated or should have known that if the TCI flexible pipe failed, it would cause injury to property or person, even when used for the purpose for which it was intended.

68.     TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Cleveland Tubing Inc., and fictitious defendants A through Z are strictly liable for the defective product, the TCI flexible pipe.

69.     As a proximate result of said defect, the TCI flexible pipe failed and leaked and Plaintiff May's will be caused to replace and repair said TCI flexible pipe, and will suffer

9

damages therefrom, including, but not limited to, the cost of replacement of the TCI flexible pipe, the cost of cleanup of any spills, all other costs associated therewith.

WHEREFORE, the premises considered, Plaintiff demands judgment against defendants TCI, Dayco, Mark IV, Parker Hannifin, Ticona, Cleveland Tubing Inc., and fictitious defendants A through Z for such compensatory damages as the evidence supports and a jury awards, a separate amount in punitive damages, plus costs of suit.

## PLAINTIFF DEMANDS TRIAL BY STRUCK JURY

Respectfully Submitted,

Lynn W. Jinks, III
Christy Crow

**Of COUNSEL:**
JINKS, DANIEL & CROW, LLC
Post Office Box 350
Union Springs, Alabama 36089

Russell Jackson Drake
Nicola Thompson Drake
WHATLEY DRAKE, LLC
2323 Second Avenue North
P.O. Box 10647
Birmingham, AL 35202-0647
(205) 328-9576
Facsimile (205) 328-9669

Wesley L. Laird (LAI005)
LAIRD, BAKER & BLACKSTOCK, LLC
501 North Main Street
Opp, Alabama 36467

L. Cooper Rutland, Jr. (RUT010)
RUTLAND AND BRASWELL, LLC
208 North Prairie Street
Union Springs, AL 36089

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon the following counsel by placing a copy of same in the U.S. Mail on this the 29th day of September, 2005.

Attorney for Defendant Oil Equipment Company, Inc.
Neil R. Clement, Esq.
ADAMS & REESE/LANGE SIMPSON
2100 3rd Avenue North, Suite 1100
Birmingham, Alabama  35203

Attorneys for Defendant Total Containment, Inc.
J. Ross Forman, Esq.
Wilson F. Green, Esq.
Ronald W. Farley, Esq.
BURR & FORMAN
3100 SouthTrust Tower
420 North 20th Street
Birmingham, Alabama  35203

Attorneys for Defendant Ticona Polymers, Inc.
Alan T. Rogers, Esq.
BALCH & BINGHAM, LLP
Post Office Box 306
Birmingham, Alabama 35201-0306

Paul A. Clark, Esq.
BALCH & BINGHAM, LLP
Post Office Box 78
Montgomery, Alabama 36101

Paul M. O'Connor III, Esq.
KASOWITZ, BENSON, TORRES & FRIEDMAN, LLP
1633 Broadway
New York, New York  10019-6799

Walter B. Calton, Esq.
Attorney At Law
Post Office Box 696
Eufaula, Alabama  36072-0696

Attorneys for Defendant, Parker Hannifan Corporation
William H. Brooks, Esq.
LIGHTFOOT, FRANKLIN & WHITE, LLC
400 20th Street North
Birmingham, Alabama  35203

William McCandless
DENARDIS, MCCANDLESS & MILLER, P.C.
70 Macomb Place, Suite 200
Mt. Clemons, Michigan  48043

Attorneys for Defendant Cleveland Tubing, Inc.
James H. McLemore, Esq.
CAPELL & HOWARD, P.C.
150 South Perry Street (36104)
Post Office Box 2069
Montgomery, Alabama 36102-2069

T. Harold Pinkley, Esq.
MILLER & MARTIN, LLP
1200 One Nashville Place
150 Fourth Avenue North
Nashville, Tennessee 37219

11

Attorney for Defendants Dayco Products,
Inc. and Mark IV Industries, Ltd.
Joseph T. Carpenter Esq. (CAR038)
Nathan C. Prater
CARPTENTER, PRATER, INGRAM &
MOSHOLDER LLP
303 Sterling Centre
4121 Carmichael Road
Montgomery, AL 36106

Kimberly W. Sayoc, Esq.
LIPPES SILVERSTEIN MATHIAS &
WEXLER LLP
700 Guaranty Building
28 Church Street
Buffalo, New York 14202-3950

L. Shane Seaborn
Myron C. Penn
PENN & SEABORN, LLC
Post Office Box 688
Clayton, Alabama 36106

Of Counsel

**Exhibit E**



## IN THE CIRCUIT COURT OF BULLOCK COUNTY, ALABAMA

MAY'S DISTRIBUTING COMPANY, INC., )
ET AL., )
                              )
          Plaintiffs, )
                              )      Civil Action No.**03-02**
vs. )
                              )
TOTAL CONTAINMENT, INC., ET AL., )
                              )
          Defendants. )

## FOURTH AMENDED COMPLAINT AND CLASS DEFINITION

### Parties

1.      Plaintiff, May's Distributing Company, Inc. ("May's") is an Alabama with its principle place of business at 102 Martin Luther King Blvd., Union Springs, Bullock County, Alabama. May's Distributing Company, Inc. distributes oil and gasoline products and operates convenience stores and motor fuel dispensing facilities, in Montgomery and Union Springs Alabama. May's brings this suit individually and on behalf of all similarly situated motor fuel dispensing facility owners.

2.      Defendant, Total Containment, Inc. ("TCI") is a Pennsylvania corporation which did business in the State of Alabama at all times relevant to this lawsuit, but has since gone bankrupt.  TCI manufactured, sold and distributed defectively designed and tested underground thermoplastic flexible pipe ("Enviroflex pipe" or "flex pipe") for use in TCI-designed gas conveying systems at motor fuel dispensing facilities.

3.      Defendant, Dayco Products, Inc. ("Dayco") designed, and from 1990 to 1997 manufactured, the part of the flex pipe at issue here—the primary inner pipe (of a layered pipe design)—sold as part of the "Enviroflex, Omniflex and Monoflex Systems" for the conveyance of gasoline from underground storage tanks to the consumer at the dispenser.

4.      Defendant, Mark IV Industries, Ltd. ("Mark IV") is a Canadian corporation doing business in the State of Alabama.  Mark IV is the parent company of Defendant, Dayco Products, Inc.

5.      Defendant, Ticona Polymers, Inc. ("Ticona") is a Delaware corporation doing business in the State of Alabama.  Ticona supplies a polymer used in the manufacture of the flex pipe.

6.      Defendant, Cleveland Tubing, Inc. ("CTI") is a Tennessee corporation doing business in the State of Alabama.  CTI manufactured component parts of the flexible pipe sold

by TCI, including but not limited to the primary inner pipe (of a layered design) from 1990 through 1999.

7.    Defendant, Underwriters Laboratories, Inc. ("UL") is a Delaware corporation doing business in the State of Alabama. UL developed a testing protocol for the primary hose which carries gasoline from the underground storage tank to the consumer at the pump. UL then gave the flex pipe its "UL Listing," certifying that the flex pipe had passed its safety and efficacy testing.

### Jurisdiction and Venue

8.    This Court has jurisdiction of this case pursuant to § 12-11-30 of the <u>Code of Alabama.</u>

9.    Defendants do business directly, indirectly or by agent in Alabama, including in this Circuit.

10,    Venue is proper in this Court pursuant to Rule 82, Ala.R.Civ.P. and <u>Code of Alabama</u> § 6-3-7.

### Statement of Facts

11.    In 1988, Defendants TCI  and Dayco began developing the flexible hose at issue here to be used in TCI's Enviroflex Retractable Double Wall Piping System ("Enviroflex System"), Omniflex Direct Bury Coaxial Piping System ("Omniflex System") and the Monoflex Piping System ("Monoflex System") for conveying gasoline from underground storage tanks to the customer at the gas dispenser. These systems were different from the steel pipe and fiberglass systems then on the market, as the piping used was flexible and easier to install and replace if necessary.

12.    The most important element in each of the TCI gas conveyance systems is the primary pipe that contacts the gasoline as it is conveyed to the dispenser.  Dayco was responsible for the design and material selection of a number of similar primary pipes and manufactured them as well, until ending its relationship with TCI in 1997.  The three systems—Enviroflex, Monoflex and Omniflex—employ a variety of sizes and thicknesses of primary pipe, but the materials of the pipe are the same and each is defective.

13.    To increase sales of the Enviroflex system, particularly to major oil companies, it was necessary to obtain a "UL listing" from Defendant, UL, certifying the safety and efficacy of the gasoline-carrying flex pipe.  Obtaining the listing was a high priority for Dayco and TCI.

14.    The entire gas conveying systems—including all the sumps and component parts—were not tested or certified by UL as safe and effective.  Instead, only the primary pipe which conveys the gasoline was tested.  This was done to hasten obtaining the UL Listing.

15.    UL designed and conducted tests that set an extremely low threshold for the safety and quality of the flex pipe.  UL's testing allowed pipe that is highly permeable to gas

2

and susceptible to degradation and elongation problems caused by exposure to moisture and gasoline to pass and be certified as "UL Listed."

16.     For example, instead of tolerating no permeation of gas through the gas conveying inner pipe at all—a zero permeation standard—the standard was increased to 1%. Ignoring the real world realities that a gas station and its gasoline conveyance system will be exposed to moisture and to gasoline, UL allowed just the inner layer of the gas conveying pipe—not the outer layer—to be tested for resistance to gas. UL's testing contemplated that not only would the pipe never be touched by spilled gasoline, but that it would not be affected by gasoline vapors—even though the pipe is, by UL's standards, allowed to permeate at such a high rate.

17.     UL relied heavily on members of industry to develop its testing and standards for the gas conveying flex pipe. This reliance included taking the advice of an Industry Advisory Group with regard to testing and permeation levels. It also included having regular contact with manufacturers such as Dayco. Employees of Dayco visited UL, criticized UL's proposed testing programs and provided UL with "tips" on how to properly conduct testing.

18.     Dayco continued to be heavily involved in the development of various generations of various sizes of the TCI primary pipe used to convey the gasoline—each generation based on the same design. Dayco contracted with Cleveland Tubing, Inc. to manufacture the inner part of the defective primary pipe at issue in this case. CTI relied heavily on Dayco in setting up its manufacturing process for the TCI primary pipe. Dayco provided CTI with supervision, advice, and tips on the manufacturing process. Furthermore, CTI manufactured the TCI primary inner pipe for Dayco through 1997. CTI provided Dayco with defective inner pipes and experienced ongoing problems with quality assurance and performance. Dayco accepted the poor quality inner pipes and incorporated them in the primary hose nonetheless. Dayco failed to adequately supervise CTI to ensure that CTI was providing an inner pipe that would be free of defects and safe for the environment. CTI continued to manufacture TCI primary pipe through 1999.

19.     Between 1990 and 1997 the plastics and polymers Dayco selected varied, but each was defective from its inception because the materials chosen were highly permeable and unsuitable for the application of carrying gasoline. The reason for these plastics variations was that Dayco and TCI were in the business of selling a product that they knew was defective, yet, they continued to pocket profits as they attempted to find a design and materials that would actually contain and carry gasoline.

20.     One variation in materials was made when TCI and Dayco realized that the outer covering of the first generation of its primary pipe was not compatible with alcohol, which was detrimental to the integrity of the pipe when used with the many gasoline products containing alcohol.

21.     Another polymer switch was made because the polyester urethane outer cover of the pipe was subject to degradation from water in the environment and also microbial attack. The generation of pipe which was not resistant to moisture was so defective that TCI began a program to replace all that type of pipe. This "voluntary" pipe replacement program caused finger-pointing between TCI and Dayco regarding who was to blame and who was to pay.

3

22.    The voluntary replacement program dealt with, by TCI and Dayco's estimation, 3800 gas stations around the country and would cost $21 Million.  Some, but not all of those gas stations had this early generation of primary pipe replaced.  The major oil companies' stations like Exxon and Southland were made a priority by TCI and Dayco for replacement, but Mom and Pop operations were not a priority and did not have the defective pipe replaced.

23.    Despite any variations in the plastics chosen for the various generations of TCI primary piping, there is one constant—that the plastic materials chosen were defective and unsafe for the intended application of conveying gasoline.  These plastics were overly permeable to gasoline and hydrocarbon liquids and gases.  Since the layered pipe design did not provide any pathway for hydrocarbons to escape the entire primary pipe is susceptible to softening, swelling and losing its integrity.    Soil humidity, liquids and gases cause plasticization—weakening—of the materials chosen by Dayco to build the primary pipe.  This weakening leads to significant changes in the dimensional stability of the pipe.  It also leads to pipe breaches.  Polyurethane and polyethylene, the primary materials for the covers of the primary pipe, are known to be attacked by microbial bacterial.  This microbial attack and hydrolysis can lead to pipe breaches.  Thermoplastics such as those used in the primary pipe exhibit viscoelasticity—creep and stress relaxation.  These properties lead to breaches of the plastic.  The layered design of the primary pipe exacerbates modes of failure related to stress because the interlayer regions can act as crack initiators.  Finally, when two or more plastics with varying thermal properties are joined together such as in the TCI primary pipe, changes in the environment temperature can lead to delamination of the layers.

24.    Even brand new TCI primary pipe has failed from the standpoint of its high permeability and its inherent defects in material selection.  TCI, UL and Dayco's failure to take into account the environment in which the pipe would be conveying gasoline exacerbates the defective nature of the pipe and causes more serious failures such as microbial attack, hydrolysis, softening, weakening, changing of dimension, and delamination.

25.    In 2000, state regulators of underground storage tanks in Mississippi and Florida noticed increasing numbers of reported failures in flexible piping systems, particularly TCI's primary pipe, and made their findings public, including beginning a database to track the serious, reported leaks.

26.    Two of three gasoline distributing facilities owned and operated by Plaintiff, have or had, TCI primary pipe installed. The Montgomery gas station's TCI flex pipe was installed in 1997 and replaced periodically from 1997 until 2005, at which time it was re-fitted.  The Union Springs TCI pipe was installed in 1994 and additional TCI pipe was installed in Union Springs in an upgrade in 1997.  The Union Springs station has some TCI pipe under the concrete, even after the upgrade in 1997, but the Montgomery station had so many serious leaks, requiring repair, that all of the TCI pipe was removed.

27.    The four serious leaks at the Montgomery station alerted May's that the defective TCI primary pipe was failing in the ways that state regulators had warned about.  The installer inspected and tested the TCI flexible pipe and discovered that, in addition to its inherent defect of allowing permeation of gas, that the pipe had failed to retain its shape and rigidity, by elongation, swelling and other defects, and had experienced rupture sufficiently sized to cause major leaks.  May's has since had all that TCI primary pipe removed from its Montgomery station and that pipe is stored in its warehouse.

4

28.    Plaintiff May's suffered damages as a result of the defective TCI flexible pipe, including being forced to shut down the gas dispensers to allow repair work, and having gas pipe contractors seen at its store, causing damage to Plaintiff's reputation for providing high quality, unadulterated gasoline. Plaintiff was damaged by being forced to shut down its entire Montgomery gas distributing operation for a period of time sufficient to facilitate replacing all the defective TCI pipe.

29.    Members of the putative class who own and operate gas stations with TCI flex pipe are damaged in that the pipe's high permeation rate allows a constant escape of gas and gas vapors. Members of the putative class with the first generation of TCI flex pipe have been damaged in that they may have been left out of TCI and Dayco's voluntary pipe replacement program, therefore leaving pipe that even Defendants admit is defective, in the ground and posing a risk of environmental contamination and lost profits. Members of the putative class have been damaged in that they need to stop operations at their gas stations and convenience stores and replace the defective TCI flex pipe with pipe that is not constantly permeating gas and gas vapors. Such a total pipe replacement is costly in terms of paying a contractor to tear up the concrete to install new pipe, as well as in lost profits.

## Class Action Allegations

30.    The Plaintiff brings this action individually and on behalf of a class of those similarly situated entities and persons in the United States and Puerto Rico who own retail gasoline operations that use TCI pipe to convey gasoline from the underground storage tank to the dispenser.

31.    The class is so numerous that joinder of all members of the class is impracticable. TCI and Dayco's own estimation of the number of gas stations using just the initial generation of the pipe they admit is defective is 3800. In addition, after TCI sold the initial generation of pipe it admits is defective and needs to be replaced, sales of additional generations of TCI flex pipe, which is also defective, continued. The U.S. EPA reports that there are 257,143 regulated underground storage tanks. This figure represents the tanks in the ground—not the number of retail gas stations. Because of the wide use of flex pipe of various brands at motor fuel dispensing facilities over a substantial period of time in the United States, Plaintiff believes there are tens of thousands of members of the class.

32.    There are questions of law and fact common to the class, including,

- Whether all the various generations of primary pipe are defectively designed;

- Whether Defendants TCI, Dayco and CTI breached their duty to Plaintiff and the class to design, manufacture and sell a gasoline conveying hose that was safe for the environment and suitable for its intended use;

- Whether Dayco breached its duty to Plaintiff and the class to select materials for the various generations of primary hose that would be suitable to conveying gasoline;

5

- Whether CTI breached its duty to the class to manufacture components of the various generations of primary pipe that are consistent and not defective;

- Whether Dayco negligently supervised CTI and then negligently accepted and used defective CTI components in the manufacture of the various generations of primary pipe;

- Whether Dayco and UL breached their duty to Plaintiff and the class to adequately inform themselves about the real world conditions the flex pipe would operate under before undertaking the duties they did to design, test and certify the primary gas conveying pipe;

- Whether UL breached its duty to Plaintiff and the class to conduct testing that adequately ensures the safety and efficacy of the primary pipe for holding and conveying gasoline; and

- Whether the conduct of each defendant was negligent.

33.     The claims of the Plaintiff are typical of the claims of the putative class and are based on and arise out of the same facts constituting the negligent conduct of the defendants.

34.     The Plaintiff will adequately protect the interest of the class and has no interests antagonistic to any putative class member. Plaintiff's counsel is experienced in class action litigation, will vigorously pursue the litigation, has no conflicts which would impede counsels' adequacy and has the resources necessary to successfully litigate the action.

35.     The prosecution of separate actions by individual members of the putative class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the Defendants.

36.     A class action is superior to any other available method for the fair and efficient adjudication of this controversy.

37.     There will be no difficulty in the management of this action as a class action. The sole cause of action in this complaint is based on negligence. The law of the fifty (50) states is consistently the same for negligence except three (3) states recognize the defense of contributory negligence. Management of this class action at trial will present no particular difficulties. Jury charges and verdict forms can be tailored to fit this relatively simple set of facts and legal questions. The Court has available to it many management techniques, including special interrogatory verdicts and, if needed, bifurcation of the trial proceedings.

## CLASS DEFINITION

38.    Upon certification, the Class will consist of all retail gasoline distribution facilities in the United States and Puerto Rico where any generation of TCI primary flex pipe is, or was, installed and used for the conveyance of petroleum products.

## NEGLIGENCE

39.    Plaintiff adopts and incorporates the facts and allegations of the prior paragraphs.

40.    Each defendant had a duty to ensure that TCI flex pipe was designed, manufactured, tested, inspected and certified in a manner that rendered the pipe safe for its intended use and each defendant failed in their duty.

41.    As a proximate result of the defendants' negligence, the TCI flex pipe is defective and has failed to operate as it was intended.  To prevent the ongoing permeation of gas and gas vapors from the primary pipe, Plaintiff and the Class must replace the defective TCI flex pipe, and will suffer damages as a result.  These damages include the cost of parts and labor for the replacement of the TCI flex pipe, and lost profits and other costs associated with being forced to close the retail operation for the repiping.  Each member of the class has suffered injury in that, the pipe in question has failed because it is inherently defective.

WHEREFORE, the premises considered, Plaintiff demands judgment against defendants for such compensatory damages as the evidence supports, costs of suit and such other and further relief as may be equitable.

## PLAINTIFF DEMANDS TRIAL BY STRUCK JURY

Respectfully Submitted,

_Nick T. Doyle_

Counsel for Plaintiff and the Putative Class

7

<u>**OF COUNSEL:**</u>

Lynn Jinks
Christy Crow
JINKS, DANIEL & CROW, LLC
Post Office Box 350
Union Springs, Alabama  36089

Russell Jackson Drake
Nicola Thompson Drake
WHATLEY DRAKE & KALLAS, L.L.C.
2323 Second Avenue North
P.O. Box 10647
Birmingham, AL  35202-0647
(205) 328-9576
Facsimile (205) 328-9669

Wesley L. Laird (LAI005)
LAIRD, BAKER & BLACKSTOCK, LLC
501 North Main Street
Opp, Alabama 36467

L. Cooper Rutland, Jr. (RUT010)
RUTLAND AND BRASWELL, LLC
208 North Prairie Street
Union Springs, AL  36089

## CERTIFICATE OF SERVICE

I certify that a copy of the above and foregoing has been served upon the following counsel by email and by placing a copy in the U.S. Mail on this the 13th day of July, 2006.

<u>Attorneys for Ticona Polymers, Inc.</u>
Alan T. Rogers, Esq.
BALCH & BINGHAM, LLP
Post Office Box 306
Birmingham, AL 35201-0306
arogers@balch.com

Paul A. Clark, Esq.
BALCH & BINGHAM, LLP
Post Office Box 78
Montgomery, AL 36101
pclark@balch.com

Paul M. O'Connor III, Esq.
Seth A. Moskowitz, Esq.
Jon Avins, Esq.
KASOWITZ, BENSON, TORRES & FRIEDMAN
1633 Broadway
New York, NY  10019-6799
poconnor@kasowitz.com
smoskowitz@kasowitz.com

Walter B. Calton, Esq.
Post Office Box 696
Eufaula, AL  36072-0696
wcalton@bellsouth.net

8

Attorneys for Cleveland Tubing, Inc.
James H. McLemore, Esq.
CAPELL & HOWARD, P.C.
150 South Perry Street (36104)
Post Office Box 2069
Montgomery, Alabama 36102-2069
jhm@chlaw.com

T. Harold Pinkley, Esq.
MILLER & MARTIN, LLP
1200 First Union Tower
150 Fourth Avenue North
Nashville, TN 37219
hpinkley@millermartin.com

Lynda M. Hill, Esq.
James Williams, Esq.
MILLER & MARTIN, PLLC
Suite 1000, Volunteer Bldg.
832 Georgia Avenue
Chattanooga, TN 37402
lhill@millermartin.com
jwilliams@millermartin.com

Attorneys for Dayco Products, Inc.
and Mark IV Industries, Ltd.
Joseph T. Carpenter Esq. (CAR038)
Nathan C. Prater, Esq.
Brian Mosholder, Esq.
John DeShazo, Esq.
CARPENTER, PRATER, INGRAM
& MOSHOLDER LLP
303 Sterling Centre
4121 Carmichael Road
Montgomery, AL 36106
jccarpenter@carpenterfirm.com
nprater@carpenterfirm.com
bmosholder@carpeterfirm.com
jdeshazo@carpenterfirm.com

Kimberly W. Sayoc, Esq.
LIPPES SILVERSTEIN MATHIAS &
WEXLER 700 Guaranty Building
28 Church Street
Buffalo, NY 14202-3950
ksayoc@lippes.com

L. Shane Seaborn, Esq.
Myron C. Penn, Esq.
PENN & SEABORN, LLC
Post Office Box 688
Clayton, AL 36106

Attorneys for Underwriters
Laboratories, Inc.
Walter E. McGowan, Esq.
GRAY, LANGFORD, SAPP,
MCGOWAN, GRAY &
NATHANSON
P.O. Box 830239
Tuskegee, AL 36083-0239
wem@glsmgn.com

Charles Donald, Marshall, III, Esq.
John Olinde, Esq.
Brent Arnold Talbot, Esq..
Robert S. Rooth, Esq.
CHAFFE McCALL, PHILLIPS, TOLER &
SARPY
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163
(504) 585-7000
talbot@chaffe.com
olinde@chaffe.com
marshall@chaffe.com
rooth@chaffe.com

James E. Blazek
Adams & Reese, LLP
One Shell Square
701 Poydras Street, Suite 4500
New Orleans, LA  70139

OF COUNSEL

10