## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

**MAY'S DISTRIBUTING COMPANY, INC.,**

      **plaintiff,**                      **No. 06-702 MEF**

**v.**

**TOTAL CONTAINMENT, INC., et al.,**

      **defendants.**

---

**COMMERCE & INDUSTRY INSURANCE
COMPANY OF CANADA,**

      **intervenor-plaintiff,**

**v.**

**MAY'S DISTRIBUTING COMPANY, INC.,**

      **cross-defendant.**

### COMPLAINT FOR DECLARATORY JUDGMENT BY INTERVENOR
### COMMERCE & INDUSTRY INSURNACE COMPANY OF CANADA

#### Parties

1.      Intervenor-plaintiff Commerce & Industry Insurance Company of Canada (C&I) is a foreign corporation with its principal place of business in Montreal, Canada.

2.      Cross-defendant May's Distributing Company, Inc. (May's) is an Alabama corporation with its principle place of business at 102 Martin Luther King, Blvd., Union Springs, Alabama.

#### Jurisdiction and Venue

3.      This Court has jurisdiction in this action under 28 U.S.C. §1332, as amended, because this matter involves a dispute between citizens of different countries and the value in controversy exceeds $75,000, exclusive of interest and costs.

4.    Venue is proper in this district pursuant to 28 U.S.C. §1391(a) because May's resides and conducts business in this district and a substantial part of the events giving rise to this claim occurred in the district.

5.    C&I is entitled to declaratory relief under 28 U.S.C. §2201.

### Introductory Statement

6.    C&I issued policy Nos. 546-85-09, effective June 30, 1999, to June 30, 2000, 546-87-45, effective June 30, 2000, to June 30, 2001, No. 546-89-97, effective June 30, 2001, to June 30, 2002, and No. 546-93-58, effective June 30, 2002, to December 24, 2002.  A copy of each policy is attached as Exhibit A.  C&I seeks a declaration regarding its indemnity obligations, if any, to May's and the potential class members under the policy with regard to claims they are asserting in this action.

7.    C&I denies that it has any coverage obligations under the policy for any damages that May's or any potential class member may recover from TCI in this action.

### Facts

8.    On March 4, 2004, TCI filed for bankruptcy protection.  May's sought an order from the bankruptcy court lifting the automatic stay.  The bankruptcy court granted the motion in an order dated December 14, 2004 (the Bankruptcy Order).  A copy of the Bankruptcy Order is attached as Exhibit B.

9.    The Bankruptcy Order modifies the automatic stay under the Bankruptcy Code stay to permit May's to proceed to prosecute is claims against TCI in this matter "limiting any recovery to insurance proceeds, if any exist."

10.    May's is the real party in interest with respect to the coverage afforded under the C&I policies because TCI can not be made to pay any damages to which May's

323432v.1

becomes entitled in this action and the policy proceeds are not the property of the TCI bankruptcy estate.

11.     In a letter dated September 6, 2006, counsel for TCI's Plan Administrator notified C&I's counsel that May's had filed a fourth amended complaint. The Plan Administrator requested that C&I defend and indemnify TCI with respect to May's suit. A copy of the letter is attached as Exhibit C.

12.     In a letter dated September 20, 2006, C&I informed counsel for TCI's Plan Administrator that it would defend TCI's underlying liability subject to a full reservation of rights to deny coverage. This letter is attached as Exhibit D. C&I has not agreed to cover TCI under the policy or made a final determination regarding whether the policy provides coverage for the plaintiffs' claims. C&I has reserved its right to withdraw from defending TCI's liability and to assert any coverage defenses to which it may be entitled.

13.     May's alleges in its complaint that it owns two gasoline distributing facilities equipped with underground thermoplastic flexible hose (flexhose) and secondary containment system allegedly designed, manufactured, marketed, distributed and sold by TCI and other defendants.

14.     May's further alleges that it and other potential class members have suffered damages because the flexhose is defective requiring them to repair or replace the flexhose, secondary containment system or both.

15.     The policy contains terms and conditions that must be satisfied before C&I is obligated to indemnify May's or any potential class member for any damages for

323432v.1

which TCI is found liable. Coverage may be precluded for May's or any other class member's claims for one or more of the following reasons:

   a. Coverage is barred to the extent that a claimant has not suffered damages because of "bodily injury" or "property damage", as those terms are defined in the policy.

   b. Coverage is barred to the extent that any bodily injury or property damage is not the result of an "occurrence", as that term is defined in the policy.

   c. Coverage is barred to the extent that any bodily injury or property damage did not occur during the policy period.

   d. Coverage is barred to the extent that a claim for damages because of bodily injury or property damage was not first made during the policy period.

   e. Coverage is barred to the extent that any bodily injury or property damage was expected or intended from the insured's standpoint.

   f. Coverage is barred for any property damage to the extent that exclusion "k" applies.

   g. Coverage is barred for any property damage to the extent that exclusion "l" applies.

   h. Coverage is barred for any property damage to the extent that exclusion "m" applies.

   i. Coverage is barred to the extent that the self-insured retention, any underlying coverage or both has not been exhausted.

   j. Coverage is barred to the extent that the pollution exclusion applies.

   k. Coverage may be barred under the policy for other reasons not listed here.

## Count I- Declaratory Relief

16.    C&I repeats and incorporates by reference all the allegations set forth in paragraphs 1 to 15 as if fully set forth below.

17.    A controversy exists among the parties regarding C&I's coverage obligations under the policy.

323432v.1

18.    C&I seeks a judicial declaration of its rights and duties under the policy with respect to any damages that May's or any other potential class member may be entitled to recover from TCI in this action so that the parties will be bound by the same interpretation of the policy.

WHEREFORE, C&I requests the following declaratory relief:

1.    A declaration regarding C&I's duties, if any, and the plaintiff's and any potential class member's rights, if any, under the policy with respect to their claims against TCI in this action.

2.    Such other relief as the Court may deem just and proper.

Respectfully submitted,

/s/ S. Lisa Frost
John W. Dodson, Esq.        DOD012
S. Lisa Frost, Esq.          MOR065
Ferguson, Frost & Dodson, LLP
Post Office Box 430189
Birmingham, Alabama  35243
Telephone: (205) 879-8722
Facsimile: (205) 879-8831
Counsel for Commerce & Industry
Insurance Company of Canada

Richard W. Bryan, Esq.
Paul D. Smolinsky, Esq.
Jackson & Campbell, P.C.
1120 Twentieth Street, N.W.
Suite 300
Washington, DC 20036
Additional Counsel for Commerce & Industry
Insurance Company of Canada (who will be filing
immediately for admission *pro hac vice*)

## CERTIFICATE OF SERVICE

This is to certify that on this the 28th day of December 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**ATTORNEYS FOR PLAINTIFF**

Lynn W. Jinks, III
Christy Crow
JINKS, DANIEL & CROW, LLC
Post Office Box 350
Union Springs, AL 36089
334-738-4225 Phone
334-738-4229 Fax

Russell Jackson Drake
Nicola Thompson Drake
WHATLEY DRAKE & KALLAS, LLC
Post Office Box 10647
Birmingham, AL 35202-0647
205-328-9576 Phone
205-328-9669 Fax

Wesley L. Laird
LAIRD, BAKER & BLACKSTOCK
501 North Main Street
Opp, AL 36467
334-493-9716 Phone
334-493-9715 Fax

L. Cooper Rutland, Jr.
RUTLAND AND BRASWELL, LLC
208 North Prairie Street
Union Springs, AL 36089
334-738-4770 Phone
334-738-4774 Fax

**ATTORNEYS FOR TICONA POLYMERS, INC.**

Walter B. Calton
Post Office Box 696
Eufaula, AL 36072-0696
334-687-2407 Phone
334-687-2466 Fax

Alan T. Rogers
BALCH & BINGHAM, LLP
Post Office Box 306
Birmingham, AL 35201-0306
205-251-8100 Phone
205-266-8798 Fax

Paul A. Clark
BALCH & BINGHAM, LLP
Post Office Box 78
Montgomery, AL 36101
334-834-6500 Phone
334-269-3155 Fax

Paul M. O'Conner, III
Seth A. Moskowitz
Jon Avins
KASOWITZ, BENSON, TORRES & FRIEDMAN
1633 Broadway
New York, NY 10019-6799
212-506-1917 Phone
212-506-1800 Fax

**ATTORNEYS FOR CLEVELAND
TUBING, INC.**
James H. McLemore
CAPELL & HOWARD
Post Office Box 2069
Montgomery, AL 36102
334-241-8058  Phone
334-323-8888  Fax


T. Harold Pinkley
MILLER & MARTIN, LLP
1200 First Union Tower
150 Fourth Avenue North
Nashville, TN 37219
615-744-8548  Phone
615-744-8643  Fax

Lynda M. Hill
James T. Williams, IV
MILLER & MARTIN, PLLC
Volunter Bldg., Suite 1000
832 Georgia Avenue
Chattanooga, TN 37402-2289
423-785-6600  Phone
423-785-8480  Fax

**ATTORNEYS FOR TOTAL
CONTAINMENT, INC.**
Elliott Britton  Monroe
Jennifer McCammon Bedsole
Rachel Ellen VanNortwick
LLOYD, GRAY & WHITEHEAD, P.C.
2501 Twentieth Place South
Suite 300
Birmingham, AL 35233
205-967-8822  Phone
205-967-2380  Fax

Lindsey M. Glah
William Pelosi
OBERMEYER REBMANN MAXWELL
& HIPPEL LLP
One Penn Center, 19th Floor
1617 John F. Kennedy Blvd

**ATTORNEYS FOR UNDERWRITERS
LABORATORIES, INC.**
Walter E. McGowen
GRAY, LANGFORD, SAPP,
MCGOWAN, GRAY & NATHANSON
Post Office Box 830239
Tuskegee, AL 36083-0239
334-727-4830  Phone
334-727-5877  Fax


Charles Donald Marshall, III
John Olinde
Brent Arnold Talbot
Robert S. Rooth
CHAFFE, McCALL, PHILLIPS, TOLER
& SARPY
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163
504-585-7226  Phone
504-544-6088  Fax


**ATTORNEYS FOR DAYCO
PRODUCTS, INC. and
MARK IV INDUSTRIES, LTD.**
Ann R. Koppel
Donna M. Borrello
James E. Blazek
Richard B. Eason, II
ADAMS and REESE LLP
4500 One Shell Square
New Orleans, LA 70139
504-581-3234  Phone
504-566-0210  Fax

John David Whetstone
ADAMS and REESE LLP
Post Office Box 1348
Mobile, AL 36633
251-433-3234  Phone
251-438-7733  Fax

Philadelphia, PA 19103-1895
215-665-3000  Phone
215-665-3165  Fax

Brian Taggart Mosholder
Joseph Terrace Carpenter
Nathan Craig Prater
CARPENTER PRATER INGRAM &
MOSHOLDER LLP
4121 Carmichael Road
303 Sterling Centre
Montgomery, AL 36106
334-213-5600  Phone
334-213-5650  Fax

Kimberly Wallace Sayoc
LIPPES SILVERSTEIN MATHIAS
WEXLER LLP
700 Guarantee Building
28 Church Street
Buffalo, NY 14202-3950
716-853-5100  Phone
716-853-5199  Fax

Larry Shane Seaborn
Myron C. Penn
PENN & SEABORN LLC
Post Office Box 688
Clayton, AL 36016
334-775-9778 Phone
334-775-9779 Fax

/s/ S. Lisa Frost_____
OF COUNSEL

141261

323432v.1

# EXHIBIT A

**COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA**
Canadian Head Office
145 Wellington Street West, Toronto, Ontario  M5J 1H8

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**DECLARATIONS**

**POLICY NO:**   546-85-09

**Effective Date:**  June 30, 1999 to June 30, 2000
12:01 a.m. Standard Time

| NAMED INSURED | Les Placements CMI Inc. |
|---|---|
| | Total Containment Inc. |
| | Any past, present and/or future subsidiary or controlled companies as may be created or acquired |
| | Any of their pension plans, committee members, employee clubs and recreational organizations. |

| MAILING ADDRESS | 11535 1ère avenue, St. Georges de Beauce, Québec, G5Y 7H5 |
|---|---|

**LIMITS OF INSURANCE**

| | | |
|---|---|---|
| Products – Completed Operations Aggregate Limit | $10,000,000 | |
| Personal and Advertising Injury Limit | $10,000,000 | |
| Each Occurrence Limit | $10,000,000 | |
| Fire Damage Limit | $10,000,000 | |
| Medical Expense Limit | $ 25,000 | Any One Person |

**RETROACTIVE DATE (CG 00 02 only)**
Coverage A of this Insurance does not apply to "bodily injury" or "property damage" which occurs before the Retroactive Date, if any, shown here: Jan. 24, 1989      (enter date or "none" if no Retroactive Date applies)

**BUSINESS DESCRIPTION AND LOCATION OF PREMISES**
**Form of Business:**

☐ Individual     ☐ Joint Venture     ☐ Partnership     ☒ Organization
(Other than Partnership or Joint Venture)

**Business Description\***: All operations of the Insured consisting principally of but not limited to the manufacture, distribution and installation of piping, fluid handling equipment and fiberglass containers.

**Location of All Premises you Own, Rent or Occupy:**
422 Business Center, A130, PO Box 939, Oaks, PA 19456
Various other premises, blanket basis

**PREMIUM**

| Premium Base | Rate | Advance Premium | Minimum Annual Premium |
|---|---|---|---|
| Flat | Flat | $390,109 | $390,109 |

**FORMS AND ENDORSEMENTS (other than applicable Forms and Endorsements shown elsewhere in the policy)**
Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue:

\*Information omitted if shown elsewhere in the policy.

Page 1 of 2

CONFIDENTIAL
C&I 000001

**THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD**

July 30, 1999  DL/mv
Date

Commerce & Industry Insurance Company of Canada

Page 2 of 2

CONFIDENTIAL
C&I 000002

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM
## COVERAGES A. AND B. PROVIDE CLAIMS-MADE COVERAGE
### PLEASE READ THE ENTIRE FORM CAREFULLY

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION VI).

## SECTION I -- COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement.**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS-COVERAGES A AND B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

      (3) A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with paragraph c. below, during the policy period or any Extended Reporting Period we provide under EXTENDED REPORTING PERIODS (Section V).

   c. A claim by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

      (1) When notice of such claim is received and recorded by any insured or by us, whichever comes first; or

      (2) When we make settlement in accordance with paragraph 1.a. above.

   All claims for damages because of "bodily injury" to the same person, including damages claimed by any person or organization for care, loss of services, or death resulting at any time from the "bodily injury," will be deemed to have been made at the time the first of those claims is made against any insured.

   All claims for damages because of "property damage" causing loss to the same person or organization will be deemed to have been made at the time the first of those claims is made against any insured.

2. **Exclusions.**

   This insurance does not apply to:

   a. **Expected or Intended Injury**
      "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

Page 1 of 14

CONFIDENTIAL
C&I 000003

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage" provided:

  (a) Liability to such party for, or for the cost of that party's defense has also been assumed in the same "insured contract"; and

  (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers Compensation and Similar Laws**

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An employee of the insured arising out of and in the course of:
  (a) Employment by the insured; or
  (b) Performing duties related to the conduct of the insured's business, or

(2) The spouse, child, parent, brother or sister of that employee as a consequence of paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f. **Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

  (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

  (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

  (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

  (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

    (i) if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

    (ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraph (d) (i) does not apply to "bodily injury" or "property damage" arising out the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape

Page 2 of 14

CONFIDENTIAL
C&I 000004

from a vehicle part designed to hold, store or receive them. this exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or sub-contractor.

Subparagraphs (a) and (d)(i) do not apply to "bodily injury" or "property damage" arising out of heat, stroke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2)    Any loss, cost or expense arising out of any:

  (a)  Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants-, or

  (b)  Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

g.  **Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment, to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1)    A watercraft while ashore on premises you own or rent;

(2)    A watercraft you do not own that is:

  (a)  Less than 26 feet long; and

  (b)  Not being used to carry persons or property for a charge;

(3)    Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto"

is not owned by or rented or loaned to you or the insured;

(4)    Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5)    "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h.  **Mobile Equipment**
"Bodily injury" or "property damage" arising out of:

(1)    The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2)    The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged    racing, speed or demolition or stunting activity.

i.  **War**
"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j.  **Damage to Property**

"Property damage" to

(1)    Property you own, rent or occupy;

(2)    Premises you sell, give away or abandon, if, the "property damage" arises out of any part of those premises;

(3)    Property loaned to you;

(4)    Personal property in the care, custody or control of the insured;

(5)    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage arises out of those operations; or

(6)    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

Page 3 of 14

CONFIDENTIAL
C&I 000005

k. **Damage to Your Product**
"Property damage" to "your product" arising out of it or any part of it.

l. **Damage to Your Work**
"Property damage" to "your work" arising out of it or any part of it and included in the products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. **Damage to Impaired Property or Property Not Physically Injured**
"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. **Recall of Products, Work or Impaired Property**
Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (SECTION III).**

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

1. **Insuring Agreement.**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or offense and settle any claim "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

b. This insurance applies to:

(1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

(2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if:

(1) the offense was committed in the "coverage territory";

(2) The offense was not committed before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

(3) A claim for damages because of the "personal injury" or "advertising injury" is first made against any insured, in accordance with paragraph c. below, during the policy period or any Extended reporting Period we provide under EXTENDED REPORTING PERIODS (Section V).

c. A Claim made by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

(1) When notice of such claim is received and recorded by any insured or by us, whichever comes first; or

(2) When we make settlement in accordance with paragraph 1.a. above.

All claims for damages because of "personal injury" or "advertising injury" to the same person or organization as a result of an offense will be deemed to have been made at the time the first of these claims is made against any insured.

CONFIDENTIAL
C&I 000006

**COVERAGE C. MEDICAL PAYMENTS**

2. **Exclusions.**

This insurance does not apply to:

a. "Personal injury" or "advertising injury":

    (1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

    (2) Arising out of oral or written publication of material whose first publication took place before the Retroactive Date, if any, shown in the Declarations.

    (3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

    (4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.; or

    (5) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

b. "Advertising injury" arising out of:

    (1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

    (2) The failure of goods, products or services to conform with advertised quality or performance;

    (3) The wrong description of the price of goods, products or services; or

    (4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

c. Any loss, cost or expense arising out of any:

    (1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of pollutants; or

    (2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditions or reclaimed.

1. **Insuring Agreement.**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

    (1) On premises you own or rent;

    (2) On ways next to premises you own or rent; or

    (3) Because of your operations;

provided that:

    (1) The accident takes place in the "coverage territory" and during the policy period;

    (2) The expenses are incurred and reported to us within one year of the date of the accident; and

    (3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

    (1) First aid at the time of an accident;

    (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

    (3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions.**

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an employee of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard".

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

Page 5 of 14

CONFIDENTIAL
C&I 000007

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

We will pay, with respect to any claim or "suit" we investigate or settle, or any "suit" against an insured we defend:

1.   All expenses we incur.

2.   Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3.   The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4.   All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

5.   All costs taxed against the insured in the "suit".

6.   Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7.   All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a.   The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b.   This insurance applies to such liability assumed by the insured;

c.   The obligation to defend, or the cost of the defense of that indemnitee, has also been assumed by the insured in the same "insured contract";

d.   The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e.   The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f.   The indemnitee:

(1)   Agrees in writing to:

(a)   Cooperate with us in the investigation, settlement or defense of the "suit";

(b)   Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c)   Notify any other insurer whose coverage is available to the indemnitee; and

(d)   Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2)   Provide us with written authorization to:

(a)   Obtain records and other information related to the "suit"; and

(b)   Conduct and control the defense of the indemnitee in such "suit."

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request, will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph 2.b.(2) of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section 1 – Coverages), such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

a.   We have used up the applicable limit of insurance in the payment of judgements or settlements; or

b.   The conditions set forth above, or the terms of the agreement described in paragraph f. above, are no longer met.

**SECTION II – WHO IS AN INSURED**

1.   If you are designated in the Declarations as:

a.   An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner;

b.   A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c.   A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d.   An organization other than a partnership or joint venture or limited liability company, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

CONFIDENTIAL
C&I 000008

2.    Each of the following is also an insured:

    a.    Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

    (1)   "Bodily injury" or "personal injury"

       (a)   To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

       (b)   To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph (1)(a) above;

       (c)   For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1)(a) or (b) above; or

       (d)   Arising out of his or her providing or failing to provide professional health care services.

    (2)   "Property damage" to property

       (a)   owned or occupied or used by,

       (b)   Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

    you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

    b.    Any person (other than your "employee"), or any organization while acting as your real estate manager.

    c.    Any person or organization having proper temporary custody of your property if you die, but only:

    (1)   With respect to liability arising out of the maintenance or use of that property; and

    (2)   Until your legal representative has been appointed.

    d.    Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3.    With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

    a.    "Bodily injury" to a co-"employee" of the person driving the equipment; or

    b.    "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4.    Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

    a.    Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

    b.    Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

    c.    Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III -- LIMITS OF INSURANCE

1.    The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    a.    Insureds;

    b.    Claims made or "suits" brought; or

    c.    Persons or organizations making claims or bringing "suits".

2.    The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

3.    The Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

4.    Subject to 2. above, the Each Occurrence Limit is the most we will pay for the sum of:

Page 7 of 14

CONFIDENTIAL
C&I 000009

a.   Damages under Coverage A; and

b.   Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

5.   Subject 4 above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

6.   Subject to 4. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The limits of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1.   **Bankruptcy.**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part,

2.   **Duties In The Event Of Occurrence, Offense, Claim Or Suit.**

a.   You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.  To the extent possible, notice should include:

(1)   How, when, and where the "occurrence" or offense took place;

(2)   The names and addresses of any injured persons and witnesses; and

(3)   The nature and location of any injury or damage arising out of the "occurrence" or offense.

Notice of an "occurrence" or offense is not notice of a claim.

b.   If a claim is received by any insured, you must::

(1)   Immediately record the specifics of the claim and the date received; and

(2)   Notify us as soon as practicable.

You must see to it that we receive written notice of the claim as soon as practicable.

c.   You and any other involved insured must:

(1)   Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or a "suit";

(2)   Authorize us to obtain records and other information;

(3)   Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4)   Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d.   No insureds will, except at that Insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3.   **Legal Action Against Us.**

No person or organization has a right under this Coverage Part:

a.   To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b.   To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance.  An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4.   **Other Insurance.**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a.   Primary Insurance

This insurance is primary except when b. below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in c. below.

b.   Excess Insurance

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

(1)   That is effective prior to the beginning of the policy period shown in the Declarations of this insurance and applies to "bodily injury" of

CONFIDENTIAL
C&I 000010

"property damage" on other than a claims-made basis, if:

(a) No Retroactive Date is shown in the Declarations of this insurance; or

(b) The other insurance has a policy period which continues after the Retroactive Date shown in the Declarations of this insurance;

(2) That is Fire, Extended coverage, Builders' Risk, Installation Risk or similar coverage for "your work";

(3) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

(4) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c.  Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

5.  **Premium Audit.**

a.  We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b.  Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period.

Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c.  The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6.  **Representations.**

By accepting this policy, you agree:

a.  The statements in the Declarations are accurate and complete;

b.  Those statements are based upon representations you made to us; and

c.  We have issued this policy in reliance upon your representations.

7.  **Separation Of Insureds.**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a.  As if each Named Insured were the only Named Insured; and

b.  Separately to each insured against whom claim is made or "suit" is brought.

8.  **Transfer Of Rights Of Recovery Against Others To Us.**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9.  **Cancellation**

a)  This Policy may be canceled by the First Named Insured by giving us written notice stating when, thereafter, such cancellation is to become effective. Return premium shall be computed on the customary short rate basis, subject to the retention by us of the minimum premium, if any, stated in the Declarations; or if the premium is so adjustable, based on the actual exposure for the period of time the Policy was in force.

b)  This Policy may be canceled by us for non-payment of premium by giving to the First Named Insured fifteen (15) days notice of cancellation by registered mail or personally delivered. Notice to the First Named Insured shall constitute notice to all Insureds.

CONFIDENTIAL
C&I 000011

c)  This Policy may be canceled by us by giving to the First Named Insured ninety (90) days notice in writing of cancellation by registered mail and refunding the excess of paid premium beyond the pro rata earned premium for the expired time, subject if applicable to final premium adjustment as soon as practicable based on the actual gross receipts for the period of time the Policy was in force. Notice to the First Named Insured shall constitute notice to all Insureds.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**10.  Your Right to Claim and "Occurrence" Information.**

We will provide the first Named Insured shown in the Declarations the following information relating to this and any preceding general liability claims-made Coverage Part we have issued to you during the previous three years:

a.  A list or other record of each "occurrence," not previously reported to any other insurer, of which we were notified in accordance with paragraph 2.a. of the DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM OR SUIT Condition in COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV). We will include the date and brief description of the "occurrence" if that information was in the notice we received.

b.  A summary by policy year, of payments made and amounts reserved, stated separately, under any applicable General Aggregate Limit and Products-Completed Operations Aggregate Limit.

Amounts reserved are based on our judgment. They are subject to change and should not be regarded as ultimate settlement values.

You must not disclose this information to any claimant or any claimant's representative without our consent.

If we cancel or elect not to renew this Coverage Part, we will provide such information no later than 30 days before the date of policy termination. In other circumstances, we will provide this information only if we receive a written request from the first Named Insured within 60 days after the end of the policy period. In this case, we will provide this information within 45 days of receipt of the request.

We compile claim and "occurrence" information for our own business purposes and exercise reasonable care in doing so. In providing this information to the first Named Insured, we make no representations or warranties to insureds, insurers, or others to whom this information is furnished by or on behalf of any insured. Cancellation or non-renewal will be effective even if we inadvertently provide inaccurate information.

**SECTION V – EXTENDED REPORTING PERIODS**

1.  We will provide one or more Extended Reporting Periods, as described below, if:

a.  This Coverage Part is cancelled or not renewed; or

b.  We renew or replace this Coverage Part with insurance that:

(1)  Has a Retroactive Date later than the date shown in the Declarations of this Coverage Part; or
(2)  Does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" on a claims-made basis.

2.  Extended Reporting Periods do not extend the policy period or change the scope of coverage provided they apply only to claims for:

a.  "Bodily injury" or "property damage" that occurs before the end of the policy period but not before the Retroactive date, if any, shown in the Declarations; or

b.  "Personal injury" or "advertising injury" caused by an offense committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Declarations.

Once in effect, Extended Reporting Periods may not be cancelled.

3.  A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the policy period and lasts for:

a.  Five years with respect to claims because of "bodily injury" and "property damage" arising out of an "occurrence" reported to us, not later than 60 days after the end of the policy period, in accordance with paragraph 2.a. of the DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM OR SUIT Condition in COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV);

b.  Five years with respect to claims because of "personal injury" and "advertising injury" arising out of an offense reported to us, not later than 60 days after the end of the policy period, in accordance with paragraph 2.a. of the DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM OR SUIT Condition in COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV);

c.  Sixty days with respect to claims arising from "occurrences" or offenses not previously reported to us.

The Basic Extended Reporting Period does not apply to claims that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such claims.

4.  The Basic Extended Reporting Period does not reinstate or increase the Limits of Insurance.

5.  A Supplemental Extended Reporting Period of 12 months duration is available, but only by an endorsement and for an extra charge. This supplemental period starts when the Basic Extended Reporting Period, set forth in paragraph 3. above, ends.

You must give us a written request for the endorsement within 60 days after the end of the policy period. The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

CONFIDENTIAL
C&I 000012

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

a. The exposures insured;
b. Previous types and amounts of insurance;
c. Limits of Insurance available under this Coverage Part for future payment of damages; and
d. other related factors.

The additional premium will not exceed 100% of the annual premium for this Coverage Part.

This endorsement shall set forth the terms, not inconsistent with this Section, applicable to the Supplemental Extended Reporting Period, including a provision to the effect that the insurance afforded for claims first received during such period is excess over any other valid and collectible insurance available under policies in force after the Supplemental Extended Reporting Period starts.

6. The Supplemental Extended Reporting Period does not reinstate or increase the Limits of Insurance.

## SECTION VI - DEFINITIONS

1. "Advertising injury" means injury arising out of one or more of the following offenses:

   a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   b. Oral or written publication of material that violates a person's right of privacy;

   c. Misappropriation of advertising ideas or style of doing business; or

   d. Infringement of copyright, title or slogan.

2. "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, discrimination (where insurance thereof is permitted by law), mental anguish, shock humiliation, harassment, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

   c. All parts of the world if:

      (1) The injury or damage arises out of:

         (a) Goods or products made or sold by you in the territory described in a. above; or

         (b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

      (3) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker." "Employee" includes a "temporary worker."

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

8. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "Insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for

CONFIDENTIAL
C&I 000013

"bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

9. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

10. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

11. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

13. "Personal injury" means injury, other than "bodily injury" arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

CONFIDENTIAL
C&I 000014

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

14. Products-completed operations hazard":

a. includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification in the Declarations or in a policy schedule, states that products-completed operations are subject to the General aggregate limit.

15. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

16. "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

17. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

18. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

19. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

Page 13 of 14

CONFIDENTIAL
C&I 000015

July 30, 1999     DL/mv
Date                                          _____
                                              Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000016

**ENDORSEMENT NO. 1**

This endorsement, effective 12:01 A.M. June 30, 1999

forms a part of Policy No. 5468509

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.

It is agreed that:

1) coverage is restricted to apply only to liability arising from:

    Total Containment Inc.;

    Any past, present and/or future subsidiary or controlled company of Total Containment Inc., as may now exist or be hereinafter created or acquired; or

    Any of the pension plans, committee members, employee clubs and recreational organizations of the foregoing.

2) Certificate holders, for whom the Named Insured has agreed to supply insurance, are added as Additional Insureds, but only in respect of liability arising from the Named Insured's operations.

3) Installers and applicators, for whom the Named Insured has agreed to supply insurance, are added as Additional Insureds, but only in respect to work performed on behalf of the Named Insured.

4) Unless expressly indicated otherwise, all Limits of Insurance, Premiums, Deductibles and other amounts of money are expressed in USA currency.

July 30, 1999     DL/mv
Date

_____
Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000017

**ENDORSEMENT NO. 2**

This endorsement, effective 12:01 A.M. June 30, 1999

forms a part of Policy No. 5468509

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.

**SELF-INSURED RETENTION**

IT IS HEREBY UNDERSTOOD AND AGREED that:

1) The Limit of Liability as stated in the Declarations shall be in excess of the following Self-Insured Retention to be borne by the Insured:

> One hundred thousand dollars ($100,000.00) each occurrence including defense and loss adjustment expense

2) The Insurer shall have the right but not the duty to investigate, negotiate, settle or defend losses or claims within the Self-Insured Retention but may, at the Insured's request perform the above mentioned services, in which event the Insurer may pay any part or all of the Self-Insured Retention amount to effect settlement of any claim or suit and, upon notification of the action taken, the Named Insured shall promptly reimburse the Insurer for such part of the Self-Insured Retention amount as has been paid by the Insurer.

3) The Insured shall immediately notify the Insurer in writing of any claim to which this policy applies which:

   a) involved serious bodily injury or fatality;

   b) the Insured has received notice of suit in which the amount claimed exceeds the Self-Insured Retention;

   c) may exceed 25% of the Self-Insured Retention.

4) The Insured shall have the right to pay, at their sole discretion, any claim which falls entirely within the amount of the stated Self-Insured Retention.

   Claims which are self-administered because they appear to be below the Self-Insured Retention should not be defeated if subsequent results exceed the Self-Insured Retention. Upon discovery of such a claim, notice shall given to Insurers as soon as possible.

5) The Self-Insured Retention stated above shall be deemed applicable irrespective of the inability of the Insured to pay by reason of bankruptcy, insolvency, or by the Insured's refusal to pay.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

July 30, 1999 _____ DL/mv                          _____
Date                                               Commerce & Industry Insurance Company of Canada

Page 1 of 1

CONFIDENTIAL
C&I 000018

**ENDORSEMENT NO. 3**

This endorsement, effective 12:01 A.M. June 30, 1999

forms a part of Policy No. 5468509

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**HIRED AUTO AND NON-OWNED AUTO LIABILITY**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

Insurance is provided only with respect to those coverages for which a specific premium charge is shown:

| Coverage | Additional Premium |
|---|---|
| Non-Ownership Liability | $ Included |
| Hired Auto Liability | $ Included |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**HIRED AUTO LIABILITY**

The insurance provided under COVERAGE A (Section I) applies to "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" by you or your employees in the course of your business.

With respect to the insurance provided by this endorsement:

1. The exclusions, under COVERAGE A (Section I), other than exclusions a, b, d, f and I and the Nuclear Energy Liability Exclusion (Broad Form) are deleted and replaced by the following:

    a.  "Bodily Injury"

        (1)  To an employee of the insured arising out of and in the course of employment by the insured, or

        (2)  To the spouse, child, parent, brother or sister of that employee as a consequence of (1) above.

This exclusion applies:

(1)  Whether the insured may be liable as an employer or in any other capacity; and

(2)  To any obligation to share damages with or repay someone else who must pay damages because of injury.

This exclusion does not apply to:

(1)  Liability assumed by the insured under an "insured contract", or

Page 1 of 3

CONFIDENTIAL
C&I 000019

(2) "Bodily Injury" arising out of and in the course of domestic employment by the insured unless benefits for such injury are in whole or in part either payable or required to be provided under any workers compensation law.

b. "Property damage" to:

(1) Property owned or being transported by or rented or loaned to the insured; or

(2) Property in the care, custody or control of the insured.

2. WHO IS AN INSURED (Section II) is replaced by the following:

Each of the following is an insured under this insurance to the extent set forth below:

    a. You;

    b. Any other person using a "hired auto" with your permission;

    c. With respect to a "non-owned auto," any partner or executive officer of yours, but only while such "non-owned auto" is being used in your business;

    d. Any other person or organization, but only with respect to their liability because of acts or omissions of an insured under a., b., or c. above.

None of the following is an insured:

    a. Any person engaged in the business of his or her employer with respect to "bodily injury" to any co-employee of such person injured in the course of employment;

    b. Any partner or executive officer with respect to any "auto" owned by such partner or officer or a member of his or her household;

    c. Any person while employed in or otherwise engaged in duties in connection with an "auto business", other than an "auto business" you operate;

    d. The owner or lessee (of whom you are a sublessee) of a "hired auto" or the owner of a "non-owned auto" or any agent or employee of any such owner or lessee;

    e. Any person or organization with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

**NON-OWNED AUTO LIABILITY**

The insurance provided under COVERAGE A (Section I) applies to "bodily injury" or "property damage" arising out of the use of any "non-owned auto" in your business by any person other than you.

Page 2 of 3

CONFIDENTIAL
C&I 000020

The following additional definitions apply:

"Auto business" means the business or occupation of selling, repairing, servicing, storing or parking "autos", "Hired auto" means any "auto" you lease, hire, or borrow. This does not include any "auto" you lease, hire or borrow from any of your employees or members of their households, or from any partner or executive officer of yours.

"Non-owned auto" means any "auto" you do not own, lease, hire or borrow which are used in connection with your business. However, if you are a partnership a "non-owned auto" does not include any auto owned by any partner.

July 30, 1999     DL/mv
Date

Commerce & Industry Insurance Company of Canada

Page 3 of 3
**ENDORSEMENT NO. 4**

CONFIDENTIAL
C&I 000021

This endorsement, effective 12:01 A.M. June 30, 1999

forms a part of Policy No. 5468509

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON – Reed Stenhouse Inc.

**EMPLOYEE BENEFITS LIABILITY**

I.     **COVERAGE**

The Insurer will pay on behalf of the Insured all sums which the Insurer shall become legally obligated to pay on account of any claim made against the Insured during the policy period and caused by the negligent act, error or omission of the Insured, or any other person for whose acts the Insured is legally liable in the administration of Employee Benefits as defined herein.

II.    **DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS**

Provisions of the Policy shall apply as respects the insurance hereby afforded.

III.   **DEFINITIONS**

1.    "Insured" - The unqualified word "Insured", wherever used, in relation to the insurance afforded hereby includes not only the Named Insured, but also any partner, executive officer, director, stockholder or employee, provided such employee is authorized to act in the administration of the Employee Benefits.

2.    "Employee Benefits" - The term "Employee Benefits" shall mean Group Life Insurance, Group Accident or Health Insurance, Profit Sharing Plans, Pension Plans, Workers' Compensation, Unemployment Insurance, Social Security, and Disability Benefits, Supplemental Unemployment Benefits, Social Insurance, Liability Benefits Insurance, and any other similar Employee Benefits Programs sponsored by the Named Insured.

3.    "Administration" - As respects the insurance afforded hereby, the unqualified word "administration", wherever used shall mean:

    (a)    giving counsel to employees with respect to the Employee Benefits;

    (b)    interpreting the Employee Benefits;

    (c)    handling of records in connection with the Employee Benefits;

    (d)    effecting enrollment, termination or cancellation of employees under the Employee Benefits performed by a person authorized by the Named Insured to do such acts.

Page 1 of 2
**ENDORSEMENT NO. 4**

CONFIDENTIAL
C&I 000022

This endorsement, effective 12:01 A.M. June 30, 1999

forms a part of Policy No. 5468509

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON – Reed Stenhouse Inc.

IV.    **EXCLUSIONS**

The insurance afforded by this endorsement does not apply:

(a)    to any dishonest, fraudulent, criminal or malicious act, libel, slander, discrimination, or humiliation;

(b)    to bodily injury to, or sickness, or death, of any person or to injury to or destruction of any tangible property including the loss of use thereof;

(c)    to any claim for failure of performance of contract by any Insurer;

(d)    to any claim based upon the Named Insured's failure to comply with any law concerning Workers' Compensation, Unemployment Insurance, Social Security or Disability Benefits;

(e)    to any claim based upon failure of stock to perform as represented by an Insured;

(f)    to any claim based upon advice given by an Insured to participate or not to participate in stock subscription plans;

(g)    to any claim or claims arising out of a breach of professional duty as contemplated under the Employee Retirement Income Security Act of 1974 or amendments thereto.

V.    **LIMITS OF LIABILITY**

| EACH CLAIM | $10,000,000.00 |
| ANNUAL AGGREGATE | $10,000,000.00 |

The limit of Liability stated above as applicable to "each claim" is the limit of the Insurer's liability for all damages incurred on account of any claim covered hereunder. The limit of liability stated above as "aggregate" is, subject to the above provision respecting each claim, the total limit of the Insurer's liability for all claims covered hereunder and occurring during each annual policy period. The inclusion herein of more than one Insured shall not operate to increase the limits of the Insurer's liability. All sums payable under this endorsement are subject to the application of the Self Insured Retention of the policy.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

| July 30, 1999  DL/mv | Commerce & Industry Insurance Company of Canada |
| Date | |

Page 2 of 2
**ENDORSEMENT NO. 5**

CONFIDENTIAL
C&I 000023

This endorsement, effective 12:01 A.M. June 30, 1999

forms a part of Policy No. 5468509

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON – Reed Stenhouse Inc.

## VENDOR'S LIABILITY

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to Completed Operations Hazard and Products Liability Hazard insurance.

It is agreed that the definition of Insureds in the policy is amended to include at the option of the Named Insured any person or organization herein referred to as "Vendor", including erectors who may act as a vendor of the insured's products, as an Insured, but only with respect to the distribution or sale in the regular course of the Vendor's business of the Named Insured's products subject to the following additional provisions:

(1)     The insurance with respect to the Vendor does not apply to:

    (a)     any express warranty or any distribution or sale for a purpose unauthorized by the Named Insured;

    (b)     Bodily Injury or Property Damage arising out of:

        (i)     any act of the Vendor which changes the condition of the products;

        (ii)     any failure to maintain the product in merchantable condition;

        (iii)     any failure to make such inspections, adjustments, tests or servicing as the Vendor has agreed to make or normally undertake to make in the usual course of business, in connection with the distribution or sale of the products; or

        (iv)     products which, after distribution or sale by the Named Insured, have been labeled or re-labeled or used as a container, part or ingredient or any other thing or substance by or for the Vendor;

        (v)     demonstration, installation, servicing or repair operations

    (c)     Bodily Injury or Property Damage occurring within the Vendor's premises, unless the Occurrence results solely from the Named Insured's products.

CONFIDENTIAL
C&I 000024

This endorsement, effective 12:01 A.M. June 30, 1999

forms a part of Policy No. 5468509

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON – Reed Stenhouse Inc.

The limits of liability for coverage provided by this endorsement form part of the "Each Occurrence Limit" and the "Products - Completed Operations Aggregate Limit". All sums payable under this endorsement are subject to the application of the Self Insured Retention of the policy.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

July 30, 1999    DL/mv
Date

_____
Commerce & Industry Insurance Company of Canada

Page 2 of 2
**ENDORSEMENT NO. 6**

CONFIDENTIAL
**C&I 000025**

This endorsement, effective 12:01 A.M. June 30, 1999

forms a part of Policy No. 5468509

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON – Reed Stenhouse Inc.

## EMPLOYMENT - RELATED PRACTICES EXCLUSION

In consideration of the premium charged, it is understood and agreed that the Insurer shall have no obligation to defend or indemnify with respect to any claim alleging or asserting in any respect loss, injury, or damage (including consequential bodily injury) in connection with Wrongful Termination of employees and/or Discrimination of employees and/or Sexual Harassment of employees.

The following definitions apply to the foregoing:

Wrongful Termination means termination of an employment relationship in a manner which is against the law and wrongful or in breach of an implied agreement to continue employment.

Discrimination means termination of an employment relationship or a demotion or a failure or refusal to hire or promote any individual because of race, color, religion, age, sex, disability, pregnancy or natural origin.

Sexual Harassment means unwelcome sexual advances and/or requests for sexual favors and/or other verbal of physical conduct of a sexual nature that (1) are made a condition of employment and/or (2) are used as a basis for employment decisions and/or (3) create a work environment that interferes with performance.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

July 30, 1999    DL/mv
Date

_____
Commerce & Industry Insurance Company of Canada

Page 1 of 1

CONFIDENTIAL
C&I 000026

**ENDORSEMENT NO. 7**

This endorsement, effective 12:01 A.M. June 30, 1999

forms a part of Policy No. 5468509

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON – Reed Stenhouse Inc.

It is agreed that exclusions A.2.f and B.2.c are deleted and replaced by the following.

**POLLUTANT EXCLUSION**

This policy is amended in that it shall not apply to any claim or claims for Bodily Injury, Personal Injury or Property Damage relating to the actual, alleged or threatened discharge, dispersal, release or escape of Pollutants.

The word "Pollutants", wherever used in this Exclusion, means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This Exclusion shall not apply to any such discharge, dispersal, release, or escape that results from:

1.    violent breaking open or explosion of any plant, equipment or building for which the Named Insured has legal responsibility, either as owner or operator;

2.    unintended fire, lightning or windstorm damage to any plant, equipment or building for which the Named Insured has legal responsibility, either as owner or operator;

3.    collision, overturning or upset of any Automobile or railroad vehicle;

4.    the Products Liability Hazard or the Completed Operations Liability Hazard.

Notwithstanding the foregoing this policy is further amended in that it shall not apply to any claim or claims relating to:

a)    any site or location used in whole or in part for the handling, processing, treatment, storage, disposal, or dumping or any waste materials or substance;

b)    the cost of evaluating and/or monitoring and/or controlling pollutants, but not if such cost arises in connection with physical injury to tangible property resulting from the Products Liability Hazard or the Completed Operations Liability Hazard;

c)    the cost of removing and/or nullifying and/or cleaning up pollutants on property at any time owned and/or leased and/or rented by the Insured and/or under the control of the Insured;

d)    any liability of the Insured for the actual, alleged or threatened discharge, dispersal, release or escape of Pollutants caused by any of the Insured's Products that have been discarded, dumped, abandoned or thrown away by others.

"Unintended fire" means fire which becomes uncontrollable or breaks out from where it was intended to be.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

July 30, 1999  DL/mv
Date
                                        Commerce & Industry Insurance Company of Canada
                                        Page 1 of 1

CONFIDENTIAL
C&I 000027

ENDORSEMENT NO. 8

This endorsement, effective 12:01 A.M. June 30, 1999

forms a part of policy No. 5468509

issued to THE CANAM MANAC GROUP INC.

by Commerce & Industry Insurance Company of Canada

for AON Reed Stenhouse Inc.

## SECURITIES AND FINANCIAL INTEREST EXCLUSION

In consideration of the premium charged, it is understood and agreed that the Insurer shall have no obligation to defend or indemnify with respect to any claim alleging or asserting in any respect loss, injury or damage in connection with the purchase or sale, the offer, solicitation, or advertising for the purchase or sale, or the depreciation or decline in price or value, of any security, debt, bank deposit, or financial interest or instrument.

This exclusion applies only to Coverage B -- Advertising Injury.

July 30, 1999  DL/mv
Date

_____
Commerce & Industry Insurance Company of Canada

SFI.DOC                                          Page 1 of 1

CONFIDENTIAL
C&I 000028

ENDORSEMENT NO. 9

This endorsement, effective 12:01 A.M. June 30, 1999

forms a part of Policy No. 5468509

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.

It is agreed that:
      Exclusion A.2.h, Mobile Equipment Exclusion, is deleted.
      Exclusion A.2.g is deleted and replaced by the following:

**g. Aircraft, Auto or Watercraft**

   "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

   This exclusion does not apply to:

   **(1)**   A watercraft while ashore on premises you own or rent;

   **(2)**   A watercraft you do not own that is less than 30 feet long;

   **(3)**   Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

   **(4)**   Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

   **(5)**   "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment"; or

   **(6)**   any non-owned aircraft provided it is not operated by the Insured or any employee of the Insured.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

July 30, 1999  DL/mv                           _____
Date                                           Commerce & Industry Insurance Company of Canada

                                               Page 1 of 1

CONFIDENTIAL
C&I 000029

ENDORSEMENT NO. 10

This endorsement, effective 12:01 A.M., October 1, 1999

forms a part of Policy No. 5468509

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for Aon – Reed Stenhouse Inc.

## UNINTENTIONAL FAILURE TO DISCLOSE

It is agreed that failure of the Insured or any person acting on its behalf to disclose all hazards, locations or operations existing as of the inception date of the policy shall not prejudice the Insured with respect to the coverage afforded by this policy provided that such error or omission is not intentional and is reported to the company as soon as practicable upon the Insured or any person acting on its behalf becoming aware of such error or omission.

## KNOWLEDGE of OCCURRENCE

It is hereby understood and agreed that Knowledge of Occurrence by the agent, servant or employee of the Insured shall not in itself constitute knowledge by the Insured unless the Occurrence is known to the Insured's in house counsel or to a member of the Insured's Board of Directors

**EXCEPT AS PROVIDED HEREIN, ALL THE TERMS AND CONDITIONS OF THIS POLICY SHALL HAVE FULL FORCE AND EFFECT.**

July 30, 1999  DL/mv
Date

_____
Commerce & Industry Insurance Company of Canada

Page 1 of 1

CONFIDENTIAL
C&I 000030

**ENDORSEMENT NO. 11**

This endorsement, effective 12:01 A.M. June 30, 1999

forms a part of Policy No.  5468509

issued to  LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by  COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for  AON - Reed Stenhouse Inc.

## **BROAD FORM COMMERCIAL LIABILITY ENDORSEMENT**

This endorsement does not increase the "aggregate" limit(s) of liability as set forth in the policy to which this endorsement is attached.  Rather, "claims" first made under this endorsement shall be subject to said "aggregate" limit(s) along with all other "claims" presented under this policy.

I.     CONTRACTUAL LIABILITY COVERAGE

    (A)     the definition of "incidental contract" is extended to include any written contract or agreement relating to the conduct of the Named Insured's business.

    (B)     The insurance afforded with respect to liability assumed under an "incidental contract" is subject to the following additional exclusions:

        (1)     to "bodily injury" or "property damage" for which the "insured" has assumed liability under any "incidental contract", if such injury or damage occurred prior to the execution of the "incidental contract";

        (2)     if the "insured" is an architect, engineer or surveyor, to "bodily injury" or "property damage" arising out of the rendering of or the failure to render professional services by such "insured", including:

            (a)     the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs or specifications, and

            (b)     supervisory, inspection or engineering services;

        (3)     if the indemnitee of the "insured" is an architect, engineer or surveyor, to the liability of the indemnitee, his agents or employees, arising out of:

            (a)     the preparation or approval of or the failure to prepare or approve maps. drawings, opinions, reports, surveys, change orders, designs or specifications, or

            (b)     the giving of or the failure to give directions or instructions by the indemnitee. his agents or employees, provided such giving or failure to give is the primary cause of the "bodily injury" or "property damage";

CONFIDENTIAL
C&I 000031

(4)    to any obligation for which the "insured" may be held liable in an action on a contract by a third party beneficiary for "bodily injury" or "property damage" arising out of a project for a public authority; but this exclusion does not apply to an action by the public authority or any other person or organization engaged in the project.

(5)    to "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property, and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing; but this exclusion does not apply to sidetrack agreements.

(C)    The following additional condition applies:

Arbitration

The company shall be entitled to exercise all of the "insured's" rights in the choice of arbitrators and in the conduct of any arbitration proceeding.

II.    **HOST LIQUOR LAW LIABILITY COVERAGE**

Exclusion A.2.c is deleted.

III.    **BROAD FORM PROPERTY DAMAGE LIABILITY COVERAGE**

The insurance for "property damage" liability applies, subject to the following additional provisions:

Exclusions A.2.j,k &l are replaced by the following:

j.)    (1)    to property owned or occupied by or rented to the "insured", or, except with respect to the use of "elevators", to property held by the insured for sale or entrusted to the "insured" for storage or safekeeping;

(2)    except with respect to liability under a written sidetrack agreement or the use of "elevators"

(a)    to property while on premises owned by or rented to the "insured" for the purpose of having operations performed on such property by or on behalf of the "insured",

(b)    to tools or equipment while being used by the "insured" in performing his operations,

(c)    to property in the custody of the "insured" which is to be installed, erected or used in construction by the "insured",

(d)    to that particular part of any property, not on premises owned by or rented to the "insured",

(i)    upon which operations are being performed by or on behalf of the "insured" at the time of the "property damage" arising out of such operations, or

Page 2 of 4

CONFIDENTIAL
C&I 000032

(ii)    out of which any "property damage" arises, or

(iii)    the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the "insured";

However, this clause d does not apply if the damaged work, or the work out of which the damage arises was performed on the Named Insured's behalf by a subcontractor.

(3)    to property which is being transported by the Insured by motor vehicle, including the loading and unloading thereof.

k.    Damage to Your Product
"Property damage" to that particular part of "your product" arising out of it or any part of it.

l.    Damage to Your Work
"Property damage" to that particular part of "your work" arising out of it or any part of it and included in the products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

## IV.    TENANT'S LEGAL LIABILITY - REAL PROPERTY

Exclusion A.2.j does not apply to real property which is leased or rented to the Named Insured, however, no coverage is provided for property damage which arises from wear and tear, gradual deterioration, normal upkeep, latent defect, normal making good, or vermin.

The Tenant's Legal Liability - Real Property shall be excess insurance over any valid and collectible property insurance (including any deductible portion thereof), available to the "Insured", such as, but not limited to, Fire, Extended Coverage, Builder's Risk Coverage or Installation Risk Coverage, and the Other Insurance Condition of the policy is amended accordingly.

## V.    INCIDENTAL MEDICAL MALPRACTICE LIABILITY COVERAGE

The definition of "bodily injury" is amended to include Incidental Medical Malpractice Injury.

Incidental Medical Malpractice Injury means injury arising out of the rendering of or failure to render, during the policy period, the following services:

(A)    medical, surgical, dental, x-ray or nursing service or treatment or the furnishing of food or beverages in connection therewith; or

(B)    the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances.

This coverage does not apply to:

(1)    any "insured" engaged in the business or occupation of providing any of the services described under VI (A) and (B) above;

(2)    injury caused by any indemnitee if such indemnitee is engaged in the business or occupation of providing any of the services described under VI (A) and (B) above.

Page 3 of 4

CONFIDENTIAL
C&I 000033

VI.     WORLDWIDE LIABILITY COVERAGE

The definition of "coverage territory" is amended to read as follows:

Anywhere in the world.

VII.    EXTENDED BODILY INJURY COVERAGE

The definition of "occurrence" includes any intentional act by or at the direction of the "insured" which results in "bodily injury" or "property damage", if such injury or damage arises solely from the use of reasonable force for the purpose of protecting persons or property.

July 30, 1999  DL/mv
Date

Commerce & Industry Insurance Company of Canada

BROADCM.DOC 11/95                    Page 4 of 4

CONFIDENTIAL
C&I 000034

**ENDORSEMENT NO. 12**

This endorsement, effective 12:01 A.M. June 30, 1999

forms a part of Policy No. 5468509

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.

**NUCLEAR EXCLUSION**

This Policy does not apply to:

a)   liability imposed by or arising under the Nuclear Liability Act; nor

b)   Bodily Injury or Property Damage with respect to which an Insured under this Policy is also insured under a contract of nuclear energy liability insurance (whether the Insured is unnamed in such contract and whether or not it is legally enforceable by the Insured) issued by the Nuclear Insurance Association of Canada or any other insurer or group or pool of insurers or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; nor

c)   Bodily Injury or Property Damage resulting directly or indirectly from the nuclear energy hazard arising from:

   1)   the ownership, maintenance, operation or use of a nuclear facility by or on behalf of the Insured;

   2)   the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility; and

   3)   the possession, consumption, use, handling, disposal or transportation of fissionable substances, or of other radioactive material (except radioactive isotopes, away from a nuclear facility, which have reached the final stage of fabrication so as to be usable for any scientific, medical, agricultural, commercial or industrial purpose) used, distributed, handled or sold by an Insured.

As used in this Policy:

   1)   the term "nuclear energy hazard" means the radioactive, toxic, explosive, or other hazardous properties of radioactive material;

Page 1 of 2

CONFIDENTIAL
C&I 000035

2)   the term "radioactive material" means uranium, thorium, plutonium, neptunium, their respective derivatives and compounds, radioactive isotopes of other elements and any other substances that the Atomic Energy Control Board may, by regulation, designate as being prescribed substances capable of releasing atomic energy, or as being requisite for the production, use or application of atomic energy;

3)   the term "nuclear facility" means:

   a)   any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of plutonium, thorium, and uranium or any one or more of them;

   b)   any equipment or device designed or used for (i) separating the isotopes of plutonium, thorium and uranium or any one or more of them, (ii) processing or utilizing spent fuel, or (iii) processing or packaging waste;

   c)   any equipment or device used for the processing, fabricating or alloying of plutonium, thorium or uranium enriched in the isotope uranium 233 or in the isotope uranium 235, or any one or more of them if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   d)   any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste radioactive material;

   and includes the site on which any of the foregoing is located, together with all operations conducted thereon and all premises used for such operations.

4)   the term "fissionable substance" means any prescribed substance that is, or from which can be obtained, a substance capable of releasing atomic energy by nuclear fission.

July 30, 1999  DL/mv
Date

_____
Commerce & Industry Insurance Company of Canada

Page 2 of 2

CONFIDENTIAL
C&I 000036

**ENDORSEMENT NO. 13**

This endorsement, effective 12:01 A.M. June 30, 1999

forms a part of Policy No.  5468509

issued to  LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by  COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for  AON - Reed Stenhouse Inc.

**AUTO DEFINITION**

It is agreed that the definition VI.2, "Auto," is deleted and replaced by the following:

2.   "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment.  But "auto" does not include "mobile equipment" nor any vehicle which is not required by law to be insured under a specific automobile policy.

July 30, 1999  DL/mv
Date

_____
Commerce & Industry Insurance Company of Canada

Page 1 of 1

CONFIDENTIAL
C&I 000037

**ENDORSEMENT NO. 14**

This endorsement, effective 12:01 A.M. June 30, 1999

forms a part of Policy No. 5468509

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.

## PROFESSIONAL LIABILITY EXCLUSION

It is agreed that such insurance as is afforded by this policy does not apply to any liability arising out of errors, omissions or defects in maps, plans, designs, specifications, opinions, reports, software or surveys prepared, acquired or used by the insured.

However, this exclusion does not apply if such maps, plans, designs, specifications, opinions, reports, software or surveys form part of a product manufactured by or on behalf of the insured.

July 30, 1999  DL/mv
Date

Commerce & Industry Insurance Company of Canada

PROFPROD.DOC 11/95

Page 1 of 1

CONFIDENTIAL
C&I 000038

ENDORSEMENT NO. 15

This endorsement, effective 12:01 A.M. June 30, 1999

forms a part of Policy No. 5468509

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.

## DATE RECOGNITION ENDORSEMENT

This insurance does not apply to any bodily injury, property damage, personal injury, advertising injury, loss or claim arising directly or indirectly out of:

A.  Any actual or alleged failure, malfunction or inadequacy of:

    1.  Any of the following, whether belonging to any **Insured** or to others:

        a.  Computer hardware, including microprocessors;

        b.  Computer application software;

        c.  Computer operating systems and related software;

        d.  Computer networks;

        e.  Microprocessors (computer chips) not part of any computer system; or

        f.  Any other computerized or electronic equipment or components; or

    2.  Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph A.1. of this endorsement due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

B.  **Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by the Insured or for the Insured to determine, rectify or test for any potential or actual problems described in Paragraph A. of this endorsement.**

All other terms and conditions of this policy remain unchanged.

July 30, 1999  DL/mv
Date

————————————————————
Commerce & Industry Insurance Company of Canada

Page 1 of 1

CONFIDENTIAL
C&I 000039

ENDORSEMENT NO. 16

This endorsement, effective 12:01 A.M.  June 30, 1999

forms a part of Policy No.  5468509

issued to  LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by  COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for  AON – Reed Stenhouse Inc.

It is agreed that endorsement no. 7 is deleted and replaced by the following.

## POLLUTANT EXCLUSION

This policy is amended in that it shall not apply to any claim or claims for Bodily Injury, Personal Injury or Property Damage relating to the actual, alleged or threatened discharge, dispersal, release or escape of Pollutants.

The word "Pollutants", wherever used in this Exclusion, means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

This Exclusion shall not apply to any such discharge, dispersal, release, or escape that results from:

1.      violent breaking open or explosion of any plant, equipment or building for which the Named Insured has legal responsibility, either as owner or operator;

2.      unintended fire, lightning or windstorm damage to any plant, equipment or building for which the Named Insured has legal responsibility, either as owner or operator;

3.      collision, overturning or upset of any Automobile or railroad vehicle;

4.      the Products Liability Hazard or the Completed Operations Liability Hazard.

Notwithstanding the foregoing this policy is further amended in that it shall not apply to any claim or claims relating to:

a)      any site or location used in whole or in part for the handling, processing, treatment, storage, disposal, or dumping or any waste materials or substance;

b)      the cost of evaluating and/or monitoring and/or controlling pollutants, unless such cost arises in connection with physical injury to tangible property resulting from the Products Liability Hazard or the Completed Operations Liability Hazard;

c)      the cost of removing and/or nullifying and/or cleaning up pollutants on property at any time owned and/or leased and/or rented by the Insured and/or that particular part of property under the control of the Insured;

d)      any liability of the Insured for the actual, alleged or threatened discharge, dispersal, release or escape of Pollutants caused by any of the Insured's Products that have been discarded, dumped, abandoned or thrown away by others.

"Unintended fire" means fire which becomes uncontrollable or breaks out from where it was intended to be.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

July 30, 1999  DL/mv
Date
                                             Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000040

**ENDORSEMENT NO. 17**

This endorsement, effective 12:01 A.M. June 30, 1999

forms a part of Policy No. .5468509

issued to  LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by  COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for  AON - Reed Stenhouse Inc.

It is hereby understood that Endorsement No. 14 is deleted and replaced by the following:

### PROFESSIONAL LIABILITY EXCLUSION

It is agreed that such insurance as is afforded by this policy does not apply to any liability arising out of errors, omissions or defects in maps, plans, designs, specifications, opinions, reports, software or surveys prepared, acquired or used by the insured.

However, this exclusion does not apply if such maps, plans, designs, specifications, opinions, reports, software or surveys are related to the sale, fabrication, erection, installation, repair or maintenance of the Named Insured's products.

| | |
|---|---|
| April 27, 2000 DL/mv | Commerce & Industry Insurance Company of Canada |
| Date | |

CONFIDENTIAL
C&I 000041

**COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA**
Canadian Head Office
145 Wellington Street West, Toronto, Ontario  M5J 1H8

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**DECLARATIONS**

**POLICY NO:**   546-87-45          **RENEWAL OF:**      546-85-09

**Effective Date:**   June 30, 2000 to June 30, 2001
12:01 a.m. Standard Time

| NAMED INSURED | Les Placements CMI Inc. |
|---|---|
| | Total Containment Inc. |
| | Any past, present and/or future subsidiary or controlled companies as may be created or acquired |
| | Any of their pension plans, committee members, employee clubs and recreational organizations. |

| MAILING ADDRESS | 11535 1ère avenue, St. Georges de Beauce, Québec, G5Y 7H5 |
|---|---|

**LIMITS OF INSURANCE**

| | | |
|---|---|---|
| Products – Completed Operations Aggregate Limit | $10,000,000 | |
| Personal and Advertising Injury Limit | $10,000,000 | |
| Each Occurrence Limit | $10,000,000 | |
| Fire Damage Limit | $10,000,000 | |
| Medical Expense Limit | $ 25,000 | Any One Person |

**RETROACTIVE DATE (CG 00 02 only)**
Coverage A of this Insurance does not apply to "bodily injury" or "property damage" which occurs before the Retroactive Date, if any, shown here: Jan. 24, 1989       (enter date or "none" if no Retroactive Date applies)

**BUSINESS DESCRIPTION AND LOCATION OF PREMISES**
**Form of Business:**

☐ Individual    ☐ Joint Venture    ☐ Partnership    ☒ Organization
(Other than Partnership or Joint Venture)

**Business Description\*:** All operations of the Insured consisting principally of but not limited to the manufacture, distribution and installation of piping, fluid handling equipment and fiberglass containers.

**Location of All Premises you Own, Rent or Occupy:**
422 Business Center, A130, PO Box 939, Oaks, PA 19456
Various other premises, blanket basis

**PREMIUM**

| Premium Base | Rate | Advance Premium | Minimum Annual Premium |
|---|---|---|---|
| As per endorsement no. 1. | | $274,090 | $274,090 |

**FORMS AND ENDORSEMENTS (other than applicable Forms and Endorsements shown elsewhere in the policy)**
Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue: 1 to 16

\*Information omitted if shown elsewhere in the policy.

CONFIDENTIAL
C&I 000042

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME
OF THE INSURED AND THE POLICY PERIOD

<table>
<tr><td>July 4, 2000 DL/mv<br>Date</td><td>Commerce & Industry Insurance Company of Canada</td></tr>
</table>

Page 2 of 2

CONFIDENTIAL
C&I 000043

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM
## COVERAGES A. AND B. PROVIDE CLAIMS-MADE COVERAGE
## PLEASE READ THE ENTIRE FORM CAREFULLY

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION VI).

## SECTION I – COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement.**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS-COVERAGES A AND B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

      (3) A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with paragraph c, below, during the policy period or any Extended Reporting Period we provide under EXTENDED REPORTING PERIODS (Section V).

   c. A claim by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

      (1) When notice of such claim is received and recorded by any insured or by us, whichever comes first; or

      (2) When we make settlement in accordance with paragraph 1.a. above.

   All claims for damages because of "bodily injury" to the same person, including damages claimed by any person or organization for care, loss of services, or death resulting at any time from the "bodily injury," will be deemed to have been made at the time the first of those claims is made against any insured.

   All claims for damages because of "property damage" causing loss to the same person or organization will be deemed to have been made at the time the first of those claims is made against any insured.

2. **Exclusions.**

   This insurance does not apply to:

   a. **Expected or Intended Injury**
   "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

Page 1 of 14

CONFIDENTIAL
C&I 000044

**b.    Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1)    That the insured would have in the absence of the contract or agreement; or

(2)    Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage" provided:

(a)    Liability to such party for, or for the cost of that party's defense has also been assumed in the same "insured contract"; and

(b)    Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c.    Liquor Liability**

"Bodily Injury" or "property damage" for which any insured may be held liable by reason of:

(1)    Causing or contributing to the intoxication of any person;

(2)    The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3)    Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d.    Workers Compensation and Similar Laws**

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

**e.    Employer's Liability**

"Bodily injury" to:

(1)    An employee of the insured arising out of and in the course of:
(a)    Employment by the insured; or
(b)    Performing duties related to the conduct of the insured's business; or

(2)    The spouse, child, parent, brother or sister of that employee as a consequence of paragraph (1) above.

This exclusion applies:

(1)    Whether the insured may be liable as an employer or in any other capacity; and

(2)    To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f.    Pollution**

(1)    "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a)    At or from any premises, site or location which is or was at any time owned by or occupied by, or rented or loaned to, any insured;

(b)    At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c)    Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d)    At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(i)    if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

(ii)    if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraph (d) (i) does not apply to "bodily injury" or "property damage" arising out the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape

Page 2 of 14

CONFIDENTIAL
C&I 000045

from a vehicle part designed to hold, store or receive them. this exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or sub-contractor.

Subparagraphs (a) and (d)(i) do not apply to "bodily injury" or "property damage" arising out of heat, stroke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants-, or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

g. **Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment, to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto"

is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h. **Mobile Equipment**
"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed or demolition or stunting activity.

i. **War**
"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. **Damage to Property**

"Property damage" to

(1) Property you own, rent or occupy;

(2) Premises you sell, give away or abandon, if, the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

Page 3 of 14

CONFIDENTIAL
C&I 000046

k.  **Damage to Your Product**
    "Property damage" to "your product" arising out of it or any part of it.

l.  **Damage to Your Work**
    "Property damage" to "your work" arising out of it or any part of it and included in the products-completed operations hazard".

    This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m.  **Damage to Impaired Property or Property Not Physically Injured**
    "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

    (1)  A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

    (2)  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

    This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n.  **Recall of Products, Work or Impaired Property**
    Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

    (1)  "Your product";

    (2)  "Your work"; or

    (3)  "Impaired property";

    if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

    **Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (SECTION III).**

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

1.  **Insuring Agreement.**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those

    damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or offense and settle any claim "suit" that may result. But:

    (1)  The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

    (2)  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

    b.  This insurance applies to:

    (1)  "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

    (2)  "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

    but only if:

    (1)  the offense was committed in the "coverage territory";

    (2)  The offense was not committed before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

    (3)  A claim for damages because of the "personal injury" or "advertising injury" is first made against any insured, in accordance with paragraph c. below, during the policy period or any Extended reporting Period we provide under EXTENDED REPORTING PERIODS (Section V).

    c.  A Claim made by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

    (1)  When notice of such claim is received and recorded by any insured or by us, whichever comes first; or

    (2)  When we make settlement in accordance with paragraph 1.a. above.

    All claims for damages because of "personal injury" or "advertising injury" to the same person or organization as a result of an offense will be deemed to have been made at the time the first of these claims is made against any insured.

Page 4 of 14

CONFIDENTIAL
C&I 000047

2. **Exclusions.**

This insurance does not apply to:

a. "Personal injury" or "advertising injury":

    (1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

    (2) Arising out of oral or written publication of material whose first publication took place before the Retroactive Date, if any, shown in the Declarations.

    (3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

    (4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.; or

    (5) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

b. "Advertising injury" arising out of:

    (1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

    (2) The failure of goods, products or services to conform with advertised quality or performance;

    (3) The wrong description of the price of goods, products or services; or

    (4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

c. Any loss, cost or expense arising out of any:

    (1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of pollutants; or

    (2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditions or reclaimed.

## COVERAGE C. MEDICAL PAYMENTS

1. **Insuring Agreement.**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

    (1) On premises you own or rent;

    (2) On ways next to premises you own or rent; or

    (3) Because of your operations;

    provided that:

    (1) The accident takes place in the "coverage territory" and during the policy period;

    (2) The expenses are incurred and reported to us within one year of the date of the accident; and

    (3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

    (1) First aid at the time of an accident;

    (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

    (3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions.**

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an employee of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard".

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

Page 5 of 14

CONFIDENTIAL
C&I 000048

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

We will pay, with respect to any claim or "suit" we investigate or settle, or any "suit" against an insured we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit," we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

   (1) Agrees in writing to:

     (a) Cooperate with us in the investigation, settlement or defense of the "suit";

     (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

     (c) Notify any other insurer whose coverage is available to the indemnitee; and

     (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

   (2) Provide us with written authorization to:

     (a) Obtain records and other information related to the "suit"; and

     (b) Conduct and control the defense of the indemnitee in such "suit."

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request, will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph 2.b.(2) of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section 1 – Coverages), such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgements or settlements; or

b. The conditions set forth above, or the terms of the agreement described in paragraph f. above, are no longer met.

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner;

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership or joint venture or limited liability company, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

Page 6 of 14

CONFIDENTIAL
C&I 000049

2.    Each of the following is also an insured:

a.    Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

(1)    "Bodily injury" or "personal injury"

(a)    To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

(b)    To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph (1)(a) above;

(c)    For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1)(a) or (b) above; or

(d)    Arising out of his or her providing or failing to provide professional health care services.

(2)    "Property damage" to property

(a)    owned or occupied or used by,

(b)    Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b.    Any person (other than your "employee"), or any organization while acting as your real estate manager.

c.    Any person or organization having proper temporary custody of your property if you die, but only:

(1)    With respect to liability arising out of the maintenance or use of that property; and
(2)    Until your legal representative has been appointed.

d.    Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3.    With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

a.    "Bodily injury" to a co-"employee" of the person driving the equipment; or

b.    "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4.    Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a.    Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b.    Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c.    Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III -- LIMITS OF INSURANCE**

1.    The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a.    Insureds;

b.    Claims made or "suits" brought; or

c.    Persons or organizations making claims or bringing "suits".

2.    The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

3.    The Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

4.    Subject to 2. above, the Each Occurrence Limit is the most we will pay for the sum of:

Page 7 of 14

CONFIDENTIAL
C&I 000050

a. Damages under Coverage A; and

b. Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

5. Subject 4 above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

6. Subject to 4. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The limits of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy.**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part,

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit.**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when, and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   Notice of an "occurrence" or offense is not notice of a claim.

   b. If a claim is received by any insured, you must::

      (1) Immediately record the specifics of the claim and the date received; and

      (2) Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim as soon as practicable.

c. You and any other involved insured must:

   (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or a "suit";

   (2) Authorize us to obtain records and other information;

   (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insureds will, except at that Insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us.**

   No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. **Other Insurance.**

   If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

   a. Primary Insurance

      This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

   b. Excess Insurance

      This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

      (1) That is effective prior to the beginning of the policy period shown in the Declarations of this insurance and applies to "bodily injury" of

Page 8 of 14

CONFIDENTIAL
C&I 000051

"property damage" on other than a claims-made basis, if:

    (a) No Retroactive Date is shown in the Declarations of this insurance; or

    (b) The other insurance has a policy period which continues after the Retroactive Date shown in the Declarations of this insurance;

(2) That is Fire, Extended coverage, Builders' Risk, Installation Risk or similar coverage for "your work";

(3) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

(4) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c.    Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5.**    **Premium Audit.**

**a.**    We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.**    Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period.

Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.**    The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6.**    **Representations.**

By accepting this policy, you agree:

**a.**    The statements in the Declarations are accurate and complete;

**b.**    Those statements are based upon representations you made to us; and

**c.**    We have issued this policy in reliance upon your representations.

**7.**    **Separation Of Insureds.**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.**    As if each Named Insured were the only Named Insured; and

**b.**    Separately to each insured against whom claim is made or "suit" is brought.

**8.**    **Transfer Of Rights Of Recovery Against Others To Us.**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9.**    **Cancellation**

a)    This Policy may be canceled by the First Named Insured by giving us written notice stating when, thereafter, such cancellation is to become effective. Return premium shall be computed on the customary short rate basis, subject to the retention by us of the minimum premium, if any, stated in the Declarations; or if the premium is so adjustable, based on the actual exposure for the period of time the Policy was in force.

b)    This Policy may be canceled by us for non-payment of premium by giving to the First Named Insured fifteen (15) days notice of cancellation by registered mail or personally delivered. Notice to the First Named Insured shall constitute notice to all Insureds.

Page 9 of 14

CONFIDENTIAL
C&I 000052

c) This Policy may be canceled by us by giving to the First Named Insured ninety (90) days notice in writing of cancellation by registered mail and refunding the excess of paid premium beyond the pro rata earned premium for the expired time, subject if applicable to final premium adjustment as soon as practicable based on the actual gross receipts for the period of time the Policy was in force. Notice to the First Named Insured shall constitute notice to all Insureds.

If notice is mailed, proof of mailing will be sufficient proof of notice.   .

**10.    Your Right to Claim and "Occurrence" Information.**

We will provide the first Named Insured shown in the Declarations the following information relating to this and any preceding general liability claims-made Coverage Part we have issued to you during the previous three years:

a.    A list or other record of each "occurrence," not previously reported to any other insurer, of which we were notified in accordance with paragraph 2.a. of the DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM OR SUIT Condition in COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV). We will include the date and brief description of the "occurrence" if that information was in the notice we received.

b.    A summary by policy year, of payments made and amounts reserved, stated separately, under any applicable General Aggregate Limit and Products-Completed Operations Aggregate Limit.

Amounts reserved are based on our judgment. They are subject to change and should not be regarded as ultimate settlement values.

You must not disclose this information to any claimant or any claimant's representative without our consent.

If we cancel or elect not to renew this Coverage Part, we will provide such information no later than 30 days before the date of policy termination. In other circumstances, we will provide this information only if we receive a written request from the first Named Insured within 60 days after the end of the policy period. In this case, we will provide this information within 45 days of receipt of the request.

We compile claim and "occurrence" information for our own business purposes and exercise reasonable care in doing so. In providing this information to the first Named Insured, we make no representations or warranties to insureds, insurers, or others to whom this information is furnished by or on behalf of any insured. Cancellation or non-renewal will be effective even if we inadvertently provide inaccurate information.

**SECTION V – EXTENDED REPORTING PERIODS**

1.    We will provide one or more Extended Reporting Periods, as described below, if:

a.    This Coverage Part is cancelled or not renewed; or

b.    We renew or replace this Coverage Part with insurance that:

(1)    Has a Retroactive Date later than the date shown in the Declarations of this Coverage Part; or
(2)    Does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" on a claims-made basis.

2.    Extended Reporting Periods do not extend the policy period or change the scope of coverage provided they apply only to claims for:

a.    "Bodily injury" or "property damage" that occurs before the end of the policy period but not before the Retroactive date, if any, shown in the Declarations; or

b.    "Personal injury" or "advertising injury" caused by an offense committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Declarations.

Once in effect, Extended Reporting Periods may not be cancelled.

3.    A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the policy period and lasts for:

a.    Five years with respect to claims because of "bodily injury" and "property damage" arising out of an "occurrence" reported to us, not later than 60 days after the end of the policy period, in accordance with paragraph 2.a. of the DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM OR SUIT Condition in COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV);

b.    Five years with respect to claims because of "personal injury" and "advertising injury" arising out of an offense reported to us, not later than 60 days after the end of the policy period, in accordance with paragraph 2.a. of the DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM OR SUIT Condition in COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV);

c.    Sixty days with respect to claims arising from "occurrences" or offenses not previously reported to us.

The Basic Extended Reporting Period does not apply to claims that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such claims.

4.    The Basic Extended Reporting Period does not reinstate or increase the Limits of Insurance.

5.    A Supplemental Extended Reporting Period of 12 months duration is available, but only by an endorsement and for an extra charge. This supplemental period starts when the Basic Extended Reporting Period, set forth in paragraph 3. above, ends.

You must give us a written request for the endorsement within 60 days after the end of the policy period. The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

Page 10 of 14

CONFIDENTIAL
C&I 000053

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

a.  The exposures insured;
b.  Previous types and amounts of insurance;
c.  Limits of Insurance available under this Coverage Part for future payment of damages; and
d.  other related factors.

The additional premium will not exceed 100% of the annual premium for this Coverage Part.

This endorsement shall set forth the terms, not inconsistent with this Section, applicable to the Supplemental Extended Reporting Period, including a provision to the effect that the insurance afforded for claims first received during such period is excess over any other valid and collectible insurance available under policies in force after the Supplemental Extended Reporting Period starts.

6.  The Supplemental Extended Reporting Period does not reinstate or increase the Limits of Insurance.

## SECTION VI - DEFINITIONS

1.  "Advertising injury" means injury arising out of one or more of the following offenses:

    a.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    b.  Oral or written publication of material that violates a person's right of privacy;

    c.  Misappropriation of advertising ideas or style of doing business; or

    d.  Infringement of copyright, title or slogan.

2.  "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3.  "Bodily injury" means bodily injury, discrimination (where insurance thereof is permitted by law), mental anguish, shock humiliation, harassment, sickness or disease sustained by a person, including death resulting from any of these at any time.

4.  "Coverage territory" means:

    a.  The United States of America (including its territories and possessions), Puerto Rico and Canada;

    b.  International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

    c.  All parts of the world if:

        (1)  The injury or damage arises out of:

            (a)  Goods or products made or sold by you in the territory described in a. above; or

            (b)  The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

        (3)  The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5.  "Employee" includes a "leased worker." "Employee" includes a "temporary worker."

6.  "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7.  "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    a.  It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b.  You have failed to fulfill the terms of a contract or agreement;

    if such property can be restored to use by:

    a.  The repair, replacement, adjustment or removal of "your product" or "your work"; or

    b.  Your fulfilling the terms of the contract or agreement.

8.  "Insured contract" means:

    a.  A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "Insured contract";

    b.  A sidetrack agreement;

    c.  Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    d.  An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    e.  An elevator maintenance agreement;

    f.  That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for

Page 11 of 14

CONFIDENTIAL
C&I 000054

"bodily injury" or "property damage" to a third person or organization.   Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreements:

   (1)   That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

   (2)   That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a)   Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      (b)   Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

   (3)   Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

9.   "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business.   "Leased worker" does not include a "temporary worker."

10.   "Loading or unloading" means the handling of property:

   a.   After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b.   While it is in or on an aircraft, watercraft or "auto"; or

   c.   While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

11.   "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a.   Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b.   Vehicles maintained for use solely on or next to premises you own or rent;

   c.   Vehicles that travel on crawler treads;

   d.   Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1)   Power cranes, shovels, loaders, diggers or drills; or

      (2)   Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e.   Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1)   Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2)   Cherry pickers and similar devices used to raise or lower workers;

   f.   Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

      (1)   Equipment designed primarily for:

         (a)   Snow removal;

         (b)   Road maintenance, but not construction or resurfacing; or

         (c)   Street cleaning;

      (2)   Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

      (3)   Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

12.   "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

13.   "Personal injury" means injury, other than "bodily injury" arising out of one or more of the following offenses:

   a.   False arrest, detention or imprisonment;

   b.   Malicious prosecution;

   c.   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

Page 12 of 14

CONFIDENTIAL
C&I 000055

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

14. Products-completed operations hazard":

a. includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products . that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification in the Declarations or in a policy schedule, states that products-completed operations are subject to the General aggregate limit.

15. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

16. "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

17. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

18. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

19. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

Page 13 of 14

CONFIDENTIAL
C&I 000056

July 4, 2000 DL/mv
Date

Commerce & Industry Insurance Company of Canada

Page 14 of 14

CONFIDENTIAL
C&I 000057

## ENDORSEMENT NO. 1

This endorsement, effective 12:01 A.M. June 30, 2000

forms a part of Policy No.  5468745

issued to  LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by  COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for  AON - Reed Stenhouse Inc.

It is agreed that:

1)   coverage is restricted to apply only to liability arising from:

> Total Containment Inc.;
>
> Any past, present and/or future subsidiary or controlled company of Total Containment Inc., as may now exist or be hereinafter created or acquired; or
>
> Any of the pension plans, committee members, employee clubs and recreational organizations of the foregoing.

2)   Certificate holders, for whom the Named Insured has agreed to supply insurance, are added as Additional Insureds, but only in respect of liability arising from the Named Insured's operations.

3)   Installers and applicators, for whom the Named Insured has agreed to supply insurance, are added as Additional Insureds, but only in respect to work performed on behalf of the Named Insured.

4)   Unless expressly indicated otherwise, all Limits of Insurance, Premiums, Deductibles and other amounts of money are expressed in USA currency.

5)   The deposit premium of $274,090 is flat annual for sales up to $30,000,000.  At expiry, the premium will be incremented at a rate of $2.74 per $1,000 of net sales, on the portion of sales which are in excess of $30,000,000.  Sales means "Net Sales" as expressed in the insured's Financial Statement.

July 4, 2000 DL/mv
Date

_____
Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000058

ENDORSEMENT NO. 2

This endorsement, effective 12:01 A.M. June 30, 2000

forms a part of Policy No. 5468745

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.

## SELF-INSURED RETENTION

It is hereby understood and agreed that:

1) The Limit of Liability as stated in the Declarations shall be in excess of the following Self-Insured Retention to be borne by the Insured:

> One hundred thousand dollars ($100,000.00) each occurrence including defense and loss adjustment expense

2) The Insurer shall have the right but not the duty to investigate, negotiate, settle or defend losses or claims within the Self-Insured Retention but may, at the Insured's request perform the above mentioned services, in which event the Insurer may pay any part or all of the Self-Insured Retention amount to effect settlement of any claim or suit and, upon notification of the action taken, the Named Insured shall promptly reimburse the Insurer for such part of the Self-Insured Retention amount as has been paid by the Insurer.

3) The Insured shall immediately notify the Insurer in writing of any claim to which this policy applies which:

   a) involved serious bodily injury or fatality;

   b) the Insured has received notice of suit in which the amount claimed exceeds the Self-Insured Retention;

   c) may exceed 25% of the Self-Insured Retention.

4) The Insured shall have the right to pay, at their sole discretion, any claim which falls entirely within the amount of the stated Self-Insured Retention.

   Claims which are self-administered because they appear to be below the Self-Insured Retention should not be defeated if subsequent results exceed the Self-Insured Retention. Upon discovery of such a claim, notice shall given to Insurers as soon as possible.

5) The Self-Insured Retention stated above shall be deemed applicable irrespective of the inability of the Insured to pay by reason of bankruptcy, insolvency, or by the Insured's refusal to pay.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

July 4, 2000 DL/mv
Date

_____
Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000059

## ENDORSEMENT NO. 3

This endorsement, effective 12:01 A.M. June 30, 2000

forms a part of Policy No. 5468745

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### HIRED AUTO AND NON-OWNED AUTO LIABILITY

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

Insurance is provided only with respect to those coverages for which a specific premium charge is shown:

| Coverage | Additional Premium |
|---|---|
| Non-Ownership Liability | $ Included |
| Hired Auto Liability | $ Included |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

### HIRED AUTO LIABILITY

The insurance provided under COVERAGE A (Section I) applies to "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" by you or your employees in the course of your business.

With respect to the insurance provided by this endorsement:

1. The exclusions, under COVERAGE A (Section I), other than exclusions a, b, d, f and I and the Nuclear Energy Liability Exclusion (Broad Form) are deleted and replaced by the following:

   a. "Bodily Injury"

      (1) To an employee of the insured arising out of and in the course of employment by the insured, or

   (2) To the spouse, child, parent, brother or sister of that employee as a consequence of (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of injury.

This exclusion does not apply to:

(1) Liability assumed by the insured under an "insured contract", or

Page 1 of 3

CONFIDENTIAL
C&I 000060

(2) "Bodily Injury" arising out of and in the course of domestic employment by the insured unless benefits for such injury are in whole or in part either payable or required to be provided under any workers compensation law.

**b.** "Property damage" to:

(1) Property owned or being transported by or rented or loaned to the insured; or

(2) Property in the care, custody or control of the insured.

**2.** WHO IS AN INSURED (Section II) is replaced by the following:

Each of the following is an insured under this insurance to the extent set forth below:

    **a.** You;

    **b.** Any other person using a "hired auto" with your permission;

    **c.** With respect to a "non-owned auto," any partner or executive officer of yours, but only while such "non-owned auto" is being used in your business;

    **d.** Any other person or organization, but only with respect to their liability because of acts or omissions of an insured under a., b., or c. above.

None of the following is an insured:

    **a.** Any person engaged in the business of his or her employer with respect to "bodily injury" to any co-employee of such person injured in the course of employment;

    **b.** Any partner or executive officer with respect to any "auto" owned by such partner or officer or a member of his or her household;

    **c.** Any person while employed in or otherwise engaged in duties in connection with an "auto business", other than an "auto business" you operate;

    **d.** The owner or lessee (of whom you are a sublessee) of a "hired auto" or the owner of a "non-owned auto" or any agent or employee of any such owner or lessee;

    **e.** Any person or organization with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

**NON-OWNED AUTO LIABILITY**

The insurance provided under COVERAGE A (Section I) applies to "bodily injury" or "property damage" arising out of the use of any "non-owned auto" in your business by any person other than you.

Page 2 of 3

CONFIDENTIAL
C&I 000061

The following additional definitions apply:

"Auto business" means the business or occupation of selling, repairing, servicing, storing or parking "autos", "Hired auto" means any "auto" you lease, hire, or borrow.  This does not include any "auto" you lease, hire or borrow from any of your employees or members of their households, or from any partner or executive officer of yours.

"Non-owned auto" means any "auto" you do not own, lease, hire or borrow which are used in connection with your business.  However, if you are a partnership a "non-owned auto" does not include any auto owned by any partner.

July 4, 2000 DL/mv
Date

_____
Commerce & Industry Insurance Company of Canada

Page 3 of 3
**ENDORSEMENT NO. 4**

CONFIDENTIAL
**C&I 000062**

This endorsement, effective 12:01 A.M. June 30, 2000

forms a part of Policy No. 5468745

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON – Reed Stenhouse Inc.

## EMPLOYEE BENEFITS LIABILITY

I.  **COVERAGE**

The Insurer will pay on behalf of the Insured all sums which the Insurer shall become legally obligated to pay on account of any claim made against the Insured during the policy period and caused by the negligent act, error or omission of the Insured, or any other person for whose acts the Insured is legally liable in the administration of Employee Benefits as defined herein.

II.  **DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS**

Provisions of the Policy shall apply as respects the insurance hereby afforded.

III.  **DEFINITIONS**

1.  "Insured" - The unqualified word "Insured", wherever used, in relation to the insurance afforded hereby includes not only the Named Insured, but also any partner, executive officer, director, stockholder or employee, provided such employee is authorized to act in the administration of the Employee Benefits.

2.  "Employee Benefits" - The term "Employee Benefits" shall mean Group Life Insurance, Group Accident or Health Insurance, Profit Sharing Plans, Pension Plans, Workers' Compensation, Unemployment Insurance, Social Security, and Disability Benefits, Supplemental Unemployment Benefits, Social Insurance, Liability Benefits Insurance, and any other similar Employee Benefits Programs sponsored by the Named Insured.

3.  "Administration" - As respects the insurance afforded hereby, the unqualified word "administration", wherever used shall mean:

  (a)  giving counsel to employees with respect to the Employee Benefits;

  (b)  interpreting the Employee Benefits;

  (c)  handling of records in connection with the Employee Benefits;

  (d)  effecting enrollment, termination or cancellation of employees under the Employee Benefits performed by a person authorized by the Named Insured to do such acts.

Page 1 of 2
**ENDORSEMENT NO. 4**

CONFIDENTIAL
C&I 000063

This endorsement, effective 12:01 A.M. June 30, 2000

forms a part of Policy No. 5468745

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON – Reed Stenhouse Inc.

IV.     **EXCLUSIONS**

The insurance afforded by this endorsement does not apply:

(a)     to any dishonest, fraudulent, criminal or malicious act, libel, slander, discrimination, or humiliation;

(b)     to bodily injury to, or sickness, or death, of any person or to injury to or destruction of any tangible property including the loss of use thereof;

(c)     to any claim for failure of performance of contract by any Insurer;

(d)     to any claim based upon the Named Insured's failure to comply with any law concerning Workers' Compensation, Unemployment Insurance, Social Security or Disability Benefits;

(e)     to any claim based upon failure of stock to perform as represented by an Insured;

(f)     to any claim based upon advice given by an Insured to participate or not to participate in stock subscription plans;

(g)     to any claim or claims arising out of a breach of professional duty as contemplated under the Employee Retirement Income Security Act of 1974 or amendments thereto.

V.     **LIMITS OF LIABILITY**

EACH CLAIM                    $10,000,000.00
ANNUAL AGGREGATE       $10,000,000.00

The limit of Liability stated above as applicable to "each claim" is the limit of the Insurer's liability for all damages incurred on account of any claim covered hereunder. The limit of liability stated above as "aggregate" is, subject to the above provision respecting each claim, the total limit of the Insurer's liability for all claims covered hereunder and occurring during each annual policy period. The inclusion herein of more than one Insured shall not operate to increase the limits of the Insurer's liability. All sums payable under this endorsement are subject to the application of the Self Insured Retention of the policy.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

July 4, 2000 DL/mv                           Commerce & Industry Insurance Company of Canada
Date

Page 2 of 2
**ENDORSEMENT NO. 5**

CONFIDENTIAL
C&I 000064

This endorsement, effective 12:01 A.M. June 30, 2000

forms a part of Policy No. 5468745

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON – Reed Stenhouse Inc.

## VENDOR'S LIABILITY

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to Completed Operations Hazard and Products Liability Hazard insurance.

It is agreed that the definition of Insureds in the policy is amended to include at the option of the Named Insured any person or organization herein referred to as "Vendor", including erectors who may act as a vendor of the insured's products, as an Insured, but only with respect to the distribution or sale in the regular course of the Vendor's business of the Named Insured's products subject to the following additional provisions:

(1)     The insurance with respect to the Vendor does not apply to:

    (a)     any express warranty or any distribution or sale for a purpose unauthorized by the Named Insured;

    (b)     Bodily Injury or Property Damage arising out of:

        (i)     any act of the Vendor which changes the condition of the products;

        (ii)     any failure to maintain the product in merchantable condition;

        (iii)     any failure to make such inspections, adjustments, tests or servicing as the Vendor has agreed to make or normally undertake to make in the usual course of business, in connection with the distribution or sale of the products; or

        (iv)     products which, after distribution or sale by the Named Insured, have been labeled or re-labeled or used as a container, part or ingredient or any other thing or substance by or for the Vendor;

        (v)     demonstration, installation, servicing or repair operations

    (c)     Bodily Injury or Property Damage occurring within the Vendor's premises, unless the Occurrence results solely from the Named Insured's products.

Page 1 of 2
**ENDORSEMENT NO. 5**

CONFIDENTIAL
C&I 000065

This endorsement, effective 12:01 A.M. June 30, 2000

forms a part of Policy No. 5468745

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON – Reed Stenhouse Inc.


The limits of liability for coverage provided by this endorsement form part of the "Each Occurrence Limit" and the "Products - Completed Operations Aggregate Limit". All sums payable under this endorsement are subject to the application of the Self Insured Retention of the policy.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

July 4, 2000 DL/mv                          Commerce & Industry Insurance Company of Canada
Date

Page 2 of 2
**ENDORSEMENT NO. 6**

CONFIDENTIAL
C&I 000066

This endorsement, effective 12:01 A.M.  June 30, 2000

forms a part of Policy No.  5468745

issued to  LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by  COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for  AON – Reed Stenhouse Inc.

## EMPLOYMENT - RELATED PRACTICES EXCLUSION

In consideration of the premium charged, it is understood and agreed that the Insurer shall have no obligation to defend or indemnify with respect to any claim alleging or asserting in any respect loss, injury, or damage (including consequential bodily injury) in connection with Wrongful Termination of employees and/or Discrimination of employees and/or Sexual Harassment of employees.

The following definitions apply to the foregoing:

Wrongful Termination means termination of an employment relationship in a manner which is against the law and wrongful or in breach of an implied agreement to continue employment.

Discrimination means termination of an employment relationship or a demotion or a failure or refusal to hire or promote any individual because of race, color, religion, age, sex, disability, pregnancy or natural origin.

Sexual Harassment means unwelcome sexual advances and/or requests for sexual favors and/or other verbal of physical conduct of a sexual nature that (1) are made a condition of employment and/or (2) are used as a basis for employment decisions and/or (3) create a work environment that interferes with performance.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

July 4, 2000 DL/mv
Date

Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000067

ENDORSEMENT NO. 7

This endorsement, effective 12:01 A.M. June 30, 2000

forms a part of Policy No. 5468745

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON – Reed Stenhouse Inc.

It is agreed that exclusions A.2.f and B.2.c are deleted and replaced by the following.

### POLLUTANT EXCLUSION

This policy is amended in that it shall not apply to any claim or claims for Bodily Injury, Personal Injury or Property Damage relating to the actual, alleged or threatened discharge, dispersal, release or escape of Pollutants.

The word "Pollutants", wherever used in this Exclusion, means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This Exclusion shall not apply to any such discharge, dispersal, release, or escape that results from:

1.  violent breaking open or explosion of any plant, equipment or building for which the Named Insured has legal responsibility, either as owner or operator;

2.  unintended fire, lightning or windstorm damage to any plant, equipment or building for which the Named Insured has legal responsibility, either as owner or operator;

3.  collision, overturning or upset of any Automobile or railroad vehicle;

4.  the Products Liability Hazard or the Completed Operations Liability Hazard.

Notwithstanding the foregoing this policy is further amended in that it shall not apply to any claim or claims relating to:

a)  any site or location used in whole or in part for the handling, processing, treatment, storage, disposal, or dumping or any waste materials or substance;

b)  the cost of evaluating and/or monitoring and/or controlling pollutants, unless such cost arises in connection with physical injury to tangible property resulting from the Products Liability Hazard or the Completed Operations Liability Hazard;

c)  the cost of removing and/or nullifying and/or cleaning up pollutants on property at any time owned and/or leased and/or rented by the Insured and/or that particular part of property under the control of the Insured;

d)  any liability of the Insured for the actual, alleged or threatened discharge, dispersal, release or escape of Pollutants caused by any of the Insured's Products that have been discarded, dumped or thrown away by others.

"Unintended fire" means fire which becomes uncontrollable or breaks out from where it was intended to be.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

July 4, 2000 DL/mv
Date

Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000068

**ENDORSEMENT NO. 8**

This endorsement, effective 12:01 A.M. June 30, 2000

forms a part of policy No. 5468745

issued to THE CANAM MANAC GROUP INC.

by Commerce & Industry Insurance Company of Canada

for AON Reed Stenhouse Inc.

## SECURITIES AND FINANCIAL INTEREST EXCLUSION

In consideration of the premium charged, it is understood and agreed that the Insurer shall have no obligation to defend or indemnify with respect to any claim alleging or asserting in any respect loss, injury or damage in connection with the purchase or sale, the offer, solicitation, or advertising for the purchase or sale, or the depreciation or decline in price or value, of any security, debt, bank deposit, or financial interest or instrument.

This exclusion applies only to Coverage B – Advertising Injury.

<u>July 4, 2000 DL/mv</u>
Date

Commerce & Industry Insurance Company of Canada

SFI.DOC

CONFIDENTIAL
C&I 000069

ENDORSEMENT NO. 9

This endorsement, effective 12:01 A.M. June 30, 2000

forms a part of Policy No. 5468745

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.

It is agreed that:
Exclusion A.2.h, Mobile Equipment Exclusion, is deleted.
Exclusion A.2.g is deleted and replaced by the following:

**g. Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1)    A watercraft while ashore on premises you own or rent;

(2)    A watercraft you do not own that is less than 30 feet long;

(3)    Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4)    Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5)    "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment"; or

(6)    any non-owned aircraft provided it is not operated by the Insured or any employee of the Insured.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

July 4, 2000 DL/mv
Date

Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000070

ENDORSEMENT NO. 10

This endorsement, effective 12:01 A.M., October 1, 1999

forms a part of Policy No.  5468745

issued to  LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by  COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for  Aon – Reed Stenhouse Inc.

## UNINTENTIONAL FAILURE TO DISCLOSE

It is agreed that failure of the Insured or any person acting on its behalf to disclose all hazards, locations or operations existing as of the inception date of the policy shall not prejudice the Insured with respect to the coverage afforded by this policy provided that such error or omission is not intentional and is reported to the company as soon as practicable upon the Insured or any person acting on its behalf becoming aware of such error or omission.

## KNOWLEDGE of OCCURRENCE

It is hereby understood and agreed that Knowledge of Occurrence by the agent, servant or employee of the Insured shall not in itself constitute knowledge by the Insured unless the Occurrence is known to the Insured's in house counsel or to a member of the Insured's Board of Directors

**EXCEPT AS PROVIDED HEREIN, ALL THE TERMS AND CONDITIONS OF THIS POLICY SHALL HAVE FULL FORCE AND EFFECT.**

July 4, 2000 DL/mv
Date

Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000071

ENDORSEMENT NO. 11

This endorsement, effective 12:01 A.M. June 30, 2000

forms a part of Policy No. 5468745

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.

## BROAD FORM COMMERCIAL LIABILITY ENDORSEMENT

This endorsement does not increase the "aggregate" limit(s) of liability as set forth in the policy to which this endorsement is attached. Rather, "claims" first made under this endorsement shall be subject to said "aggregate" limit(s) along with all other "claims" presented under this policy.

I.     CONTRACTUAL LIABILITY COVERAGE

(A)     the definition of "incidental contract" is extended to include any written contract or agreement relating to the conduct of the Named Insured's business.

(B)     The insurance afforded with respect to liability assumed under an "incidental contract" is subject to the following additional exclusions:

(1)     to "bodily injury" or "property damage" for which the "insured" has assumed liability under any "incidental contract", if such injury or damage occurred prior to the execution of the "incidental contract";

(2)     if the "insured" is an architect, engineer or surveyor, to "bodily injury" or "property damage" arising out of the rendering of or the failure to render professional services by such "insured", including:

(a)     the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs or specifications, and

(b)     supervisory, inspection or engineering services;

(3)     if the indemnitee of the "insured" is an architect, engineer or surveyor, to the liability of the indemnitee, his agents or employees, arising out of:

(a)     the preparation or approval of or the failure to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications, or

(b)     the giving of or the failure to give directions or instructions by the indemnitee, his agents or employees, provided such giving or failure to give is the primary cause of the "bodily injury" or "property damage";

Page 1 of 4

CONFIDENTIAL
C&I 000072

(4) to any obligation for which the "insured" may be held liable in an action on a contract by a third party beneficiary for "bodily injury" or "property damage" arising out of a project for a public authority; but this exclusion does not apply to an action by the public authority or any other person or organization engaged in the project.

(5) to "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property, and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing; but this exclusion does not apply to sidetrack agreements.

(C) The following additional condition applies:

Arbitration

The company shall be entitled to exercise all of the "insured's" rights in the choice of arbitrators and in the conduct of any arbitration proceeding.

II. **HOST LIQUOR LAW LIABILITY COVERAGE**

Exclusion A.2.c is deleted.

III. **BROAD FORM PROPERTY DAMAGE LIABILITY COVERAGE**

The insurance for "property damage" liability applies, subject to the following additional provisions:

Exclusions A.2.j,k &l are replaced by the following:

j.) (1) to property owned or occupied by or rented to the "insured", or, except with respect to the use of "elevators", to property held by the insured for sale or entrusted to the "insured" for storage or safekeeping;

(2) except with respect to liability under a written sidetrack agreement or the use of "elevators"

(a) to property while on premises owned by or rented to the "insured" for the purpose of having operations performed on such property by or on behalf of the "insured",

(b) to tools or equipment while being used by the "insured" in performing his operations,

(c) to property in the custody of the "insured" which is to be installed, erected or used in construction by the "insured",

(d) to that particular part of any property, not on premises owned by or rented to the "insured",

(i) upon which operations are being performed by or on behalf of the "insured" at the time of the "property damage" arising out of such operations, or

Page 2 of 4

CONFIDENTIAL
C&I 000073

(ii) out of which any "property damage" arises, or

(iii) the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the "insured";

However, this clause d does not apply if the damaged work, or the work out of which the damage arises was performed on the Named Insured's behalf by a subcontractor.

(3) to property which is being transported by the Insured by motor vehicle, including the loading and unloading thereof.

k. Damage to Your Product
"Property damage" to that particular part of "your product" arising out of it or any part of it.

l. Damage to Your Work
"Property damage" to that particular part of "your work" arising out of it or any part of it and included in the products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

IV. **TENANT'S LEGAL LIABILITY - REAL PROPERTY**

Exclusion A.2.j does not apply to real property which is leased or rented to the Named Insured, however, no coverage is provided for property damage which arises from wear and tear, gradual deterioration, normal upkeep, latent defect, normal making good, or vermin.

The Tenant's Legal Liability - Real Property shall be excess insurance over any valid and collectible property insurance (including any deductible portion thereof), available to the "Insured", such as, but not limited to, Fire, Extended Coverage, Builder's Risk Coverage or Installation Risk Coverage, and the Other Insurance Condition of the policy is amended accordingly.

V. **INCIDENTAL MEDICAL MALPRACTICE LIABILITY COVERAGE**

The definition of "bodily injury" is amended to include Incidental Medical Malpractice Injury.

Incidental Medical Malpractice Injury means injury arising out of the rendering of or failure to render, during the policy period, the following services:

(A) medical, surgical, dental, x-ray or nursing service or treatment or the furnishing of food or beverages in connection therewith; or

(B) the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances.

This coverage does not apply to:

(1) any "insured" engaged in the business or occupation of providing any of the services described under VI (A) and (B) above;

(2) injury caused by any indemnitee if such indemnitee is engaged in the business or occupation of providing any of the services described under VI (A) and (B) above.

Page 3 of 4

CONFIDENTIAL
C&I 000074

VI.    WORLDWIDE LIABILITY COVERAGE

The definition of "coverage territory" is amended to read as follows:

Anywhere in the world.

VII.    EXTENDED BODILY INJURY COVERAGE

The definition of "occurrence" includes any intentional act by or at the direction of the "insured" which results in "bodily injury" or "property damage", if such injury or damage arises solely from the use of reasonable force for the purpose of protecting persons or property.

July 4, 2000 DL/mv
Date

Commerce & Industry Insurance Company of Canada

BROADCM.DOC 11/95                Page 4 of 4

CONFIDENTIAL
C&I 000075

ENDORSEMENT NO. 12

This endorsement, effective 12:01 A.M. June 30, 2000

forms a part of Policy No. 5468745

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.

**NUCLEAR EXCLUSION**

This Policy does not apply to:

a)  liability imposed by or arising under the Nuclear Liability Act; nor

b)  Bodily Injury or Property Damage with respect to which an Insured under this Policy is also insured under a contract of nuclear energy liability insurance (whether the Insured is unnamed in such contract and whether or not it is legally enforceable by the Insured) issued by the Nuclear Insurance Association of Canada or any other insurer or group or pool of insurers or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; nor

c)  Bodily Injury or Property Damage resulting directly or indirectly from the nuclear energy hazard arising from:

1)  the ownership, maintenance, operation or use of a nuclear facility by or on behalf of the Insured;

2)  the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility; and

3)  the possession, consumption, use, handling, disposal or transportation of fissionable substances, or of other radioactive material (except radioactive isotopes, away from a nuclear facility, which have reached the final stage of fabrication so as to be usable for any scientific, medical, agricultural, commercial or industrial purpose) used, distributed, handled or sold by an Insured.

As used in this Policy:

1)  the term "nuclear energy hazard" means the radioactive, toxic, explosive, or other hazardous properties of radioactive material;

Page 1 of 2

CONFIDENTIAL
C&I 000076

2)    the term "radioactive material" means uranium, thorium, plutonium, neptunium, their respective derivatives and compounds, radioactive isotopes of other elements and any other substances that the Atomic Energy Control Board may, by regulation, designate as being prescribed substances capable of releasing atomic energy, or as being requisite for the production, use or application of atomic energy;

3)    the term "nuclear facility" means:

a)    any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of plutonium, thorium, and uranium or any one or more of them;

b)    any equipment or device designed or used for (i) separating the isotopes of plutonium, thorium and uranium or any one or more of them, (ii) processing or utilizing spent fuel, or (iii) processing or packaging waste;

c)    any equipment or device used for the processing, fabricating or alloying of plutonium, thorium or uranium enriched in the isotope uranium 235, or any one or more of them if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

d)    any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste radioactive material;

and includes the site on which any of the foregoing is located, together with all operations conducted thereon and all premises used for such operations.

4)    the term "fissionable substance" means any prescribed substance that is, or from which can be obtained, a substance capable of releasing atomic energy by nuclear fission.

July 4, 2000 DL/mv
Date

Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000077

ENDORSEMENT NO. 13

This endorsement, effective 12:01 A.M. June 30, 2000

forms a part of Policy No.  5468745

issued to  LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by  COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for  AON - Reed Stenhouse Inc.

## AUTO DEFINITION

It is agreed that the definition VI.2, "Auto," is deleted and replaced by the following:

2.  "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment.  But "auto" does not include "mobile equipment" nor any vehicle which is not required by law to be insured under a specific automobile policy.

July 4, 2000 DL/mv                               Commerce & Industry Insurance Company of Canada
Date

CONFIDENTIAL
C&I 000078

**ENDORSEMENT NO. 14**

This endorsement, effective 12:01 A.M. June 30, 2000

forms a part of Policy No.  5468745

issued to  LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by  COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for  AON - Reed Stenhouse Inc.

## PROFESSIONAL LIABILITY EXCLUSION

It is agreed that such insurance as is afforded by this policy does not apply to any liability arising out of errors, omissions or defects in maps, plans, designs, specifications, opinions, reports, software or surveys prepared, acquired or used by the insured.

However, this exclusion does not apply if such maps, plans, designs, specifications, opinions, reports, software or surveys are related to the sale, fabrication, erection, installation, repair or maintenance of the Named Insured's products.

July 4, 2000 DL/mv
Date

Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000079

**ENDORSEMENT NO. 15**

This endorsement, effective 12:01 A.M. June 30, 2000

forms a part of Policy No. 5468745

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.

**FOREST FIRE FIGHTING
EXPENSES ENDORSEMENT**

In consideration of the premium charged for this policy, it is hereby agreed that insurance provided under Insurance Agreement I. PROPERTY DAMAGE LIABILITY is extended to pay those sums you are obligated by law to pay for forest fire fighting expenses, subject to the following:

1.  This insurance extension does not apply to:

    (a)  expenses incurred directly by you in fighting forest fires;

    (b)  taxes, fines or penalties incurred by you for failing to comply with any statute, law or regulation.

2.  This insurance extension is subject to the provisions of the Self-Insured Retention.

3.  The amount we will pay forms part of the Each Occurrence limit of liability.

July 4, 2000 DL/mv
Date

Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000080

## ENDORSEMENT NO. 16

This endorsement, effective 12:01 A.M. June 30, 2000

forms a part of Policy No. 5468745

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.

## OTHER INSURANCE

It is agreed that this insurance is excess over the following specific policies:

| Coverage | Pol No. | Limit | Carrier | Expiration |
|----------|---------|-------|---------|------------|
| CGL | PHPG118661 | $3,000,000 Agg | Phila Indemnity | Jan/24/01 |
| Excess Liab | PHUM104136 | $5,000,000 Agg | Phila Indemnity | Jan/24/01 |

July 4, 2000 DL/mv
Date

Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000081

ENDORSEMENT NO. 17

This endorsement, effective 12:01 A.M. January 12, 2001

forms a part of Policy No.  5468745

issued to  LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by  COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for  AON – Reed Stenhouse Inc.

## ASBESTOS EXCLUSION (ABSOLUTE)

With respect to Commercial General Liability Coverage Form, SECTION I – Coverage 2 – Exclusions is amended to include the following:

(o)     Any Bodily Injury, Personal Injury, Property Damage, other Loss Injury, or Damage arising out of:

1.   Inhaling, ingesting, use of, or contact with "Asbestos" or premises, structure, goods, or products containing "Asbestos"; or
2.   The use of "Asbestos" in constructing or manufacturing any premises, structure, goods or products; or
3.   The removal of "Asbestos" from any premises, structure, goods, or products; or
4.   The manufacture, use, transportation, distribution, storage, installation, sale, mining, or disposal of "Asbestos" or any premises, structure, goods, or products containing "Asbestos".

"Asbestos" means asbestos, asbestos dust, or asbestos fibers.

Without limiting the other provisions of this policy, the Company is not and shall not be obligated to defend the Insured or incur any costs or expenses including attorney's fees relating to the defense of the Insured, against any claims or suits to which this insurance does not apply.

January 15, 2001 DL/mv                          Commerce & Industry Insurance Company of Canada
Date

CONFIDENTIAL
C&I 000082

**ENDORSEMENT NO. 18**

This endorsement, effective 12:01 A.M. June 30, 2000

forms a part of Policy No.  5468745

issued to  LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by  COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for  AON - Reed Stenhouse Inc.

It is hereby understood and agreed that Endorsement No. 16 is deleted and replaced by the following:

**OTHER INSURANCE**

It is agreed that this insurance is excess over the following specific policies:

| Coverage | Policy No. | Limit | Carrier | Expiration |
|----------|-----------|-------|---------|-----------|
| CGL | QP3714897 | $2,000,000 Agg. | CGU Insurance Co. | Jan. 24/02 |
| Excess Liab. | CPDV02263 | $5,000,000 Agg. | Commercial Union Ins. Co | Jan. 24/02 |

July 4, 2000 DL/mv
Date

Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000083

**COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA**
Canadian Head Office
145 Wellington Street West, Toronto, Ontario  M5J 1H8

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**DECLARATIONS**

**POLICY NO:**  546-89-97                    **RENEWAL OF:**        546-87-45

**Effective Date:**  June 30, 2001 to June 30, 2002
12:01 a.m. Standard Time

| NAMED INSURED | Les Placements CMI Inc. |
|---|---|
| | Total Containment Inc. |
| | Any past, present and/or future subsidiary or controlled companies as may be created or acquired |
| | Any of their pension plans, committee members, employee clubs and recreational organizations. |

| MAILING ADDRESS | 11535 1ère avenue, St. Georges de Beauce, Québec, G5Y 7H5 |
|---|---|

**LIMITS OF INSURANCE**

| | |
|---|---|
| Products – Completed Operations Aggregate Limit | $10,000,000 |
| Personal and Advertising Injury Limit | $10,000,000 |
| Each Occurrence Limit | $10,000,000 |
| Fire Damage Limit | $10,000,000 |
| Medical Expense Limit | $   25,000      Any One Person |

**RETROACTIVE DATE (CG 00 02 only)**
Coverage A of this Insurance does not apply to "bodily injury" or "property damage" which occurs before the
Retroactive Date, if any, shown here:  Jan. 24, 1989        (enter date or "none" if no Retroactive Date applies)

**BUSINESS DESCRIPTION AND LOCATION OF PREMISES**
**Form of Business:**

☐  Individual        ☐  Joint Venture        ☐  Partnership        ☒  Organization
(Other than Partnership or Joint Venture)

**Business Description\*:** All operations of the Insured consisting principally of but not limited to the manufacture,
distribution and installation of piping, fluid handling equipment and fiberglass containers.

**Location of All Premises you Own, Rent or Occupy:**
422 Business Center, A130, PO Box 939, Oaks, PA 19456
Various other premises, blanket basis

**PREMIUM**

| Premium Base         Rate | Advance Premium | Minimum Annual Premium |
|---|---|---|
| As per endorsement no. 1. | $264,000 | $264,000 |

**FORMS AND ENDORSEMENTS (other than applicable Forms and Endorsements shown elsewhere in the policy)**
Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue:  1 to 18

\*Information omitted if shown elsewhere in the policy.

Page 1 of 2

CONFIDENTIAL
C&I 000084

**THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD**

July 9, 2001
Date

Commerce & Industry Insurance Company of Canada

Page 2 of 2

CONFIDENTIAL
C&I 000085

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM
## COVERAGES A. AND B. PROVIDE CLAIMS-MADE COVERAGE
### PLEASE READ THE ENTIRE FORM CAREFULLY

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION VI).

## SECTION I -- COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement.**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS-COVERAGES A AND B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

      (3) A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with paragraph c. below, during the policy period or any Extended Reporting Period we provide under EXTENDED REPORTING PERIODS: (Section V).

   c. A claim by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

      (1) When notice of such claim is received and recorded by any insured or by us, whichever comes first; or

      (2) When we make settlement in accordance with paragraph 1.a. above.

   All claims for damages because of "bodily injury" to the same person, including damages claimed by any person or organization for care, loss of services, or death resulting at any time from the "bodily injury," will be deemed to have been made at the time the first of those claims is made against any insured.

   All claims for damages because of "property damage" causing loss to the same person or organization will be deemed to have been made at the time the first of those claims is made against any insured.

2. **Exclusions.**

   This insurance does not apply to:

   a. **Expected or Intended Injury**
      "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

Page 1 of 14

CONFIDENTIAL
C&I 000086

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage" provided:

(a) Liability to such party for, or for the cost of that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily Injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers Compensation and Similar Laws**

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

(1) An employee of the insured arising out of and in the course of:
  (a) Employment by the insured; or
  (b) Performing duties related to the conduct of the insured's business, or

(2) The spouse, child, parent, brother or sister of that employee as a consequence of paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(i) if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

(ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraph (d) (i) does not apply to "bodily injury" or "property damage" arising out the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape

Page 2 of 14

CONFIDENTIAL
C&I 000087

from a vehicle part designed to hold, store or receive them. this exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or sub-contractor.

Subparagraphs (a) and (d)(i) do not apply to "bodily injury" or "property damage" arising out of heat, stroke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2)    Any loss, cost or expense arising out of any:

    (a)   Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants-, or

    (b)   Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

g.   **Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment, to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1)   A watercraft while ashore on premises you own or rent;

(2)   A watercraft you do not own that is:

    (a)   Less than 26 feet long; and

    (b)   Not being used to carry persons or property for a charge;

(3)   Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto"

is not owned by or rented or loaned to you or the insured;

(4)   Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5)   "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h.   **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1)   The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2)   The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged  racing, speed or demolition or stunting activity.

i.   **War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j.   **Damage to Property**

"Property damage" to

(1)   Property you own, rent or occupy;

(2)   Premises you sell, give away or abandon, if, the "property damage" arises out of any part of those premises;

(3)   Property loaned to you;

(4)   Personal property in the care, custody or control of the insured;

(5)   That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage arises out of those operations; or

(6)   That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

Page 3 of 14

CONFIDENTIAL
C&I 000088

**k.    Damage to Your Product**
"Property damage" to "your product" arising out of it or any part of it.

**l.    Damage to Your Work**
"Property damage" to "your work" arising out of it or any part of it and included in the products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.    Damage to Impaired Property or Property Not Physically Injured**
"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

   (1)    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

   (2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.    Recall of Products, Work or Impaired Property**
Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

   (1)    "Your product";

   (2)    "Your work"; or

   (3)    "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (SECTION III).**

## COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

**1.    Insuring Agreement.**

   **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or offense and settle any claim "suit" that may result. But:

   (1)    The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

   (2)    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

   **b.**    This insurance applies to:

   (1)    "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

   (2)    "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if:

   (1)    the offense was committed in the "coverage territory";

   (2)    The offense was not committed before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

   (3)    A claim for damages because of the "personal injury" or "advertising injury" is first made against any insured, in accordance with paragraph c. below, during the policy period or any Extended reporting Period we provide under EXTENDED REPORTING PERIODS (Section V).

   **c.**    A Claim made by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

   (1)    When notice of such claim is received and recorded by any insured or by us, whichever comes first; or

   (2)    When we make settlement in accordance with paragraph 1.a. above.

All claims for damages because of "personal injury" or "advertising injury" to the same person or organization as a result of an offense will be deemed to have been made at the time the first of these claims is made against any insured.

Page 4 of 14

CONFIDENTIAL
C&I 000089

2. **Exclusions.**

This insurance does not apply to:

a. "Personal injury" or "advertising injury":

   (1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

   (2) Arising out of oral or written publication of material whose first publication took place before the Retroactive Date, if any, shown in the Declarations.

   (3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

   (4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.; or

   (5) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

b. "Advertising injury" arising out of:

   (1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

   (2) The failure of goods, products or services to conform with advertised quality or performance;

   (3) The wrong description of the price of goods, products or services; or

   (4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

c. Any loss, cost or expense arising out of any.

   (1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of pollutants; or

   (2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditions or reclaimed.

## COVERAGE C. MEDICAL PAYMENTS

1. **Insuring Agreement.**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

   (1) On premises you own or rent;

   (2) On ways next to premises you own or rent; or

   (3) Because of your operations;

   provided that:

   (1) The accident takes place in the "coverage territory" and during the policy period;

   (2) The expenses are incurred and reported to us within one year of the date of the accident; and

   (3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

   (1) First aid at the time of an accident;

   (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

   (3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions.**

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an employee of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard".

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

CONFIDENTIAL
C&I 000090

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

We will pay, with respect to any claim or "suit" we investigate or settle, or any "suit" against an insured we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provide us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit."

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request, will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph 2.b.(2) of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section 1 – Coverages), such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgements or settlements; or

b. The conditions set forth above, or the terms of the agreement described in paragraph f. above, are no longer met.

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner:

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership or joint venture or limited liability company, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

Page 6 of 14

CONFIDENTIAL
C&I 000091

2. Each of the following is also an insured:

   a. Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

      (1) "Bodily injury" or "personal injury"

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property

         (a) owned or occupied or used by,

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

      you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and
      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

   No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III -- LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

3. The Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

4. Subject to 2. above, the Each Occurrence Limit is the most we will pay for the sum of:

Page 7 of 14

CONFIDENTIAL
C&I 000092

a.   Damages under Coverage A; and

b.   Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

5.   Subject 4 above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

6.   Subject to 4. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The limits of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

1.   **Bankruptcy.**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2.   **Duties In The Event Of Occurrence, Offense, Claim Or Suit.**

a.   You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1)  How, when, and where the "occurrence" or offense took place;

(2)  The names and addresses of any injured persons and witnesses; and

(3)  The nature and location of any injury or damage arising out of the "occurrence" or offense.

Notice of an "occurrence" or offense is not notice of a claim.

b.   If a claim is received by any insured, you must::

(1)  Immediately record the specifics of the claim and the date received; and

(2)  Notify us as soon as practicable.

You must see to it that we receive written notice of the claim as soon as practicable.

c.   You and any other involved insured must:

(1)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or a "suit";

(2)  Authorize us to obtain records and other information;

(3)  Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4)  Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d.   No insureds will, except at that Insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3.   **Legal Action Against Us.**

No person or organization has a right under this Coverage Part:

a.   To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b.   To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4.   **Other Insurance.**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a.   Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b.   Excess Insurance

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

(1)  That is effective prior to the beginning of the policy period shown in the Declarations of this insurance and applies to "bodily injury" of

Page 8 of 14

CONFIDENTIAL
C&I 000093

"property damage" on other than a claims-made basis, if:

   (a) No Retroactive Date is shown in the Declarations of this insurance; or

   (b) The other insurance has a policy period which continues after the Retroactive Date shown in the Declarations of this insurance;

  (2)  That is Fire, Extended coverage, Builders' Risk, Installation Risk or similar coverage for "your work";

  (3)  That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

  (4)  If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

  (1)  The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

  (2)  The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

  c.  Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5.  Premium Audit.**

  a.  We will compute all premiums for this Coverage Part in accordance with our rules and rates.

  b.  Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period.

Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

  c.  The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6.  Representations.**

By accepting this policy, you agree:

  a.  The statements in the Declarations are accurate and complete;

  b.  Those statements are based upon representations you made to us; and

  c.  We have issued this policy in reliance upon your representations.

**7.  Separation Of Insureds.**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

  a.  As if each Named Insured were the only Named Insured; and

  b.  Separately to each insured against whom claim is made or "suit" is brought.

**8.  Transfer Of Rights Of Recovery Against Others To Us.**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9.  Cancellation**

  a)  This Policy may be canceled by the First Named Insured by giving us written notice stating when, thereafter, such cancellation is to become effective. Return premium shall be computed on the customary short rate basis, subject to the retention by us of the minimum premium, if any, stated in the Declarations; or if the premium is so adjustable, based on the actual exposure for the period of time the Policy was in force.

  b)  This Policy may be canceled by us for non-payment of premium by giving to the First Named Insured fifteen (15) days notice of cancellation by registered mail or personally delivered. Notice to the First Named Insured shall constitute notice to all Insureds.

Page 9 of 14

CONFIDENTIAL
C&I 000094

c) This Policy may be canceled by us by giving to the First Named Insured ninety (90) days notice in writing of cancellation by registered mail and refunding the excess of paid premium beyond the pro rata earned premium for the expired time, subject if applicable to final premium adjustment as soon as practicable based on the actual gross receipts for the period of time the Policy was in force. Notice to the First Named Insured shall constitute notice to all Insureds.

If notice is mailed, proof of mailing will be sufficient proof of notice.

10. **Your Right to Claim and "Occurrence" Information.**

We will provide the first Named Insured shown in the Declarations the following information relating to this and any preceding general liability claims-made Coverage Part we have issued to you during the previous three years:

a. A list or other record of each "occurrence," not previously reported to any other insurer, of which we were notified in accordance with paragraph 2.a. of the DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM OR SUIT Condition in COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV). We will include the date and brief description of the "occurrence" if that information was in the notice we received.

b. A summary by policy year, of payments made and amounts reserved, stated separately, under any applicable General Aggregate Limit and Products-Completed Operations Aggregate Limit.

Amounts reserved are based on our judgment. They are subject to change and should not be regarded as ultimate settlement values.

You must not disclose this information to any claimant or any claimant's representative without our consent.

If we cancel or elect not to renew this Coverage Part, we will provide such information no later than 30 days before the date of policy termination. In other circumstances, we will provide this information only if we receive a written request from the first Named Insured within 60 days after the end of the policy period. In this case, we will provide this information within 45 days of receipt of the request.

We compile claim and "occurrence" information for our own business purposes and exercise reasonable care in doing so. In providing this information to the first Named Insured, we make no representations or warranties to insureds, insurers, or others to whom this information is furnished by or on behalf of any insured. Cancellation or non-renewal will be effective even if we inadvertently provide inaccurate information.

**SECTION V – EXTENDED REPORTING PERIODS**

1. We will provide one or more Extended Reporting Periods, as described below, if:

a. This Coverage Part is cancelled or not renewed, or

b. We renew or replace this Coverage Part with insurance that:

(1) Has a Retroactive Date later than the date shown in the Declarations of this Coverage Part; or

(2) Does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" on a claims-made basis.

2. Extended Reporting Periods do not extend the policy period or change the scope of coverage provided they apply only to claims for:

a. "Bodily injury" or "property damage" that occurs before the end of the policy period but not before the Retroactive date, if any, shown in the Declarations; or

b. "Personal injury" or "advertising injury" caused by an offense committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Declarations.

Once in effect, Extended Reporting Periods may not be cancelled.

3. A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the policy period and lasts for:

a. Five years with respect to claims because of "bodily injury" and "property damage" arising out of an "occurrence" reported to us, not later than 60 days after the end of the policy period, in accordance with paragraph 2.a. of the DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM OR SUIT Condition in COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV);

b. Five years with respect to claims because of "personal injury" and "advertising injury" arising out of an offense reported to us, not later than 60 days after the end of the policy period, in accordance with paragraph 2.a. of the DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM OR SUIT Condition in COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV);

c. Sixty days with respect to claims arising from "occurrences" or offenses not previously reported to us.

The Basic Extended Reporting Period does not apply to claims that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such claims.

4. The Basic Extended Reporting Period does not reinstate or increase the Limits of Insurance.

5. A Supplemental Extended Reporting Period of 12 months duration is available, but only by an endorsement and for an extra charge. This supplemental period starts when the Basic Extended Reporting Period, set forth in paragraph 3. above, ends.

You must give us a written request for the endorsement within 60 days after the end of the policy period. The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

CONFIDENTIAL
C&I 000095

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

a. The exposures insured;
b. Previous types and amounts of insurance;
c. Limits of Insurance available under this Coverage Part for future payment of damages; and
d. other related factors.

The additional premium will not exceed 100% of the annual premium for this Coverage Part.

This endorsement shall set forth the terms, not inconsistent with this Section, applicable to the Supplemental Extended Reporting Period, including a provision to the effect that the insurance afforded for claims first received during such period is excess over any other valid and collectible insurance available under policies in force after the Supplemental Extended Reporting Period starts.

6. The Supplemental Extended Reporting Period does not reinstate or increase the Limits of Insurance.

## SECTION VI - DEFINITIONS

1. "Advertising injury" means injury arising out of one or more of the following offenses:

   a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   b. Oral or written publication of material that violates a person's right of privacy;

   c. Misappropriation of advertising ideas or style of doing business; or

   d. Infringement of copyright, title or slogan.

2. "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, discrimination (where insurance thereof is permitted by law), mental anguish, shock humiliation, harassment, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transporation to or from any place not included in a. above; or

   c. All parts of the world if:

(1) The injury or damage arises out of:

   (a) Goods or products made or sold by you in the territory described in a. above; or

   (b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

(3) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker." "Employee" includes a "temporary worker."

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

8. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for

Page 11 of 14

CONFIDENTIAL
C&I 000096

"bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreements:

    (1)    That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

    (2)    That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

        (a)    Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

        (b)    Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

    (3)    Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

9.    "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

10.    "Loading or unloading" means the handling of property:

    a.    After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    b.    While it is in or on an aircraft, watercraft or "auto"; or

    c.    While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

11.    "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    a.    Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    b.    Vehicles maintained for use solely on or next to premises you own or rent;

    c.    Vehicles that travel on crawler treads;

    d.    Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        (1)    Power cranes, shovels, loaders, diggers or drills; or

        (2)    Road construction or resurfacing equipment such as graders, scrapers or rollers;

    e.    Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        (1)    Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        (2)    Cherry pickers and similar devices used to raise or lower workers;

    f.    Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

    However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

        (1)    Equipment designed primarily for:

            (a)    Snow removal;

            (b)    Road maintenance, but not construction or resurfacing; or

            (c)    Street cleaning;

        (2)    Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

        (3)    Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

12.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

13.    "Personal injury" means injury, other than "bodily injury" arising out of one or more of the following offenses:

    a.    False arrest, detention or imprisonment;

    b.    Malicious prosecution;

    c.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

Page 12 of 14

CONFIDENTIAL
C&I 000097

d.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e.  Oral or written publication of material that violates a person's right of privacy.

14.  Products-completed operations hazard":

a.  includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1)  Products that are still in your physical, possession; or

(2)  Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a)  When all of the work called for in your contract has been completed.

(b)  When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(c)  When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b.  Does not include "bodily injury" or "property damage" arising out of:

(1)  The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2)  The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3)  Products or operations for which the classification in the Declarations or in a policy schedule, states that products-completed operations are subject to the General aggregate limit.

15.  "Property damage" means:

a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence" that caused it.

16.  "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

a.  An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b.  Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

17.  "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee' on leave or to meet seasonal or short-term workload conditions.

18.  "Your product" means:

a.  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1)  You;

(2)  Others trading under your name; or

(3)  A person or organization whose business or assets you have acquired; and

b.  Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product", and

b.  The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

19.  "Your work" means:

a.  Work or operations performed by you or on your behalf; and

b.  Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b.  The providing of or failure to provide warnings or instructions.

Page 13 of 14

CONFIDENTIAL
C&I 000098

July 9, 2001 DL/mv
Date

Commerce & Industry Insurance Company of Canada

Page 14 of 14

CONFIDENTIAL
C&I 000099

ENDORSEMENT NO. 1

This endorsement, effective 12:01 A.M. June 30, 2001

forms a part of Policy No. 5468997

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.

It is agreed that:

1) coverage is restricted to apply only to liability arising from:

Total Containment Inc.;

Any past, present and/or future subsidiary or controlled company of Total Containment Inc., as may now exist or be hereinafter created or acquired; or

Any of the pension plans, committee members, employee clubs and recreational organizations of the foregoing.

2) Certificate holders, for whom the Named Insured has agreed to supply insurance, are added as Additional Insureds, but only in respect of liability arising from the Named Insured's operations.

3) Installers and applicators, for whom the Named Insured has agreed to supply insurance, are added as Additional Insureds, but only in respect to work performed on behalf of the Named Insured.

4) Unless expressly indicated otherwise, all Limits of Insurance, Premiums, Deductibles and other amounts of money are expressed in USA currency.

5) The deposit premium of $264,000 is flat annual for sales up to $20,000,000. At expiry, the premium will be incremented at a rate of $5.50 per $1,000 of net sales on actual sales between $20,000,000 and $30,000,000. and $2.74 per $1,000 of net sales, on the portion of sales which are in excess of $30,000,000. Sales means "Net Sales" as expressed in the Insured's Financial Statement.

July 9, 2001 DL/mv
Date

Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000100

## ENDORSEMENT NO. 2

This endorsement, effective 12:01 A.M. June 30, 2001

forms a part of Policy No. 5468997

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.

### SELF-INSURED RETENTION

It is hereby understood and agreed that:

1)     The Limit of Liability as stated in the Declarations shall be in excess of the following Self-Insured Retention to be borne by the Insured:

> One hundred thousand dollars ($100,000.00) each occurrence including defense and loss adjustment expense

2)     The Insurer shall have the right but not the duty to investigate, negotiate, settle or defend losses or claims within the Self-Insured Retention but may, at the Insured's request perform the above mentioned services, in which event the Insurer may pay any part or all of the Self-Insured Retention amount to effect settlement of any claim or suit and, upon notification of the action taken, the Named Insured shall promptly reimburse the Insurer for such part of the Self-Insured Retention amount as has been paid by the Insurer.

3)     The Insured shall immediately notify the Insurer in writing of any claim to which this policy applies which:

    a)     involved serious bodily injury or fatality;

    b)     the Insured has received notice of suit in which the amount claimed exceeds the Self-Insured Retention;

    c)     may exceed 25% of the Self-Insured Retention.

4)     The Insured shall have the right to pay, at their sole discretion, any claim which falls entirely within the amount of the stated Self-Insured Retention.

> Claims which are self-administered because they appear to be below the Self-Insured Retention should not be defeated if subsequent results exceed the Self-Insured Retention. Upon discovery of such a claim, notice shall given to Insurers as soon as possible.

6)     The Self-Insured Retention stated above shall be deemed applicable irrespective of the inability of the Insured to pay by reason of bankruptcy, insolvency, or by the Insured's refusal to pay.

<u>July 9, 2001 DL/mv</u>
Date

_____
Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000101

## ENDORSEMENT NO. 3

This endorsement, effective 12:01 A.M. June 30, 2001

forms a part of Policy No. 5468997

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### HIRED AUTO AND NON-OWNED AUTO LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

Insurance is provided only with respect to those coverages for which a specific premium charge is shown:

| Coverage | Additional Premium |
|---|---|
| Non-Ownership Liability | $ Included |
| Hired Auto Liability | $ Included |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

### HIRED AUTO LIABILITY

The insurance provided under COVERAGE A (Section I) applies to "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" by you or your employees in the course of your business.

With respect to the insurance provided by this endorsement:

1. The exclusions, under COVERAGE A (Section I), other than exclusions a, b, d, f and I and the Nuclear Energy Liability Exclusion (Broad Form) are deleted and replaced by the following:

    a. "Bodily Injury"

    (1) To an employee of the insured arising out of and in the course of employment by the insured, or

    (2) To the spouse, child, parent, brother or sister of that employee as a consequence of (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of injury.

This exclusion does not apply to:

CONFIDENTIAL
C&I 000102

(1) Liability assumed by the insured under an "insured contract", or

Page 1 of 3

(2) "Bodily Injury" arising out of and in the course of domestic employment by the insured unless benefits for such injury are in whole or in part either payable or required to be provided under any workers compensation law.

b. "Property damage" to:

(1) Property owned or being transported by or rented or loaned to the insured; or

(2) Property in the care, custody or control of the insured.

2. WHO IS AN INSURED (Section II) is replaced by the following:

Each of the following is an insured under this insurance to the extent set forth below:

    a. You;

    b. Any other person using a "hired auto" with your permission;

    c. With respect to a "non-owned auto," any partner or executive officer of yours, but only while such "non-owned auto" is being used in your business;

    d. Any other person or organization, but only with respect to their liability because of acts or omissions of an insured under a., b., or c. above.

None of the following is an insured:

    a. Any person engaged in the business of his or her employer with respect to "bodily injury" to any co-employee of such person injured in the course of employment;

    b. Any partner or executive officer with respect to any "auto" owned by such partner or officer or a member of his or her household;

    c. Any person while employed in or otherwise engaged in duties in connection with an "auto business", other than an "auto business" you operate;

    d. The owner or lessee (of whom you are a sublessee) of a "hired auto" or the owner of a "non-owned auto" or any agent or employee of any such owner or lessee;

    e. Any person or organization with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

**NON-OWNED AUTO LIABILITY**

The insurance provided under COVERAGE A (Section I) applies to "bodily injury" or "property damage" arising out of the use of any "non-owned auto" in your business by any person other than you.

Page 2 of 3

CONFIDENTIAL
C&I 000103

The following additional definitions apply:

"Auto business" means the business or occupation of selling, repairing, servicing, storing or parking "autos", "Hired auto" means any "auto" you lease, hire, or borrow.  This does not include any "auto" you lease, hire or borrow from any of your employees or members of their households, or from any partner or executive officer of yours.

"Non-owned auto" means any "auto" you do not own, lease, hire or borrow which are used in connection with your business.  However, if you are a partnership a "non-owned auto" does not include any auto owned by any partner.

July 9, 2001 DL/mv
Date

Commerce & Industry Insurance Company of Canada

Page 3 of 3

CONFIDENTIAL
C&I 000104

ENDORSEMENT NO. 4

This endorsement, effective 12:01 A.M. June 30, 2001

forms a part of Policy No. 5468997

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.

## EMPLOYEE BENEFITS LIABILITY

I.    **COVERAGE**

The Insurer will pay on behalf of the Insured all sums which the Insurer shall become legally obligated to pay on account of any claim made against the Insured during the policy period and caused by the negligent act, error or omission of the Insured, or any other person for whose acts the Insured is legally liable in the administration of Employee Benefits as defined herein.

II.    **DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS**

Provisions of the Policy shall apply as respects the insurance hereby afforded.

III.    **DEFINITIONS**

1.    "Insured" - The unqualified word "Insured", wherever used, in relation to the insurance afforded hereby includes not only the Named Insured, but also any partner, executive officer, director, stockholder or employee, provided such employee is authorized to act in the administration of the Employee Benefits.

2.    "Employee Benefits" - The term "Employee Benefits" shall mean Group Life Insurance, Group Accident or Health Insurance, Profit Sharing Plans, Pension Plans, Workers' Compensation, Unemployment Insurance, Social Security, and Disability Benefits, Supplemental Unemployment Benefits, Social Insurance, Liability Benefits Insurance, and any other similar Employee Benefits Programs sponsored by the Named Insured.

3.    "Administration" - As respects the insurance afforded hereby, the unqualified word "administration", wherever used shall mean:

    (a)    giving counsel to employees with respect to the Employee Benefits;

    (b)    interpreting the Employee Benefits;

    (c)    handling of records in connection with the Employee Benefits;

    (d)    effecting enrollment, termination or cancellation of employees under the Employee Benefits performed by a person authorized by the Named Insured to do such acts.

Page 1 of 2

CONFIDENTIAL
C&I 000105

IV.    **EXCLUSIONS**

The insurance afforded by this endorsement does not apply:

(a)    to any dishonest, fraudulent, criminal or malicious act, libel, slander, discrimination, or humiliation;

(b)    to bodily injury to, or sickness, or death, of any person or to injury to or destruction of any tangible property including the loss of use thereof;

(c)    to any claim for failure of performance of contract by any Insurer;

(d)    to any claim based upon the Named Insured's failure to comply with any law concerning Workers' Compensation, Unemployment Insurance, Social Security or Disability Benefits;

(e)    to any claim based upon failure of stock to perform as represented by an Insured;

(f)    to any claim based upon advice given by an Insured to participate or not to participate in stock subscription plans;

(g)    to any claim or claims arising out of a breach of professional duty as contemplated under the Employee Retirement Income Security Act of 1974 or amendments thereto.

V.    **LIMITS OF LIABILITY**

EACH CLAIM                $10,000,000.00
ANNUAL AGGREGATE          $10,000,000.00

The limit of Liability stated above as applicable to "each claim" is the limit of the Insurer's liability for all damages incurred on account of any claim covered hereunder. The limit of liability stated above as "aggregate" is, subject to the above provision respecting each claim, the total limit of the Insurer's liability for all claims covered hereunder and occurring during each annual policy period. The inclusion herein of more than one Insured shall not operate to increase the limits of the Insurer's liability. All sums payable under this endorsement are subject to the application of the Self Insured Retention of the policy.

July 9, 2001 DL/mv
Date

Commerce & Industry Insurance Company of Canada
Page 2 of 2

CONFIDENTIAL
C&I 000106

ENDORSEMENT NO. 5

This endorsement, effective 12:01 A.M. June 30, 2001

forms a part of Policy No. 5468997

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.

## VENDOR'S LIABILITY

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to Completed Operations Hazard and Products Liability Hazard insurance.

It is agreed that the definition of Insureds in the policy is amended to include at the option of the Named Insured any person or organization herein referred to as "Vendor", including erectors who may act as a vendor of the insured's products, as an Insured, but only with respect to the distribution or sale in the regular course of the Vendor's business of the Named Insured's products subject to the following additional provisions:

(1)     The insurance with respect to the Vendor does not apply to:

    (a)     any express warranty or any distribution or sale for a purpose unauthorized by the Named Insured;

    (b)     Bodily Injury or Property Damage arising out of:

        (i)     any act of the Vendor which changes the condition of the products;

        (ii)     any failure to maintain the product in merchantable condition;

        (iii)     any failure to make such inspections, adjustments, tests or servicing as the Vendor has agreed to make or normally undertake to make in the usual course of business, in connection with the distribution or sale of the products; or

        (iv)     products which, after distribution or sale by the Named Insured, have been labeled or re-labeled or used as a container, part or ingredient or any other thing or substance by or for the Vendor;

        (v)     demonstration, installation, servicing or repair operations

    (c)     Bodily Injury or Property Damage occurring within the Vendor's premises, unless the Occurrence results solely from the Named Insured's products.

The limits of liability for coverage provided by this endorsement form part of the "Each Occurrence Limit" and the "Products - Completed Operations Aggregate Limit". All sums payable under this endorsement are subject to the application of the Self Insured Retention of the policy.

July 9, 2001 DL/mv
Date

                        Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000107

**ENDORSEMENT NO. 6**

This endorsement, effective 12:01 A.M. June 30, 2001

forms a part of Policy No. 5468997

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.

## EMPLOYMENT - RELATED PRACTICES EXCLUSION

In consideration of the premium charged, it is understood and agreed that the Insurer shall have no obligation to defend or indemnify with respect to any claim alleging or asserting in any respect loss, injury, or damage (including consequential bodily injury) in connection with Wrongful Termination of employees and/or Discrimination of employees and/or Sexual Harassment of employees.

The following definitions apply to the foregoing:

Wrongful Termination means termination of an employment relationship in a manner which is against the law and wrongful or in breach of an implied agreement to continue employment.

Discrimination means termination of an employment relationship or a demotion or a failure or refusal to hire or promote any individual because of race, color, religion, age, sex, disability, pregnancy or natural origin.

Sexual Harassment means unwelcome sexual advances and/or requests for sexual favors and/or other verbal of physical conduct of a sexual nature that (1) are made a condition of employment and/or (2) are used as a basis for employment decisions and/or (3) create a work environment that interferes with performance.

July 9, 2001 DL/mv
Date

Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000108

**ENDORSEMENT NO. 7**

This endorsement, effective 12:01 A.M. June 30, 2001

forms a part of Policy No. 5468997

issued to  LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by  COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for  AON - Reed Stenhouse Inc.

**POLLUTANT EXCLUSION**

This policy is amended in that it shall not apply to any claim or claims for Bodily Injury, Personal Injury or Property Damage relating to the actual, alleged or threatened discharge, dispersal, release or escape of Pollutants.

The word "Pollutants", wherever used in this Exclusion, means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

This Exclusion shall not apply to any such discharge, dispersal, release, or escape that results from:

1. violent breaking open or explosion of any plant, equipment or building for which the Named Insured has legal responsibility, either as owner or operator;

2. unintended fire, lightning or windstorm damage to any plant, equipment or building for which the Named Insured has legal responsibility, either as owner or operator;

3. collision, overturning or upset of any Automobile or railroad vehicle;

4. the Products Liability Hazard or the Completed Operations Liability Hazard.

Notwithstanding the foregoing this policy is further amended in that it shall not apply to any claim or claims relating to:

a) any site or location used in whole or in part for the handling, processing, treatment, storage, disposal, or dumping or any waste materials or substance;

b) the cost of evaluating and/or monitoring and/or controlling pollutants, unless such cost arises in connection with physical injury to tangible property resulting from the Products Liability Hazard or the Completed Operations Liability Hazard;

c) the cost of removing and/or nullifying and/or cleaning up pollutants on property at any time owned and/or leased and/or rented by the Insured and/or that particular part of property under the control of the Insured;

d) any liability of the Insured for the actual, alleged or threatened discharge, dispersal, release or escape of Pollutants caused by any of the Insured's Products that have been discarded, dumped or thrown away by others.

"Unintended fire" means fire which becomes uncontrollable or breaks out from where it was intended to be.

July 9, 2001 DL/mv
Date

Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000109

**ENDORSEMENT NO. 8**

This endorsement, effective 12:01 A.M. June 30, 2001

forms a part of Policy No. 5468997

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.

## SECURITIES AND FINANCIAL INTEREST EXCLUSION

In consideration of the premium charged, it is understood and agreed that the Insurer shall have no obligation to defend or indemnify with respect to any claim alleging or asserting in any respect loss, injury or damage in connection with the purchase or sale, the offer, solicitation, or advertising for the purchase or sale, or the depreciation or decline in price or value, of any security, debt, bank deposit, or financial interest or instrument.

This exclusion applies only to Coverage B – Advertising Injury.

<u>July 9, 2001 DL/mv</u>
Date

<u>                         </u>
Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000110

ENDORSEMENT NO. 9

This endorsement, effective 12:01 A.M. June 30, 2001

forms a part of Policy No.  5468997

issued to  LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by  COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for  AON - Reed Stenhouse Inc.

It is agreed that:
Exclusion A.2.h, Mobile Equipment Exclusion, is deleted.
Exclusion A.2.g is deleted and replaced by the following:

**g. Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1)    A watercraft while ashore on premises you own or rent;

(2)    A watercraft you do not own that is less than 30 feet long;

(3)    Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4)    Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5)    "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment"; or

(6)    any non-owned aircraft provided it is not operated by the Insured or any employee of the Insured.

<u>July 9, 2001 DL/mv</u>
Date

Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000111

ENDORSEMENT NO. 10

This endorsement, effective 12:01 A.M. June 30, 2001

forms a part of Policy No. 5468997

issued to  LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by  COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for  AON - Reed Stenhouse Inc.

## UNINTENTIONAL FAILURE TO DISCLOSE

It is agreed that failure of the Insured or any person acting on its behalf to disclose all hazards, locations or operations existing as of the inception date of the policy shall not prejudice the Insured with respect to the coverage afforded by this policy provided that such error or omission is not intentional and is reported to the company as soon as practicable upon the Insured or any person acting on its behalf becoming aware of such error or omission.

## KNOWLEDGE OF OCCURRENCE

It is hereby understood and agreed that Knowledge of Occurrence by the agent, servant or employee of the Insured shall not in itself constitute knowledge by the Insured unless the Occurrence is known to the Insured's in house counsel or to a member of the Insured's Board of Directors.

July 9, 2001 DL/mv
Date

Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000112

ENDORSEMENT NO. 11

This endorsement, effective 12:01 A.M. June 30, 2001

forms a part of Policy No. 5468997

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.

## BROAD FORM COMMERCIAL LIABILITY ENDORSEMENT

This endorsement does not increase the "aggregate" limit(s) of liability as set forth in the policy to which this endorsement is attached. Rather, "claims" first made under this endorsement shall be subject to said "aggregate" limit(s) along with all other "claims" presented under this policy.

I.    CONTRACTUAL LIABILITY COVERAGE

    (A)    the definition of "incidental contract" is extended to include any written contract or agreement relating to the conduct of the Named Insured's business.

    (B)    The insurance afforded with respect to liability assumed under an "incidental contract" is subject to the following additional exclusions:

        (1)    to "bodily injury" or "property damage" for which the "insured" has assumed liability under any "incidental contract", if such injury or damage occurred prior to the execution of the "incidental contract";

        (2)    if the "insured" is an architect, engineer or surveyor, to "bodily injury" or "property damage" arising out of the rendering of or the failure to render professional services by such "insured", including:

            (a)    the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs or specifications, and

            (b)    supervisory, inspection or engineering services;

        (3)    if the indemnitee of the "insured" is an architect, engineer or surveyor, to the liability of the indemnitee, his agents or employees, arising out of:

            (a)    the preparation or approval of or the failure to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications, or

            (b)    the giving of or the failure to give directions or instructions by the indemnitee, his agents or employees, provided such giving or failure to give is the primary cause of the "bodily injury" or "property damage";

CONFIDENTIAL
C&I 000113

(4)    to any obligation for which the "insured" may be held liable in an action on a contract by a third party beneficiary for "bodily injury" or "property damage" arising out of a project for a public authority; but this exclusion does not apply to an action by the public authority or any other person or organization engaged in the project.

(5)    to "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property, and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing; but this exclusion does not apply to sidetrack agreements.

(C)    The following additional condition applies:

Arbitration

The company shall be entitled to exercise all of the "insured's" rights in the choice of arbitrators and in the conduct of any arbitration proceeding.

II.    HOST LIQUOR LAW LIABILITY COVERAGE

Exclusion A.2.c is deleted.

III.    BROAD FORM PROPERTY DAMAGE LIABILITY COVERAGE

The insurance for "property damage" liability applies, subject to the following additional provisions:

Exclusions A.2.j,k &l are replaced by the following:

j.)    (1)    to property owned or occupied by or rented to the "insured", or, except with respect to the use of "elevators", to property held by the insured for sale or entrusted to the "insured" for storage or safekeeping;

(2)    except with respect to liability under a written sidetrack agreement or the use of "elevators"

    (a)    to property while on premises owned by or rented to the "insured" for the purpose of having operations performed on such property by or on behalf of the "insured",

    (b)    to tools or equipment while being used by the "insured" in performing his operations,

    (c)    to property in the custody of the "insured" which is to be installed, erected or used in construction by the "insured",

    (d)    to that particular part of any property, not on premises owned by or rented to the "insured",

        (i)    upon which operations are being performed by or on behalf of the "insured" at the time of the "property damage" arising out of such operations, or

CONFIDENTIAL
C&I 000114

(ii)    out of which any "property damage" arises, or

(iii)   the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the "insured";

However, this clause d does not apply if the damaged work, or the work out of which the damage arises was performed on the Named Insured's behalf by a subcontractor.

(3)    to property which is being transported by the Insured by motor vehicle, including the loading and unloading thereof.

k.   Damage to Your Product
"Property damage" to that particular part of "your product" arising out of it or any part of it.

l.   Damage to Your Work
"Property damage" to that particular part of "your work" arising out of it or any part of it and included in the products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

IV.    TENANT'S LEGAL LIABILITY - REAL PROPERTY

Exclusion A.2.j does not apply to real property which is leased or rented to the Named Insured, however, no coverage is provided for property damage which arises from wear and tear, gradual deterioration, normal upkeep, latent defect, normal making good, or vermin.

The Tenant's Legal Liability - Real Property shall be excess insurance over any valid and collectible property insurance (including any deductible portion thereof), available to the "Insured", such as, but not limited to, Fire, Extended Coverage, Builder's Risk Coverage or Installation Risk Coverage, and the Other Insurance Condition of the policy is amended accordingly.

V.    INCIDENTAL MEDICAL MALPRACTICE LIABILITY COVERAGE

The definition of "bodily injury" is amended to include Incidental Medical Malpractice Injury.

Incidental Medical Malpractice Injury means injury arising out of the rendering of or failure to render, during the policy period, the following services:

(A)    medical, surgical, dental, x-ray or nursing service or treatment or the furnishing of food or beverages in connection therewith; or

(B)    the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances.

This coverage does not apply to:

(1)    any "insured" engaged in the business or occupation of providing any of the services described under VI (A) and (B) above;

(2)    injury caused by any indemnitee if such indemnitee is engaged in the business or occupation of providing any of the services described under VI (A) and (B) above.

CONFIDENTIAL
C&I 000115

VI.    WORLDWIDE LIABILITY COVERAGE

The definition of "coverage territory" is amended to read as follows:

Anywhere in the world.

VII.    EXTENDED BODILY INJURY COVERAGE

The definition of "occurrence" includes any intentional act by or at the direction of the "insured" which results in "bodily injury" or "property damage", if such injury or damage arises solely from the use of reasonable force for the purpose of protecting persons or property.

July 9, 2001 DL/mv
Date

Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000116

ENDORSEMENT NO. 12

This endorsement, effective 12:01 A.M. June 30, 2001

forms a part of Policy No. 5468997

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.

## NUCLEAR EXCLUSION

This Policy does not apply to:

a) liability imposed by or arising under the Nuclear Liability Act; nor

b) Bodily Injury or Property Damage with respect to which an Insured under this Policy is also insured under a contract of nuclear energy liability insurance (whether the Insured is unnamed in such contract and whether or not it is legally enforceable by the Insured) issued by the Nuclear Insurance Association of Canada or any other insurer or group or pool of insurers or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; nor

c) Bodily Injury or Property Damage resulting directly or indirectly from the nuclear energy hazard arising from:

  1) the ownership, maintenance, operation or use of a nuclear facility by or on behalf of the Insured;

  2) the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility; and

  3) the possession, consumption, use, handling, disposal or transportation of fissionable substances, or of other radioactive material (except radioactive isotopes, away from a nuclear facility, which have reached the final stage of fabrication so as to be usable for any scientific, medical, agricultural, commercial or industrial purpose) used, distributed, handled or sold by an Insured.

As used in this Policy:

  1) the term "nuclear energy hazard" means the radioactive, toxic, explosive, or other hazardous properties of radioactive material;

CONFIDENTIAL
C&I 000117

2)   the term "radioactive material" means uranium, thorium, plutonium, neptunium, their respective derivatives and compounds, radioactive isotopes of other elements and any other substances that the Atomic Energy Control Board may, by regulation, designate as being prescribed substances capable of releasing atomic energy, or as being requisite for the production, use or application of atomic energy;

3)   the term "nuclear facility" means:

   a)   any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of plutonium, thorium, and uranium or any one or more of them;

   b)   any equipment or device designed or used for (i) separating the isotopes of plutonium, thorium and uranium or any one or more of them, (ii) processing or utilizing spent fuel, or (iii) processing or packaging waste;

   c)   any equipment or device used for the processing, fabricating or alloying of plutonium, thorium or uranium enriched in the isotope uranium 233 or in the isotope uranium 235, or any one or more of them if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   d)   any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste radioactive material;

   and includes the site on which any of the foregoing is located, together with all operations conducted thereon and all premises used for such operations.

4)   the term "fissionable substance" means any prescribed substance that is, or from which can be obtained, a substance capable of releasing atomic energy by nuclear fission.

CONFIDENTIAL
C&I 000118

**ENDORSEMENT NO. 13**

This endorsement, effective 12:01 A.M. June 30, 2001

forms a part of Policy No. 5468997

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.

## AUTO DEFINITION

It is agreed that the definition VI.2, "Auto," is deleted and replaced by the following:

2. "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment" nor any vehicle which is not required by law to be insured under a specific automobile policy.

July 9, 2001 DL/mv
Date

Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000119

ENDORSEMENT NO. 14

This endorsement, effective 12:01 A.M. June 30, 2001

forms a part of Policy No. 5468997

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.

## PROFESSIONAL LIABILITY EXCLUSION

It is agreed that such insurance as is afforded by this policy does not apply to any liability arising out of errors, omissions or defects in maps, plans, designs, specifications, opinions, reports, software or surveys prepared, acquired or used by the insured.

However, this exclusion does not apply if such maps, plans, designs, specifications, opinions, reports, software or surveys are related to the sale, fabrication, erection, installation, repair or maintenance of the Named Insured's products.

July 9, 2001 DL/mv
Date

Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000120

ENDORSEMENT NO. 15

This endorsement, effective 12:01 A.M. June 30, 2001

forms a part of Policy No.  5468997

issued to  LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by  COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for  AON - Reed Stenhouse Inc.

**FOREST FIRE FIGHTING
EXPENSES ENDORSEMENT**

In consideration of the premium charged for this policy, it is hereby agreed that insurance provided under Insurance Agreement I. PROPERTY DAMAGE LIABILITY is extended to pay those sums you are obligated by law to pay for forest fire fighting expenses, subject to the following:

1.    This insurance extension does not apply to:

   (a)    expenses incurred directly by you in fighting forest fires;

   (b)    taxes, fines or penalties incurred by you for failing to comply with any statute, law or regulation.

2.    This insurance extension is subject to the provisions of the Self-Insured Retention.

3.    The amount we will pay forms part of the Each Occurrence limit of liability.

July 9, 2001 DL/mv
Date

Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000121

**ENDORSEMENT NO. 16**

This endorsement, effective 12:01 A.M. June 30, 2001

forms a part of Policy No. 5468997

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.

**OTHER INSURANCE**

It is agreed that this insurance is excess over the following specific policies:

| Coverage | Policy No. | Limit | Carrier | Expiration |
|----------|-----------|-------|---------|-----------|
| CGL | QP3714897 | $2,000,000 Agg. | CGU Insurance Co. | Jan. 24/02 |
| Excess Liab. | CPDV02263 | $5,000,000 Agg. | Commercial Union Ins. Co | Jan. 24/02 |

July 9, 2001 DL/mv
Date

Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000122

ENDORSEMENT NO. 17

This endorsement, effective 12:01 A.M. June 30, 2001

forms a part of Policy No. 5468997

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.

## ASBESTOS EXCLUSION (ABSOLUTE)

With respect to Commercial General Liability Coverage Form, SECTION I – Coverage 2 – Exclusions is amended to include the following:

(o)     Any Bodily Injury, Personal Injury, Property Damage, other Loss Injury, or Damage arising out of:

1.     Inhaling, ingesting, use of, or contact with "Asbestos" or premises, structure, goods, or products containing "Asbestos"; or
2.     The use of "Asbestos" in constructing or manufacturing any premises, structure, goods, or products; or
3.     The removal of "Asbestos" from any premises, structure, goods, or products; or
4.     The manufacture, use, transportation, distribution, storage, installation, sale, mining, or disposal of "Asbestos" or any premises, structure, goods, or products containing "Asbestos".

"Asbestos" means asbestos, asbestos dust, or asbestos fibers.

Without limiting the other provisions of this policy, the Company is not and shall not be obligated to defend the Insured or incur any costs or expenses including attorney's fees relating to the defense of the Insured, against any claims or suits to which this insurance does not apply.

July 9, 2001 DL/mv
Date

Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000123

**ENDORSEMENT NO. 18**

This endorsement, effective 12:01 A.M. June 30, 2001

forms a part of Policy No. 5468997

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.

**LANGUAGE CLAUSE**

The Insurer and the Insured have presently required that the present policy and all related documents be drawn up in the English language.

L'Assureur et l'Assuré ont expressément exigé que la présente police d'assurance ainsi que tous les documents y afférent soient rédigés en langue anglaise.

July 9, 2001 DL/mv                                    Commerce & Industry Insurance Company of Canada
Date

CONFIDENTIAL
C&I 000124

ENDORSEMENT NO. 19

This endorsement, effective 12:01 A.M. June 30, 2001

forms a part of Policy No.: 5468997

issued to Les Placements CMI Inc. and/or Total Containment Inc.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON Reed Stenhouse Inc.

## KNOWLEDGE OF OCCURRENCE

It is hereby understood and agreed that Endorsement No. 10, Knowledge of Occurrence, is amended to read as follows:

> "It is hereby understood and agreed that Knowledge of Occurrence by the agent, servant or employee of the Insured shall not in itself constitute knowledge by the Insured unless the Occurrence is known to the Insured's President or to a member of the Insured's Board of Directors."

November 16, 2001 DL/mw
Date

Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000125

**COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA**
Canadian Head Office
145 Wellington Street West, Toronto, Ontario  M5J 1H8

**COMMERCIAL GENERAL LIABILITY COVERAGE PART
DECLARATIONS**

**POLICY NO:** 5469358                **RENEWAL OF:**      5468997

**Effective Date:**  June 30, 2002 to June 30, 2003
12:01 a.m. Standard Time

| | |
|---|---|
| **NAMED INSURED** | Les Placements CMI Inc. |
| | Total Containment Inc. |
| | Any past, present and/or future subsidiary or controlled companies as may be created or acquired |
| | Any of their pension plans, committee members, employee clubs and recreational organizations. |

**MAILING ADDRESS**    11535 1ère avenue, St. Georges de Beauce, Québec, G5Y 7H5

**LIMITS OF INSURANCE**

| | | |
|---|---|---|
| Products – Completed Operations Aggregate Limit | $10,000,000 | |
| Personal and Advertising Injury Limit | $10,000,000 | |
| Each Occurrence Limit | $10,000,000 | |
| Fire Damage Limit | $10,000,000 | |
| Medical Expense Limit | $     25,000 | Any One Person |

**RETROACTIVE DATE (CG 00 02 only)**
Coverage A of this Insurance does not apply to "bodily injury" or "property damage" which occurs before the Retroactive Date, if any, shown here: Jan. 24, 1989     (enter date or "none" if no Retroactive Date applies)

**BUSINESS DESCRIPTION AND LOCATION OF PREMISES**
Form of Business:
☐ Individual    ☐ Joint Venture    ☐ Partnership    ☒ Organization
(Other than Partnership or Joint Venture)

**Business Description\***: All operations of the Insured consisting principally of but not limited to the manufacture, distribution and installation of piping, fluid handling equipment and fiberglass containers.

**Location of All Premises you Own, Rent or Occupy:**
422 Business Center, A130, PO Box 939, Oaks, PA 19456
Various other premises, blanket basis

**PREMIUM**

| Premium Base | Rate | Advance Premium | Minimum Annual Premium |
|---|---|---|---|
| As per endorsement no. 1. | | $244,358 | $244,358 |

**FORMS AND ENDORSEMENTS (other than applicable Forms and Endorsements shown elsewhere in the policy)**
Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue:  1 to 18

\*Information omitted if shown elsewhere in the policy.

Page 1 of 2

CONFIDENTIAL
C&I 000126

**THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD**

July 12, 2002 DL
Date

Commerce & Industry Insurance Company of Canada

Page 2 of 2

CONFIDENTIAL
C&I 000127

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM
## COVERAGES A. AND B. PROVIDE CLAIMS-MADE COVERAGE
### PLEASE READ THE ENTIRE FORM CAREFULLY

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION VI).

## SECTION I – COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement.**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS-COVERAGES A AND B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

      (3) A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with paragraph c, below, during the policy period or any Extended Reporting Period we provide under EXTENDED REPORTING PERIODS (Section V).

   c. A claim by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

      (1) When notice of such claim is received and recorded by any insured or by us, whichever comes first; or

      (2) When we make settlement in accordance with paragraph 1.a. above.

   All claims for damages because of "bodily injury" to the same person, including damages claimed by any person or organization for care, loss of services, or death resulting at any time from the "bodily injury," will be deemed to have been made at the time the first of those claims is made against any insured.

   All claims for damages because of "property damage" causing loss to the same person or organization will be deemed to have been made at the time the first of those claims is made against any insured.

2. **Exclusions.**

   This insurance does not apply to:

   a. **Expected or Intended Injury**
   "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

Page 1 of 14

CONFIDENTIAL
C&I 000128

b.  **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1)  That the insured would have in the absence of the contract or agreement; or

(2)  Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage" provided:

(a)  Liability to such party for, or for the cost of that party's defense has also been assumed in the same "insured contract"; and

(b)  Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c.  **Liquor Liability**

"Bodily Injury" or "property damage" for which any insured may be held liable by reason of:

(1)  Causing or contributing to the intoxication of any person;

(2)  The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3)  Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d.  **Workers Compensation and Similar Laws**

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

e.  **Employer's Liability**

"Bodily injury" to:

(1)  An employee of the insured arising out of and in the course of:
(a)  Employment by the insured; or
(b)  Performing duties related to the conduct of the insured's business; or

(2)  The spouse, child, parent, brother or sister of that employee as a consequence of paragraph (1) above.

This exclusion applies:

(1)  Whether the insured may be liable as an employer or in any other capacity; and

(2)  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f.  **Pollution**

(1)  "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a)  At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

(b)  At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c)  Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d)  At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(i)  if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

(ii)  if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraph (d) (i) does not apply to "bodily injury" or "property damage" arising out the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape

Page 2 of 14

CONFIDENTIAL
C&I 000129

from a vehicle part designed to hold, store or receive them. this exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or sub-contractor.

Subparagraphs (a) and (d)(i) do not apply to "bodily injury" or "property damage" arising out of heat, stroke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2)     Any loss, cost or expense arising out of any:

    (a)     Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants-; or

    (b)     Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials—to be recycled, reconditioned or reclaimed.

g.     **Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment, to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1)     A watercraft while ashore on premises you own or rent;

(2)     A watercraft you do not own that is:

    (a)     Less than 26 feet long, and

    (b)     Not being used to carry persons or property for a charge;

(3)     Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto"

is not owned by or rented or loaned to you or the insured;

(4)     Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5)     "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h.     **Mobile Equipment**
"Bodily injury" or "property damage" arising out of:

(1)     The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2)     The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed or demolition or stunting activity.

i.     **War**
"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j.     **Damage to Property**

"Property damage" to

(1)     Property you own, rent or occupy;

(2)     Premises you sell, give away or abandon, if, the "property damage" arises out of any part of those premises;

(3)     Property loaned to you;

(4)     Personal property in the care, custody or control of the insured;

(5)     That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage arises out of those operations; or

(6)     That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

CONFIDENTIAL
C&I 000130

k.  **Damage to Your Product**
"Property damage" to "your product" arising out of it or any part of it.

l.  **Damage to Your Work**
"Property damage" to "your work" arising out of it or any part of it and included in the products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m.  **Damage to Impaired Property or Property Not Physically Injured**
"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)  A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n.  **Recall of Products, Work or Impaired Property**
Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)  "Your product";

(2)  "Your work"; or

(3)  "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (SECTION III).**

## COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

1.  **Insuring Agreement.**

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or offense and settle any claim "suit" that may result. But:

(1)  The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2)  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

b.  This insurance applies to:

(1)  "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

(2)  "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if:

(1)  the offense was committed in the "coverage territory";

(2)  The offense was not committed before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

(3)  A claim for damages because of the "personal injury" or "advertising injury" is first made against any insured, in accordance with paragraph c. below, during the policy period or any Extended reporting Period we provide under EXTENDED REPORTING PERIODS (Section V).

c.  A Claim made by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

(1)  When notice of such claim is received and recorded by any insured or by us, whichever comes first; or

(2)  When we make settlement in accordance with paragraph 1.a. above.

All claims for damages because of "personal injury" or "advertising injury" to the same person or organization as a result of an offense will be deemed to have been made at the time the first of these claims is made against any insured.

Page 4 of 14

CONFIDENTIAL
C&I 000131

2. **Exclusions.**

This insurance does not apply to:

a.   "Personal injury" or "advertising injury":

   (1)   Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

   (2)   Arising out of oral or written publication of material whose first publication took place before the Retroactive Date, if any, shown in the Declarations.

   (3)   Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

   (4)   For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.; or

   (5)   Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

b.   "Advertising injury" arising out of:

   (1)   Breach of contract, other than misappropriation of advertising ideas under an implied contract;

   (2)   The failure of goods, products or services to conform with advertised quality or performance;

   (3)   The wrong description of the price of goods, products or services; or

   (4)   An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

c.   Any loss, cost or expense arising out of any:

   (1)   Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of pollutants; or

   (2)   Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditions or reclaimed.

## COVERAGE C. MEDICAL PAYMENTS

1. **Insuring Agreement.**

a.   We will pay medical expenses as described below for "bodily injury" caused by an accident:

   (1)   On premises you own or rent;

   (2)   On ways next to premises you own or rent; or

   (3)   Because of your operations;

   provided that:

   (1)   The accident takes place in the "coverage territory" and during the policy period;

   (2)   The expenses are incurred and reported to us within one year of the date of the accident; and

   (3)   The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b.   We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

   (1)   First aid at the time of an accident;

   (2)   Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

   (3)   Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions.**

We will not pay expenses for "bodily injury":

a.   To any insured.

b.   To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c.   To a person injured on that part of premises you own or rent that the person normally occupies.

d.   To a person, whether or not an employee of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or a similar law.

e.   To a person injured while taking part in athletics.

f.   Included within the "products-completed operations hazard".

g.   Excluded under Coverage A.

h.   Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

Page 5 of 14

CONFIDENTIAL
C&I 000132

**SUPPLEMENTARY PAYMENTS — COVERAGES A AND B**

We will pay, with respect to any claim or "suit" we investigate or settle, or any "suit" against an insured we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provide us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit."

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request, will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph 2.b.(2) of COVERAGE A — BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages), such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgements or settlements; or

b. The conditions set forth above, or the terms of the agreement described in paragraph f. above, are no longer met.

**SECTION II — WHO IS AN INSURED**

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner;

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership or joint venture or limited liability company, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

Page 6 of 14

CONFIDENTIAL
C&I 000133

2.    Each of the following is also an insured:

a.    Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

(1)    "Bodily injury" or "personal injury"

(a)    To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

(b)    To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph (1)(a) above;

(c)    For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1)(a) or (b) above; or

(d)    Arising out of his or her providing or failing to provide professional health care services.

(2)    "Property damage" to property

(a)    owned or occupied or used by,

(b)    Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b.    Any person (other than your "employee"), or any organization while acting as your real estate manager.

c.    Any person or organization having proper temporary custody of your property if you die, but only:

(1)    With respect to liability arising out of the maintenance or use of that property; and

(2)    Until your legal representative has been appointed.

d.    Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3.    With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

a.    "Bodily injury" to a co-"employee" of the person driving the equipment; or

b.    "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4.    Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a.    Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b.    Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c.    Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1.    The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a.    Insureds;

b.    Claims made or "suits" brought; or

c.    Persons or organizations making claims or bringing "suits".

2.    The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

3.    The Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

4.    Subject to 2. above, the Each Occurrence Limit is the most we will pay for the sum of:

Page 7 of 14

CONFIDENTIAL
C&I 000134

a.    Damages under Coverage A; and

b.    Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

5.    Subject 4 above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

6.    Subject to 4. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The limits of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1.    **Bankruptcy.**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part,

2.    **Duties In The Event Of Occurrence, Offense, Claim Or Suit.**

a.    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1)    How, when, and where the "occurrence" or offense took place;

(2)    The names and addresses of any injured persons and witnesses; and

(3)    The nature and location of any injury or damage arising out of the "occurrence" or offense.

Notice of an "occurrence" or offense is not notice of a claim.

b.    If a claim is received by any insured, you must::

(1)    Immediately record the specifics of the claim and the date received; and

(2)    Notify us as soon as practicable.

You must see to it that we receive written notice of the claim as soon as practicable.

c.    You and any other involved insured must:

(1)    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or a "suit";

(2)    Authorize us to obtain records and other information;

(3)    Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4)    Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d.    No insureds will, except at that Insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3.    **Legal Action Against Us.**

No person or organization has a right under this Coverage Part:

a.    To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b.    To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4.    **Other Insurance.**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a.    Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b.    Excess Insurance

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

(1)    That is effective prior to the beginning of the policy period shown in the Declarations of this insurance and applies to "bodily injury" of

Page 8 of 14

CONFIDENTIAL
C&I 000135

"property damage" on other than a claims-made basis, if:

(a) No Retroactive Date is shown in the Declarations of this insurance; or

(b) The other insurance has a policy period which continues after the Retroactive Date shown in the Declarations of this insurance;

(2) That is Fire, Extended coverage, Builders' Risk, Installation Risk or similar coverage for "your work";

(3) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

(4) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c.  Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

5.  **Premium Audit.**

a.  We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b.  Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period.

Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c.  The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6.  **Representations.**

By accepting this policy, you agree:

a.  The statements in the Declarations are accurate and complete;

b.  Those statements are based upon representations you made to us; and

c.  We have issued this policy in reliance upon your representations.

7.  **Separation Of Insureds.**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a.  As if each Named Insured were the only Named Insured; and

b.  Separately to each insured against whom claim is made or "suit" is brought.

8.  **Transfer Of Rights Of Recovery Against Others To Us.**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9.  **Cancellation**

a)  This Policy may be canceled by the First Named Insured by giving us written notice stating when, thereafter, such cancellation is to become effective. Return premium shall be computed on the customary short rate basis, subject to the retention by us of the minimum premium, if any, stated in the Declarations; or if the premium is so adjustable, based on the actual exposure for the period of time the Policy was in force.

b)  This Policy may be canceled by us for non-payment of premium by giving to the First Named Insured fifteen (15) days notice of cancellation by registered mail or personally delivered. Notice to the First Named Insured shall constitute notice to all Insureds.

CONFIDENTIAL
C&I 000136

c) This Policy may be canceled by us by giving to the First Named Insured ninety (90) days notice in writing of cancellation by registered mail and refunding the excess of paid premium beyond the pro rata earned premium for the expired time, subject if applicable to final premium adjustment as soon as practicable based on the actual gross receipts for the period of time the Policy was in force. Notice to the First Named Insured shall constitute notice to all Insureds.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**10.    Your Right to Claim and "Occurrence" Information.**

We will provide the first Named Insured shown in the Declarations the following information relating to this and any preceding general liability claims-made Coverage Part we have issued to you during the previous three years:

**a.**   A list or other record of each "occurrence," not previously reported to any other insurer, of which we were notified in accordance with paragraph 2.a. of the DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM OR SUIT Condition in COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV). We will include the date and brief description of the "occurrence" if that information was in the notice we received.

**b.**   A summary by policy year, of payments made and amounts reserved, stated separately, under any applicable General Aggregate Limit and Products-Completed Operations Aggregate Limit.

Amounts reserved are based on our judgment. They are subject to change and should not be regarded as ultimate settlement values.

You must not disclose this information to any claimant or any claimant's representative without our consent.

If we cancel or elect not to renew this Coverage Part, we will provide such information no later than 30 days before the date of policy termination. In other circumstances, we will provide this information only if we receive a written request from the first Named Insured within 60 days after the end of the policy period. In this case, we will provide this information within 45 days of receipt of the request.

We compile claim and "occurrence" information for our own business purposes and exercise reasonable care in doing so. In providing this information to the first Named Insured, we make no representations or warranties to insureds, insurers, or others to whom this information is furnished by or on behalf of any insured. Cancellation or non-renewal will be effective even if we inadvertently provide inaccurate information.

**SECTION V – EXTENDED REPORTING PERIODS**

1.    We will provide one or more Extended Reporting Periods, as described below, if:

**a.**   This Coverage Part is cancelled or not renewed; or

**b.**   We renew or replace this Coverage Part with insurance that:

   **(1)** Has a Retroactive Date later than the date shown in the Declarations of this Coverage Part; or

   **(2)** Does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" on a claims-made basis.

2.    Extended Reporting Periods do not extend the policy period or change the scope of coverage provided they apply only to claims for:

**a.**   "Bodily injury" or "property damage" that occurs before the end of the policy period but not before the Retroactive date, if any, shown in the Declarations; or

**b.**   "Personal injury" or "advertising injury" caused by an offense committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Declarations.

Once in effect, Extended Reporting Periods may not be cancelled.

3.    A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the policy period and lasts for:

**a.**   Five years with respect to claims because of "bodily injury" and "property damage" arising out of an "occurrence" reported to us, not later than 60 days after the end of the policy period, in accordance with paragraph 2.a. of the DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM OR SUIT Condition in COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV);

**b.**   Five years with respect to claims because of "personal injury" and "advertising injury" arising out of an offense reported to us, not later than 60 days after the end of the policy period, in accordance with paragraph 2.a. of the DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM OR SUIT Condition in COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV);

**c.**   Sixty days with respect to claims arising from "occurrences" or offenses not previously reported to us.

The Basic Extended Reporting Period does not apply to claims that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such claims.

4.    The Basic Extended Reporting Period does not reinstate or increase the Limits of Insurance.

5.    A Supplemental Extended Reporting Period of 12 months duration is available, but only by an endorsement and for an extra charge. This supplemental period starts when the Basic Extended Reporting Period, set forth in paragraph 3. above, ends.

You must give us a written request for the endorsement within 60 days after the end of the policy period. The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

CONFIDENTIAL
C&I 000137

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

a. The exposures insured;
b. Previous types and amounts of insurance;
c. Limits of Insurance available under this Coverage Part for future payment of damages; and
d. other related factors.

The additional premium will not exceed 100% of the annual premium for this Coverage Part.

This endorsement shall set forth the terms, not inconsistent with this Section, applicable to the Supplemental Extended Reporting Period, including a provision to the effect that the insurance afforded for claims first received during such period is excess over any other valid and collectible insurance available under policies in force after the Supplemental Extended Reporting Period starts.

6. The Supplemental Extended Reporting Period does not reinstate or increase the Limits of Insurance.

## SECTION VI - DEFINITIONS

1. "Advertising injury" means injury arising out of one or more of the following offenses:

   a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   b. Oral or written publication of material that violates a person's right of privacy;

   c. Misappropriation of advertising ideas or style of doing business; or

   d. Infringement of copyright, title or slogan.

2. "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, discrimination (where insurance thereof is permitted by law), mental anguish, shock humiliation, harassment, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

   c. All parts of the world if:

   (1) The injury or damage arises out of:

   (a) Goods or products made or sold by you in the territory described in a. above; or

   (b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

   (3) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker." "Employee" includes a "temporary worker."

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

8. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "Insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for

Page 11 of 14

CONFIDENTIAL
C&I 000138

"bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreements:

(1)    That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

(2)    That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    (a)    Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    (b)    Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

(3)    Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

9.    "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

10.    "Loading or unloading" means the handling of property:

    a.    After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    b.    While it is in or on an aircraft, watercraft or "auto"; or

    c.    While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

11.    "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    a.    Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    b.    Vehicles maintained for use solely on or next to premises you own or rent;

    c.    Vehicles that travel on crawler treads;

    d.    Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        (1)    Power cranes, shovels, loaders, diggers or drills; or

        (2)    Road construction or resurfacing equipment such as graders, scrapers or rollers;

    e.    Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        (1)    Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        (2)    Cherry pickers and similar devices used to raise or lower workers;

    f.    Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

    However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

        (1)    Equipment designed primarily for:

            (a)    Snow removal;

            (b)    Road maintenance, but not construction or resurfacing; or

            (c)    Street cleaning;

        (2)    Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

        (3)    Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

12.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

13.    "Personal injury" means injury, other than "bodily injury" arising out of one or more of the following offenses:

    a.    False arrest, detention or imprisonment;

    b.    Malicious prosecution;

    c.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

CONFIDENTIAL
C&I 000139

d.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e.  Oral or written publication of material that violates a person's right of privacy.

14.  Products-completed operations hazard":

a.  includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1)  Products that are still in your physical possession; or

(2)  Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a)  When all of the work called for in your contract has been completed.

(b)  When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(c)  When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b.  Does not include "bodily injury" or "property damage" arising out of:

(1)  The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2)  The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3)  Products or operations for which the classification in the Declarations or in a policy schedule, states that products-completed operations are subject to the General aggregate limit.

15.  "Property damage" means:

a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

16.  "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

a.  An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b.  Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

17.  "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

18.  "Your product" means:

a.  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1)  You;

(2)  Others trading under your name; or

(3)  A person or organization whose business or assets you have acquired; and

b.  Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b.  The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

19.  "Your work" means:

a.  Work or operations performed by you or on your behalf; and

b.  Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b.  The providing of or failure to provide warnings or instructions.

Page 13 of 14

CONFIDENTIAL
C&I 000140

July 12, 2002 DL
Date

Commerce & Industry Insurance Company of Canada

Page 14 of 14

CONFIDENTIAL
C&I 000141

**ENDORSEMENT NO. 1**

This endorsement, effective 12:01 A.M. June 30, 2002

forms a part of Policy No. 5469358

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.


It is agreed that:

1) coverage is restricted to apply only to liability arising from:

   Total Containment Inc.;

   Any past, present and/or future subsidiary or controlled company of Total Containment Inc., as may now exist or be hereinafter created or acquired; or

   Any of the pension plans, committee members, employee clubs and recreational organizations of the foregoing.


2) Certificate holders, for whom the Named Insured has agreed to supply insurance, are added as Additional Insureds, but only in respect of liability arising from the Named Insured's operations.

3) Installers and applicators, for whom the Named Insured has agreed to supply insurance, are added as Additional Insureds, but only in respect to work performed on behalf of the Named Insured.

4) Unless expressly indicated otherwise, all Limits of Insurance, Premiums, Deductibles and other amounts of money are expressed in USA currency.

5) The deposit premium of $244,358 is the minimum annual earned premium. At expiry, and subject to the minimum earned, the premium will be adjusted at a rate of $20.36 per $1,000 of actual sales. Sales means "Net Sales" as expressed in the Insured's Financial Statement.


<u>July 12, 2002 DL</u>
Date

<u>Commerce & Industry Insurance Company of Canada</u>

CONFIDENTIAL
C&I 000142

ENDORSEMENT NO. 2

This endorsement, effective 12:01 A.M. June 30, 2002

forms a part of Policy No.  5469358

issued to  LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by  COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for  AON - Reed Stenhouse Inc.

<u>**SELF-INSURED RETENTION**</u>

It is hereby understood and agreed that:

1)    The Limit of Liability as stated in the Declarations shall be in excess of the following Self-Insured Retention to be borne by the Insured:

> One hundred thousand dollars ($100,000.00) each occurrence including defense and loss adjustment expense

2)    The Insurer shall have the right but not the duty to investigate, negotiate, settle or defend losses or claims within the Self-Insured Retention but may, at the Insured's request perform the above mentioned services, in which event the Insurer may pay any part or all of the Self-Insured Retention amount to effect settlement of any claim or suit and, upon notification of the action taken, the Named Insured shall promptly reimburse the Insurer for such part of the Self-Insured Retention amount as has been paid by the Insurer.

3)    The Insured shall immediately notify the Insurer in writing of any claim to which this policy applies which:

a)    involved serious bodily injury or fatality;

b)    the Insured has received notice of suit in which the amount claimed exceeds the Self-Insured Retention;

c)    may exceed 25% of the Self-Insured Retention.

4)    The Insured shall have the right to pay, at their sole discretion, any claim which falls entirely within the amount of the stated Self-Insured Retention.

Claims which are self-administered because they appear to be below the Self-Insured Retention should not be defeated if subsequent results exceed the Self-Insured Retention.  Upon discovery of such a claim, notice shall given to Insurers as soon as possible.

6)    The Self-Insured Retention stated above shall be deemed applicable irrespective of the inability of the Insured to pay by reason of bankruptcy, insolvency, or by the Insured's refusal to pay.


<u>July 12, 2002 DL</u>                              _____
Date                                                        Commerce & Industry Insurance Company of Canada


CONFIDENTIAL
C&I 000143

## ENDORSEMENT NO. 3

This endorsement, effective 12:01 A.M. June 30, 2002

forms a part of Policy No. 5469358

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### HIRED AUTO AND NON-OWNED AUTO LIABILITY

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

Insurance is provided only with respect to those coverages for which a specific premium charge is shown:

| Coverage | Additional Premium |
|---|---|
| Non-Ownership Liability | $ Included |
| Hired Auto Liability | $ Included |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**HIRED AUTO LIABILITY**

The insurance provided under COVERAGE A (Section l) applies to "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" by you or your employees in the course of your business.

With respect to the insurance provided by this endorsement:

1. The exclusions, under COVERAGE A (Section l), other than exclusions a, b, d, f and l and the Nuclear Energy Liability Exclusion (Broad Form) are deleted and replaced by the following:

   a. "Bodily Injury"

(1) To an employee of the insured arising out of and in the course of employment by the insured, or

(2) To the spouse, child, parent, brother or sister of that employee as a consequence of (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of injury.

Page 1 of 3

CONFIDENTIAL
C&I 000144

(1) Liability assumed by the insured under an "insured contract", or

(2) "Bodily Injury" arising out of and in the course of domestic employment by the insured unless benefits for such injury are in whole or in part either payable or required to be provided under any workers compensation law.

b. "Property damage" to:

(1) Property owned or being transported by or rented or loaned to the insured; or

(2) Property in the care, custody or control of the insured.

2. WHO IS AN INSURED (Section II) is replaced by the following:

Each of the following is an insured under this insurance to the extent set forth below:

a. You;

b. Any other person using a "hired auto" with your permission;

c. With respect to a "non-owned auto," any partner or executive officer of yours, but only while such "non-owned auto" is being used in your business;

d. Any other person or organization, but only with respect to their liability because of acts or omissions of an insured under a., b., or c. above.

None of the following is an insured:

a. Any person engaged in the business of his or her employer with respect to "bodily injury" to any co-employee of such person injured in the course of employment;

b. Any partner or executive officer with respect to any "auto" owned by such partner or officer or a member of his or her household;

This exclusion does not apply to:

c. Any person while employed in or otherwise engaged in duties in connection with an "auto business", other than an "auto business" you operate;

d. The owner or lessee (of whom you are a sublessee) of a "hired auto" or the owner of a "non-owned auto" or any agent or employee of any such owner or lessee;

e. Any person or organization with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

## NON-OWNED AUTO LIABILITY

The insurance provided under COVERAGE A (Section I) applies to "bodily injury" or "property damage" arising out of the use of any "non-owned auto" in your business by any person other than you.

Page 2 of 3

CONFIDENTIAL
C&I 000145

The following additional definitions apply:

"Auto business" means the business or occupation of selling, repairing, servicing, storing or parking "autos", "Hired auto" means any "auto" you lease, hire, or borrow. This does not include any "auto" you lease, hire or borrow from any of your employees or members of their households, or from any partner or executive officer of yours.


"Non-owned auto" means any "auto" you do not own, lease, hire or borrow which are used in connection with your business. However, if you are a partnership a "non-owned auto" does not include any auto owned by any partner.

July 12, 2002 DL
Date

Commerce & Industry Insurance Company of Canada

Page 3 of 3

CONFIDENTIAL
C&I 000146

ENDORSEMENT NO. 4

This endorsement, effective 12:01 A.M. June 30, 2002

forms a part of Policy No. 5469358

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.

## EMPLOYEE BENEFITS LIABILITY

I.    **COVERAGE**

The Insurer will pay on behalf of the Insured all sums which the Insurer shall become legally obligated to pay on account of any claim made against the Insured during the policy period and caused by the negligent act, error or omission of the Insured, or any other person for whose acts the Insured is legally liable in the administration of Employee Benefits as defined herein.

II.   **DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS**

Provisions of the Policy shall apply as respects the insurance hereby afforded.

III.  **DEFINITIONS**

1.   "Insured" - The unqualified word "Insured", wherever used, in relation to the insurance afforded hereby includes not only the Named Insured, but also any partner, executive officer, director, stockholder or employee, provided such employee is authorized to act in the administration of the Employee Benefits.

2.   "Employee Benefits" - The term "Employee Benefits" shall mean Group Life Insurance, Group Accident or Health Insurance, Profit Sharing Plans, Pension Plans, Workers' Compensation, Unemployment Insurance, Social Security, and Disability Benefits, Supplemental Unemployment Benefits, Social Insurance, Liability Benefits Insurance, and any other similar Employee Benefits Programs sponsored by the Named Insured.

3.   "Administration" - As respects the insurance afforded hereby, the unqualified word "administration", wherever used shall mean:

(a)   giving counsel to employees with respect to the Employee Benefits;

(b)   interpreting the Employee Benefits;

(c)   handling of records in connection with the Employee Benefits;

(d)   effecting enrollment, termination or cancellation of employees under the Employee Benefits performed by a person authorized by the Named Insured to do such acts.

CONFIDENTIAL
C&I 000147

IV.     **EXCLUSIONS**

The insurance afforded by this endorsement does not apply:

(a)     to any dishonest, fraudulent, criminal or malicious act, libel, slander, discrimination, or humiliation;

(b)     to bodily injury to, or sickness, or death, of any person or to injury to or destruction of any tangible property including the loss of use thereof;

(c)     to any claim for failure of performance of contract by any Insurer;

(d)     to any claim based upon the Named Insured's failure to comply with any law concerning Workers' Compensation, Unemployment Insurance, Social Security or Disability Benefits;

(e)     to any claim based upon failure of stock to perform as represented by an Insured;

(f)     to any claim based upon advice given by an Insured to participate or not to participate in stock subscription plans;

(g)     to any claim or claims arising out of a breach of professional duty as contemplated under the Employee Retirement Income Security Act of 1974 or amendments thereto.

V.     **LIMITS OF LIABILITY**

EACH CLAIM                    $10,000,000.00
ANNUAL AGGREGATE              $10,000,000.00

The limit of Liability stated above as applicable to "each claim" is the limit of the Insurer's liability for all damages incurred on account of any claim covered hereunder.  The limit of liability stated above as "aggregate" is, subject to the above provision respecting each claim, the total limit of the Insurer's liability for all claims covered hereunder and occurring during each annual policy period.  The inclusion herein of more than one Insured shall not operate to increase the limits of the Insurer's liability.  All sums payable under this endorsement are subject to the application of the Self Insured Retention of the policy.

July 12, 2002 DL
Date

Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000148

**ENDORSEMENT NO. 5**

This endorsement, effective 12:01 A.M. June 30, 2002

forms a part of Policy No.  5469358

issued to  LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by  COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for  AON - Reed Stenhouse Inc.

**VENDOR'S LIABILITY**

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to Completed Operations Hazard and Products Liability Hazard insurance.

It is agreed that the definition of Insureds in the policy is amended to include at the option of the Named Insured any person or organization herein referred to as "Vendor", including erectors who may act as a vendor of the insured's products, as an Insured, but only with respect to the distribution or sale in the regular course of the Vendor's business of the Named Insured's products subject to the following additional provisions:

(1)    The insurance with respect to the Vendor does not apply to:

    (a)    any express warranty or any distribution or sale for a purpose unauthorized by the Named Insured;

    (b)    Bodily Injury or Property Damage arising out of:

        (i)    any act of the Vendor which changes the condition of the products;

        (ii)    any failure to maintain the product in merchantable condition;

        (iii)    any failure to make such inspections, adjustments, tests or servicing as the Vendor has agreed to make or normally undertake to make in the usual course of business, in connection with the distribution or sale of the products; or

        (iv)    products which, after distribution or sale by the Named Insured, have been labeled or re-labeled or used as a container, part or ingredient or any other thing or substance by or for the Vendor;

        (v)    demonstration, installation, servicing or repair operations

    (c)    Bodily Injury or Property Damage occurring within the Vendor's premises, unless the Occurrence results solely from the Named Insured's products.

The limits of liability for coverage provided by this endorsement form part of the "Each Occurrence Limit" and the "Products - Completed Operations Aggregate Limit".  All sums payable under this endorsement are subject to the application of the Self Insured Retention of the policy.

July 12, 2002 DL
Date

                Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000149

ENDORSEMENT NO. 6

This endorsement, effective 12:01 A.M. June 30, 2002

forms a part of Policy No. 5469358

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.

## EMPLOYMENT - RELATED PRACTICES EXCLUSION

In consideration of the premium charged, it is understood and agreed that the Insurer shall have no obligation to defend or indemnify with respect to any claim alleging or asserting in any respect loss, injury, or damage (including consequential bodily injury) in connection with Wrongful Termination of employees and/or Discrimination of employees and/or Sexual Harassment of employees.

The following definitions apply to the foregoing:

Wrongful Termination means termination of an employment relationship in a manner which is against the law and wrongful or in breach of an implied agreement to continue employment.

Discrimination means termination of an employment relationship or a demotion or a failure or refusal to hire or promote any individual because of race, color, religion, age, sex, disability, pregnancy or natural origin.

Sexual Harassment means unwelcome sexual advances and/or requests for sexual favors and/or other verbal or physical conduct of a sexual nature that (1) are made a condition of employment and/or (2) are used as a basis for employment decisions and/or (3) create a work environment that interferes with performance.

July 12, 2002 DL
Date

Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000150

ENDORSEMENT NO. 7

This endorsement, effective 12:01 A.M. June 30, 2002

forms a part of Policy No. 5469358

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.

## POLLUTANT EXCLUSION

This policy is amended in that it shall not apply to any claim or claims for Bodily Injury, Personal Injury or Property Damage relating to the actual, alleged or threatened discharge, dispersal, release or escape of Pollutants.

The word "Pollutants", wherever used in this Exclusion, means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This Exclusion shall not apply to any such discharge, dispersal, release, or escape that results from:

1. violent breaking open or explosion of any plant, equipment or building for which the Named Insured has legal responsibility, either as owner or operator;

2. unintended fire, lightning or windstorm damage to any plant, equipment or building for which the Named Insured has legal responsibility, either as owner or operator;

3. collision, overturning or upset of any Automobile or railroad vehicle;

4. the Products Liability Hazard or the Completed Operations Liability Hazard.

Notwithstanding the foregoing this policy is further amended in that it shall not apply to any claim or claims relating to:

a) any site or location used in whole or in part for the handling, processing, treatment, storage, disposal, or dumping or any waste materials or substance;

b) the cost of evaluating and/or monitoring and/or controlling pollutants, unless such cost arises in connection with physical injury to tangible property resulting from the Products Liability Hazard or the Completed Operations Liability Hazard;

c) the cost of removing and/or nullifying and/or cleaning up pollutants on property at any time owned and/or leased and/or rented by the Insured and/or that particular part of property under the control of the Insured;

d) any liability of the Insured for the actual, alleged or threatened discharge, dispersal, release or escape of Pollutants caused by any of the Insured's Products that have been discarded, dumped or thrown away by others.

"Unintended fire" means fire which becomes uncontrollable or breaks out from where it was intended to be.

July 12, 2002 DL
Date

Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000151

ENDORSEMENT NO. 8

This endorsement, effective 12:01 A.M. June 30, 2002

forms a part of Policy No.  5469358

issued to  LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by  COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for  AON - Reed Stenhouse Inc.

## SECURITIES AND FINANCIAL INTEREST EXCLUSION

In consideration of the premium charged, it is understood and agreed that the Insurer shall have no obligation to defend or indemnify with respect to any claim alleging or asserting in any respect loss, injury or damage in connection with the purchase or sale, the offer, solicitation, or advertising for the purchase or sale, or the depreciation or decline in price or value, of any security, debt, bank deposit, or financial interest or instrument.

This exclusion applies only to Coverage B – Advertising Injury.

July 12, 2002 DL
Date

_____
Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000152

ENDORSEMENT NO. 9

This endorsement, effective 12:01 A.M. June 30, 2002

forms a part of Policy No. 5469358

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.

It is agreed that:
Exclusion A.2.h, Mobile Equipment Exclusion, is deleted.
Exclusion A.2.g is deleted and replaced by the following:

**g. Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1)    A watercraft while ashore on premises you own or rent;

(2)    A watercraft you do not own that is less than 30 feet long;

(3)    Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4)    Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5)    "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment"; or

(6)    any non-owned aircraft provided it is not operated by the Insured or any employee of the Insured.

July 12, 2002 DL
Date

Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000153

## ENDORSEMENT NO. 10

This endorsement, effective 12:01 A.M. June 30, 2002

forms a part of Policy No. 5469358

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.

### UNINTENTIONAL FAILURE TO DISCLOSE

It is agreed that failure of the Insured or any person acting on its behalf to disclose all hazards, locations or operations existing as of the inception date of the policy shall not prejudice the Insured with respect to the coverage afforded by this policy provided that such error or omission is not intentional and is reported to the company as soon as practicable upon the Insured or any person acting on its behalf becoming aware of such error or omission.

### KNOWLEDGE OF OCCURRENCE

It is hereby understood and agreed that Knowledge of Occurrence by the agent, servant or employee of the Insured shall not in itself constitute knowledge by the Insured unless the Occurrence is known to the Insured's in house counsel or to a member of the Insured's Board of Directors.

---

July 12, 2002 DL
Date

_____
Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000154

ENDORSEMENT NO. 11

This endorsement, effective 12:01 A.M. June 30, 2002

forms a part of Policy No.  5469358

issued to  LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by  COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for  AON - Reed Stenhouse Inc.     ·

## BROAD FORM COMMERCIAL LIABILITY ENDORSEMENT

This endorsement does not increase the "aggregate" limit(s) of liability as set forth in the policy to which this endorsement is attached.  Rather, "claims" first made under this endorsement shall be subject to said "aggregate" limit(s) along with all other "claims" presented under this policy.

I.      CONTRACTUAL LIABILITY COVERAGE

   (A)      the definition of "incidental contract" is extended to include any written contract or agreement relating to the conduct of the Named Insured's business.

   (B)      The insurance afforded with respect to liability assumed under an "incidental contract" is subject to the following additional exclusions:

   (1)      to "bodily injury" or "property damage" for which the "insured" has assumed liability under any "incidental contract", if such injury or damage occurred prior to the execution of the "incidental contract";

   (2)      if the "insured" is an architect, engineer or surveyor, to "bodily injury" or "property damage" arising out of the rendering of or the failure to render professional services by such "insured", including:

      (a)      the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs or specifications, and

      (b)      supervisory, inspection or engineering services;

   (3)      if the indemnitee of the "insured" is an architect, engineer or surveyor, to the liability of the indemnitee, his agents or employees, arising out of:

      (a)      the preparation or approval of or the failure to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications, or

      (b)      the giving of or the failure to give directions or instructions by the indemnitee, his agents or employees, provided such giving or failure to give is the primary cause of the "bodily injury" or "property damage";

Page 1 of 4

CONFIDENTIAL
C&I 000155

(4)     to any obligation for which the "insured" may be held liable in an action on a contract by a third party beneficiary for "bodily injury" or "property damage" arising out of a project for a public authority; but this exclusion does not apply to an action by the public authority or any other person or organization engaged in the project.

(5)     to "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property, and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing; but this exclusion does not apply to sidetrack agreements.

(C)     The following additional condition applies:

Arbitration

The company shall be entitled to exercise all of the "insured's" rights in the choice of arbitrators and in the conduct of any arbitration proceeding.

## II.     HOST LIQUOR LAW LIABILITY COVERAGE

Exclusion A.2.c is deleted.

## III.     BROAD FORM PROPERTY DAMAGE LIABILITY COVERAGE

The insurance for "property damage" liability applies, subject to the following additional provisions:

Exclusions A.2.j,k &l are replaced by the following:

j.)     (1)     to property owned or occupied by or rented to the "insured", or, except with respect to the use of "elevators", to property held by the insured for sale or entrusted to the "insured" for storage or safekeeping;

(2)     except with respect to liability under a written sidetrack agreement or the use of "elevators"

     (a)     to property while on premises owned by or rented to the "insured" for the purpose of having operations performed on such property by or on behalf of the "insured",

     (b)     to tools or equipment while being used by the "insured" in performing his operations,

     (c)     to property in the custody of the "insured" which is to be installed, erected or used in construction by the "insured",

     (d)     to that particular part of any property, not on premises owned by or rented to the "insured",

          (i)     upon which operations are being performed by or on behalf of the "insured" at the time of the "property damage" arising out of such operations, or

CONFIDENTIAL
C&I 000156

      (ii)     out of which any "property damage" arises, or

      (iii)    the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the "insured";

However, this clause d does not apply if the damaged work, or the work out of which the damage arises was performed on the Named Insured's behalf by a subcontractor.

    (3)     to property which is being transported by the Insured by motor vehicle, including the loading and unloading thereof.

k.    Damage to Your Product
    "Property damage" to that particular part of "your product" arising out of it or any part of it.

l.    Damage to Your Work
    "Property damage" to that particular part of "your work" arising out of it or any part of it and included in the products-completed operations hazard".

    This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

## IV.    TENANT'S LEGAL LIABILITY - REAL PROPERTY

Exclusion A.2.j does not apply to real property which is leased or rented to the Named Insured, however, no coverage is provided for property damage which arises from wear and tear, gradual deterioration, normal upkeep, latent defect, normal making good, or vermin.

The Tenant's Legal Liability - Real Property shall be excess insurance over any valid and collectible property insurance (including any deductible portion thereof), available to the "Insured", such as, but not limited to, Fire, Extended Coverage, Builder's Risk Coverage or Installation Risk Coverage, and the Other Insurance Condition of the policy is amended accordingly.

## V.    INCIDENTAL MEDICAL MALPRACTICE LIABILITY COVERAGE

The definition of "bodily injury" is amended to include Incidental Medical Malpractice Injury.

Incidental Medical Malpractice Injury means injury arising out of the rendering of or failure to render, during the policy period, the following services:

    (A)    medical, surgical, dental, x-ray or nursing service or treatment or the furnishing of food or beverages in connection therewith; or

    (B)    the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances.

This coverage does not apply to:

    (1)    any "insured" engaged in the business or occupation of providing any of the services described under VI (A) and (B) above;

    (2)    injury caused by any indemnitee if such indemnitee is engaged in the business or occupation of providing any of the services described under VI (A) and (B) above.

CONFIDENTIAL
C&I 000157

VI.    WORLDWIDE LIABILITY COVERAGE

The definition of "coverage territory" is amended to read as follows:

Anywhere in the world.

VII.    EXTENDED BODILY INJURY COVERAGE

The definition of "occurrence" includes any intentional act by or at the direction of the "insured" which results in "bodily injury" or "property damage", if such injury or damage arises solely from the use of reasonable force for the purpose of protecting persons or property. .

July 12, 2002 DL
Date

Commerce & Industry Insurance Company of Canada

Page 4 of 4

CONFIDENTIAL
C&I 000158

ENDORSEMENT NO. 12

This endorsement, effective 12:01 A.M. June 30, 2002

forms a part of Policy No. 5469358

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.

## NUCLEAR EXCLUSION

This Policy does not apply to:

a)    liability imposed by or arising under the Nuclear Liability Act; nor

b)    Bodily Injury or Property Damage with respect to which an Insured under this Policy is also insured under a contract of nuclear energy liability insurance (whether the Insured is unnamed in such contract and whether or not it is legally enforceable by the Insured) issued by the Nuclear Insurance Association of Canada or any other insurer or group or pool of insurers or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; nor

c)    Bodily Injury or Property Damage resulting directly or indirectly from the nuclear energy hazard arising from:

1)    the ownership, maintenance, operation or use of a nuclear facility by or on behalf of the Insured;

2)    the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility; and

3)    the possession, consumption, use, handling, disposal or transportation of fissionable substances, or of other radioactive material (except radioactive isotopes, away from a nuclear facility, which have reached the final stage of fabrication so as to be usable for any scientific, medical, agricultural, commercial or industrial purpose) used, distributed, handled or sold by an Insured.

As used in this Policy:

1)    the term "nuclear energy hazard" means the radioactive, toxic, explosive, or other hazardous properties of radioactive material;

Page 1 of 2

CONFIDENTIAL
C&I 000159

2)    the term "radioactive material" means uranium, thorium, plutonium, neptunium, their respective derivatives and compounds, radioactive isotopes of other elements and any other substances that the Atomic Energy Control Board may, by regulation, designate as being prescribed substances capable of releasing atomic energy, or as being requisite for the production, use or application of atomic energy;

3)    the term "nuclear facility" means:

a)    any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of plutonium, thorium, and uranium or any one or more of them;

b)    any equipment or device designed or used for (i) separating the isotopes of plutonium, thorium and uranium or any one or more of them, (ii) processing or utilizing spent fuel, or (iii) processing or packaging waste;

c)    any equipment or device used for the processing, fabricating or alloying of plutonium, thorium or uranium enriched in the isotope uranium 233 or in the isotope uranium 235, or any one or more of them if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

d)    any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste radioactive material;

and includes the site on which any of the foregoing is located, together with all operations conducted thereon and all premises used for such operations.

4)    the term "fissionable substance" means any prescribed substance that is, or from which can be obtained, a substance capable of releasing atomic energy by nuclear fission.

July 12, 2002 DL
Date

Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000160

ENDORSEMENT NO. 13

This endorsement, effective 12:01 A.M. June 30, 2002

forms a part of Policy No. 5469358

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.


## AUTO DEFINITION

It is agreed that the definition VI.2, "Auto," is deleted and replaced by the following:

2.  "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment" nor any vehicle which is not required by law to be insured under a specific automobile policy.

July 12, 2002 DL
Date

Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000161

ENDORSEMENT NO. 14

This endorsement, effective 12:01 A.M. June 30, 2002

forms a part of Policy No. 5469358

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.

## PROFESSIONAL LIABILITY EXCLUSION

It is agreed that such insurance as is afforded by this policy does not apply to any liability arising out of errors, omissions or defects in maps, plans, designs, specifications, opinions, reports, software or surveys prepared, acquired or used by the insured.

However, this exclusion does not apply if such maps, plans, designs, specifications, opinions, reports, software or surveys are related to the sale, fabrication, erection, installation, repair or maintenance of the Named Insured's products.

July 12, 2002 DL
Date

Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000162

ENDORSEMENT NO. 15

This endorsement, effective 12:01 A.M. June 30, 2002

forms a part of Policy No. 5469358

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.

**FOREST FIRE FIGHTING
EXPENSES ENDORSEMENT**

In consideration of the premium charged for this policy, it is hereby agreed that insurance provided under Insurance Agreement I. PROPERTY DAMAGE LIABILITY is extended to pay those sums you are obligated by law to pay for forest fire fighting expenses, subject to the following:

1.    This insurance extension does not apply to:

    (a)    expenses incurred directly by you in fighting forest fires;

    (b)    taxes, fines or penalties incurred by you for failing to comply with any statute, law or regulation.

2.    This insurance extension is subject to the provisions of the Self-Insured Retention.

3.    The amount we will pay forms part of the Each Occurrence limit of liability.

July 12, 2002 DL
Date

Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000163

ENDORSEMENT NO. 16

This endorsement, effective 12:01 A.M. June 30, 2002

forms a part of Policy No. 5469358

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.

## OTHER INSURANCE

It is agreed that this insurance is excess over the following specific policies, or renewals or replacements thereof:

| Coverage | Policy No. | Limit | Carrier |
|----------|-----------|-------|---------|
| CGL. | QP3714897 | $2,000,000 Agg. | CGU Insurance Co. |
| Excess Liab. | CPDV02263 | $5,000,000 Agg. | Commercial Union Ins. Co |

July 12, 2002 DL
Date

Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000164

ENDORSEMENT NO. 17

This endorsement, effective 12:01 A.M. June 30, 2002

forms a part of Policy No. 5469358

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.

## ASBESTOS EXCLUSION (ABSOLUTE)

With respect to Commercial General Liability Coverage Form, SECTION I – Coverage 2 – Exclusions is amended to include the following:

(o)     Any Bodily Injury, Personal Injury, Property Damage, other Loss Injury, or Damage arising out of:

1.  Inhaling, ingesting, use of, or contact with "Asbestos" or premises, structure, goods, or products containing "Asbestos"; or
2.  The use of "Asbestos" in constructing or manufacturing any premises, structure, goods or products; or
3.  The removal of "Asbestos" from any premises, structure, goods, or products; or
4.  The manufacture, use, transportation, distribution, storage, installation, sale, mining, or disposal of "Asbestos" or any premises, structure, goods, or products containing "Asbestos".

"Asbestos" means asbestos, asbestos dust, or asbestos fibers.

Without limiting the other provisions of this policy, the Company is not and shall not be obligated to defend the Insured or incur any costs or expenses including attorney's fees relating to the defense of the Insured, against any claims or suits to which this insurance does not apply.

July 12, 2002 DL
Date

_____
Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000165

**ENDORSEMENT NO. 18**

This endorsement, effective 12:01 A.M. June 30, 2002

forms a part of Policy No. 5469358

issued to LES PLACEMENTS CMI INC. AND/OR TOTAL CONTAINMENT INC.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON - Reed Stenhouse Inc.


**LANGUAGE CLAUSE**

The Insurer and the Insured have presently required that the present policy and all related documents be drawn up in the English language.

L'Assureur et l'Assuré ont expressément exigé que la présente police d'assurance ainsi que tous les documents y afférent soient rédigés en langue anglaise.

<u>July 12, 2002 DL</u>
Date

<u>Commerce & Industry Insurance Company of Canada</u>

CONFIDENTIAL
C&I 000166

ENDORSEMENT NO. 19

This endorsement, effective 12:01 A.M. June 30, 2002

forms a part of Policy No.: 5469358

issued to Les Placements CMI Inc. and/or Total Containment Inc.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON Reed Stenhouse Inc.

## KNOWLEDGE OF OCCURRENCE

It is hereby understood and agreed that Endorsement No. 10, Knowledge of Occurrence, is amended to read as follows:

>"It is hereby understood and agreed that Knowledge of Occurrence by the agent, servant or employee of the Insured shall not in itself constitute knowledge by the Insured unless the Occurrence is known to the Insured's President or to a member of the Insured's Board of Directors."

July 12, 2002 DL
Date

_____
Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000167

ENDORSEMENT NO. 20

This endorsement, effective 12:01 A.M. December 24, 2002

forms a part of Policy No.: 5469358

issued to Les Placements CMI Inc. and/or Total Containment Inc.

by COMMERCE & INDUSTRY INSURANCE COMPANY OF CANADA

for AON Reed Stenhouse Inc.

RETURN PREMIUM: $125,844.00 US

In consideration of a return premium of $125,844.00 US, it is hereby understood and agreed that the policy
is cancelled.

January 20, 2003  DL/ka
Date

Commerce & Industry Insurance Company of Canada

CONFIDENTIAL
C&I 000168

**EXHIBIT B**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| TOTAL CONTAINMENT, INC | : | CHAPTER 11 |
| | : | |
| DEBTOR | : | BANKR. NO. 04:13144(BIF) |
| | : | |
| | : | **Hearing Date: December 13, 2004** |
| | : | **Time: 9:30 a.m.** |
| | : | **Courtroom #2** |
| | : | **United States Courthouse** |
| | : | **900 Market St.** |
| | : | **Philadelphia, PA 19107** |

## O R D E R

AND NOW, this         day of               , 2004, upon consideration of the Motion of May's

Distributing Company, Inc. ("Mays") by and through its local counsel, DiDonato and

Winterhalter, P.C., it is hereby:

ORDERED, that the relief from the automatic stay sought in this Motion be granted with

respect to Mays right to proceed with the prosecution of its damage claims in the Alabama State

Court civil litigation limiting any recovery to insurance proceeds, if any exist.

*Order entered by default*

BY THE COURT:

_____
BRUCE I. FOX
U.S. BANKRUPTCY JUDGE

Interested Parties on the following page

Paul J. Winterhalter, Esquire
DiDonato & Winterhalter, P.C.
1818 Market Street, Suite 3520
Philadelphia, PA 19103

Kevin P. Callahan, Esquire
United States Trustee
The Curtis Center
601 Walnut Street
Suite 950-W
Philadelphia, PA 19106

George L. Miller, CPA
Miller Coffey Tate, LLP
8 Penn Center, Suite 950
1628 J.F.K. Boulevard
Philadelphia, PA 19103

**EXHIBIT C**



**OBERMAYER**
REBMANN MAXWELL & HIPPEL LLP
*Attorneys At Law*

*William K. Pelosi, Esquire*
*Direct Dial: (215) 665-3222*

September 6, 2006

**VIA FEDERAL EXPRESS**
Paul Smolinsky
Jackson & Campbell
1120 Twentieth Street, N.W.
South Tower
Washington, D.C. 20036-3437

Re:   May's Distributing Co., Inc., et al. v. Total Containment Inc., et al.

Dear Mr. Smolinsky:

We represent George L. Miller as Chapter 11 Trustee for the estate of Total Containment Inc. ("TCI"). Commerce & Industry Company of Canada has insured TCI under the following policy.

| Commerce & Industry Insurance Company of Canada | 546-85-09 |
|---|---|

We hereby tender and/or retender for defense and indemnity, under the above policies and any other applicable policies for which you are the insurer, the above referenced matter. The complaint in that matter and a recent copy of the docket accompanies this letter. **Please note that it appears from the docket that the answer in this matter is due on Monday, September 11, 2006.** Plaintiffs' counsel has agreed to a 30 day extension to answer (Plaintiffs' counsel, Jack Drake, can be reached at (205) 328-9576); however, the insured does not have counsel admitted to practice in the Federal District Court for the Middle District of Alabama and so has been unable to file a motion for an extension with the Court. Commerce & Industry Company of Canada should immediately retain counsel to take all steps necessary to preserve TCI's rights in the attached litigation.

Please do not hesitate to call me if you have questions regarding the above.

Very truly yours,

*William K Pelosi*

William K. Pelosi
For:  OBERMAYER REBMANN MAXWELL & HIPPEL, LLP

WKP/sjm

### Over a Century of Solutions

| Philadelphia | Harrisburg | Pittsburgh | Cherry Hill | Wilmington |
|---|---|---|---|---|
| Pennsylvania | Pennsylvania | Pennsylvania | New Jersey | Delaware |

4080266

**U.S. District Court**
**Alabama Middle District (Montgomery)**
**CIVIL DOCKET FOR CASE #: 2:06-cv-00702-MEF-DRB**

May's Distributing Company, Inc. v. Total Containment, Inc. et al          Date Filed: 08/08/2006
Assigned to: Hon. Chief Judge Mark E. Fuller                              Jury Demand: None
Referred to: Honorable Delores R. Boyd                                    Nature of Suit: 890 Other Statutory Actions
Case in other court: Bullock County Circuit Court, CV-03-00002            Jurisdiction: Federal Question
Cause: 28:1453 Class Action Fairness Act

**Plaintiff**

**May's Distributing Company, Inc.**                 represented by    **Christina Diane Crow**
*individually and as class representative of all*                     Jinks Daniel & Crow LLC
*those gasoline station owners similarly*                             PO Box 350
*situated*                                                           Union Springs, AL 36089-0350
                                                                     334-738-4225
                                                                     Fax: 334-738-4229
                                                                     Email: ccrow@jinkslaw.com
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*

                                                                     **L. Cooper Rutland, Jr.**
                                                                     Rutland & Braswell
                                                                     P. O. Box 551
                                                                     Union Springs, AL 36089-0551
                                                                     (334) 738-4770
                                                                     Fax: 738-4774
                                                                     Email: randb@ustconline.net
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*

                                                                     **Lynn W. Jinks, III**
                                                                     Jinks Daniel & Crow LLC
                                                                     PO Box 350
                                                                     Union Springs, AL 36089-0350
                                                                     334-738-4225
                                                                     Fax: 334-738-4229
                                                                     Email: ljinks@jinkslaw.com
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*

                                                                     **Nicola Thompson Drake**
                                                                     Whatley Drake & Kallas, LLC
                                                                     PO Box 10647
                                                                     Birmingham, AL 35202-0647
                                                                     205-328-9576
                                                                     Fax: 205-328-9669
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*

**Russell J. Drake**
Whatley Drake & Kallas, LLC
PO Box 10647
Birmingham, AL 35202-0647
205-328-9576
Fax: 328-9669
Email: jdrake@whatleydrake.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley L. Laird**
Laird Baker & Blackstock PC
501 North Main Street
Opp, AL 36467
(334) 493-9716
Fax: 493-9715
Email: wes@laird-baker-blackstock.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Total Containment, Inc.**
*a Pennsylvania corporation*

represented by **Total Containment, Inc.**
c/o George L. Miller, Trustee
Miller, Coffey, Tate, LLP
1628 John F. Kennedy Blvd.
Suite 950
Philadelphia, PA 19103
PRO SE

**Defendant**

**Dayco Products, Inc.**

represented by **Brian Taggart Mosholder**
Carpenter Prater Ingram & Mosholder LLP
4121 Carmichael Road
303 Sterling Centre
Montgomery, AL 36106
334-213-5600
Fax: 213-5650
Email: bmosholder@carpenterfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Donna M. Borrello**
Adams & Reese -- LA
4500 One Shell Square
New Orleans, LA 70139
US
504-581-3234

Fax: 504-566-0210
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James E. Blazek**
Adams & Reese -- LA
4500 One Shell Square
New Orleans, LA 70139
US
504-581-3234
Fax: 504-566-0210
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph Terrace Carpenter**
Carpenter Prater Ingram & Mosholder LLP
4121 Carmichael Road
303 Sterling Centre
Montgomery, AL 36106
334-213-5600
Fax: 213-5650
Email: jcarpenter@carpenterfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kimberly Wallace Sayoc**
Lippes Silverstein Mathias Wexler LLP
700 Guarantee Building
28 Church Street
Buffalo, NY 14202-3950
716-853-5100
Fax: 716-853-5199
Email: ksayoc@lippes.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Larry Shane Seaborn**
Penn & Seaborn LLC
PO Box 688
Clayton, AL 36016
334-775-9778
Fax: 775-9779
Email: sseaborn1@yahoo.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Myron C. Penn**
Penn & Seaborn LLC
PO Box 688
Clayton, AL 36016

334-775-9778
Fax: 775-9779
Email: myronpenn28@hotmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nathan Craig Prater**
Carpenter Prater Ingram & Mosholder LLP
4121 Carmichael Road
Suite 303
Montgomery, AL 36106
(334) 213-5600
Fax: 213-5650
Email: nprater@carpenterfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard B. Eason, II**
Adams & Reese -- LA
4500 One Shell Square
New Orleans, LA 70139
US
504-581-3234
Fax: 504-566-0210
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Mark IV Industries. Ltd.**
*a Canadian corporation*

represented by **Brian Taggart Mosholder**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Donna M. Borrello**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James E. Blazek**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph Terrace Carpenter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kimberly Wallace Sayoc**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Larry Shane Seaborn**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Myron C. Penn**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nathan Craig Prater**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard B. Eason, II**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Ticona Polymers, Inc.**
*a Delaware corporation*

represented by **Alan Taylor Rogers**
Balch & Bingham
PO Box 306
Birmingham, AL 35201-0306
205-251-8100
Fax: 266-8798
Email: arogers@balch.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jon Avins**
Kasowitz, Benson, Torres & Frieman LLP
1633 Broadway
New York, NY 10019
212-506-1917
Fax: 212-506-1800
Email: javins@kasowitz.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Paul Anthony Clark**
Balch & Bingham
PO Box 78
2 Dexter Avenue
Montgomery, AL 36101-0078
334-834-6500

Fax: 269-3155
Email: pclark@balch.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Paul Michael O'Connor, III**
Kasowitz Benson Torres & Friedman LLP
1633 Broadway
New York, NY 10019
212- 507-1723
Fax: 212-506-1800
Email: poconnor@kasowitz.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robin Garrett Laurie**
Balch & Bingham
PO Box 78
2 Dexter Avenue
Montgomery, AL 36101-0078
334-834-6500
Fax: 269-3155
Email: rlaurie@balch.com
*TERMINATED: 08/22/2006*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Seth Alan Moskowitz**
Kasowitz Benson Torres & Friedman LLP
1633 Broadway
New York, NY 10019
212-506-1757
Fax: 212-506-1800
Email: smoskowitz@kasowitz.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Walter B. Calton**
Calton & Rutland LLC
PO Box 696
Eufaula, AL 36027-0696
334-687-2407
Fax: 687-2466
Email: wcalton@bellsouth.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Cleveland Tubing, Inc.**
*a Tennessee corporation*

represented by **James H. McLemore**
Capell Howard PC

PO Box 2069
Montgomery, AL 36102-2069
334-241-8058
Fax: 323-8888
Email: jhm@chlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James T. Williams, IV**
Miller & Martin
832 Georgia Avenue
Volunteer Building, Suite 1000
Chattanooga, TN 37402-2289
423-756-6600
Fax: 423-785-8480
Email: jwilliams@millermartin.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lynda Motes Hill**
Miller & Martin
832 Georgia Avenue
Volunteer Building, Suite 1000
Chattanooga, TN 37402-2289
423-785-6600
Fax: 423-785-8480
Email: lhill@millermartin.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas Harold Pinkley, Jr.**
Miller & Martin LLP
1200 First Union Tower
150 Fourth Avenue North
Nashville, TN 37219-2433
615-744-8548
Fax: 615-744-8643
Email: hpinkley@millermartin.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**
**Underwriters Laboratories, Inc.**
*a Delaware corporation*

represented by **Brent Arnold Talbot**
Chaffee McCall Phillips Toler & Sarpy
1100 Poydras Street
Suite 2300
New Orleans, LA 70163-2300
504-585-7000
Email: talbot@chaffe.com
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Charles Donald Marshall, III**
Chaffee McCall Phillips Toler & Sarpy
1100 Poydras Street
Suite 2300
New Orleans, LA 70163-2300
504-585-7000
Email: marshall@chaffe.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Olinde**
Chaffee McCall Phillips Toler & Sarpy
1100 Poydras Street
Suite 2300
New Orleans, LA 70163-2300
Email: olinde@chaffe.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Stephen Rooth**
Chaffee McCall Phillips Toler & Sarpy
1100 Poydras Street
Suite 2300
New Orleans, LA 70163-2300
504-585-7226
Fax: 504-544-6088
Email: rooth@chaffe.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Walter Edgar McGowan**
Gray Langford Sapp McGowan Gray &
Nathanson
PO Box 830239
Tuskegee, AL 36083-0239
334-727-4830
Fax: 334-727-5877
Email: wem@glsmgn.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/08/2006 | 1 | NOTICE OF REMOVAL by Dayco Products, Inc., Mark IV Industries. Ltd. from Circuit Court of Bullock County, AL, case number CV-03-02. ( Filing fee $ 350.00 receipt number 111137) (Attachments: # 1 complaint; # 2 First amended complaint; # 3 Second amended complaint; # 4 Third amended complaint; # 5 Fourth Amended |

| | | |
|---|---|---|
| | | complaint; # 6 Dayco & Mark IV Ind's m sum jgm; # 7 Dayco and Mark IV m sum jgm Ex 1; # 8 Dayco & Mark IV m sum jgm Ex 2; # 9 Dayco & Mark IV m sum jgm Ex 3; # 10 certificate of filing notice of removal in state court)(djy, ) Modified on 8/11/2006 to reflect filing date as 8/8/06 not 8/11/06 qc/, ). (Entered: 08/11/2006) |
| 08/08/2006 | | FOURTH AMENDED COMPLAINT and CLASS DEFINITION against Dayco Products, Inc., Mark IV Industries. Ltd., Ticona Polymers, Inc., Cleveland Tubing, Inc., Underwriters Laboratories, Inc., Total Containment, Inc. filed by May's Distributing Company, Inc. (NO PDF Document attached-See Docket Entry 1)(djy, ) (Entered: 08/11/2006) |
| 08/08/2006 | | DEMAND for Trial by Jury by Dayco Products, Inc., Mark IV Industries. Ltd., May's Distributing Company, Inc. (NO PDF Document attached-See Docket Entry 1) (djy, ) (Entered: 08/11/2006) |
| 08/08/2006 | | MOTION for Summary Judgment by Dayco Products, Inc., Mark IV Industries. Ltd. (NO PDF document attached-See Docket Entry 1) (djy, ) (Entered: 08/11/2006) |
| 08/08/2006 | | CERTIFICATE by Dayco Products, Inc., Mark IV Industries. Ltd. re 1 Notice of Removal, (NO PDF document attached to this notice-See Docket Entry 1) (djy, ) (Entered: 08/11/2006) |
| 08/08/2006 | 2 | NOTICE of filing by Dayco Products, Inc., Mark IV Industries. Ltd. to state court re filing of 1 Notice of Removal(djy, ) (Entered: 08/11/2006) |
| 08/11/2006 | | NOTICE of Docket Text Correction re 1 Notice of Removal to reflect filing date as 8/8/06 not 8/11/06 (NO PDF document attached to this notice) (djy, ) (Entered: 08/11/2006) |
| 08/11/2006 | | NOTICE of Assignment to Magistrate Judge MAILED to counsel for Dayco Products, Inc., Mark IV Industries. Ltd., Ticona Polymers, Inc., Cleveland Tubing, Inc., Underwriters Laboratories, Inc., May's Distributing Company, Inc. (NO PDF document attached to this notice)(djy, ) (Entered: 08/11/2006) |
| 08/11/2006 | 3 | ANSWER to Amended Complaint *Number Four* by Dayco Products, Inc., Mark IV Industries. Ltd..(Mosholder, Brian) (Entered: 08/11/2006) |
| 08/14/2006 | 4 | ANSWER to Amended Complaint by Cleveland Tubing, Inc..(Hill, Lynda) (Entered: 08/14/2006) |
| 08/14/2006 | 5 | ORDER TO SHOW CAUSE as to why Motion for Summary Judgment filed by Dayco Products, Inc., Mark IV Industries. Ltd., should not be granted; Show Cause Response due by 9/15/2006; directing counsel for the parties to execute and MAIL (NOT TO BE FILED ELECTRONICALLY) to the Clerk by 9/1/2006 either the attached form for consent to the Mag Judge's jurisdiction or the attached form for reassignment of this case to the District Judge, as further set out in order. Signed by Judge Delores R. Boyd on 8/14/06. (djy, ) (Entered: 08/14/2006) |
| 08/15/2006 | 6 | Joint MOTION for Extension of Time to File Response/Reply *to Plaintiff's Fourth Amended Complaint* by Ticona Polymers, Inc.. (Laurie, Robin) (Entered: 08/15/2006) |
| 08/15/2006 | | ***Attorney Robin Garrett Laurie for Ticona Polymers, Inc. added pursuant to 6 Motion. (cc, ) (Entered: 08/16/2006) |
| | | |

| 08/16/2006 | | NOTICE of Assignment to Magistrate Judge mailed to attorney for Ticona Polymers, Inc. Robin Garrett Laurie. (cc, ) (Entered: 08/16/2006) |
|---|---|---|
| 08/16/2006 | 7 | ORDER granting 6 Motion for Extension of Time to Respond to Plaintiff's Fourth Amended Complaint to the extent that that Defendant Ticona Polymers, Inc.'s time to answer Plaintiff's Fourth Amended Complaint is extended up to and including September 21, 2006. Signed by Judge Delores R. Boyd on 8/16/2006. (cc, ) (Entered: 08/16/2006) |
| 08/16/2006 | 8 | MOTION to Withdraw as Attorney by Ticona Polymers, Inc.. (Laurie, Robin) (Entered: 08/16/2006) |
| 08/16/2006 | 9 | Case reassigned to Judge Mark E. Fuller and Delores R. Boyd. Judge Delores R. Boyd no longer assigned to the case as presiding judge. (cc, ) (Entered: 08/16/2006) |
| 08/16/2006 | 10 | ANSWER to Fourth Amended Complaint and Class Definition by Underwriters Laboratories, Inc.(cc, ) (Entered: 08/17/2006) |
| 08/17/2006 | 11 | Summons Issued; summons, Notice of Removal, Notice of Filing Notice of Removal, Fourth Amended Complaint & Motion for Summary Judgment mailed by CMRRR to Total Containment, Inc. (cc, ) (Entered: 08/17/2006) |
| 08/22/2006 | 12 | ORDER granting 8 Motion for Robin Laurie to Withdraw as Attorney. . Signed by Judge Mark E. Fuller on 8/22/06. (djy, ) (Entered: 08/22/2006) |
| 08/22/2006 | | *** Attorney Robin Garrett Laurie terminated pursuant to order entered 8/22/06 (NO PDF Document attached to this notice). (djy, ) (Entered: 08/22/2006) |
| 08/22/2006 | 13 | Motion for Seth A. Moskowitz to Appear Pro Hac Vice ( Filing fee $ 20.00 receipt number 111258.) by Ticona Polymers, Inc. (Attachments: # 1 Certificate of Good Standing)(cc, ) (Entered: 08/23/2006) |
| 08/22/2006 | 14 | Motion for Paul Michael O'Connor to Appear Pro Hac Vice ( Filing fee $ 20.00 receipt number 111258.) by Ticona Polymers, Inc. (Attachments: # 1 Certificate of Good Standing)(cc, ) (Entered: 08/23/2006) |
| 08/22/2006 | | Mail Returned as Undeliverable. 5 Order mailed to Total Containment, Inc. returned from the U. S. Postal Service with the following notation, "Not Deliverable as Addressed, Unable to Forward." (dmn) (Entered: 08/24/2006) |
| 08/23/2006 | 15 | Motion for Lynda M. Hill to Appear Pro Hac Vice (Filing fee paid $20.00, receipt number 111266) by Cleveland Tubing, Inc. (Attachments: #(1) Certificate of Good Standing) (dmn) (Entered: 08/24/2006) |
| 08/23/2006 | 16 | Motion for James T. Williams to Appear Pro Hac Vice (Filing fee paid $20.00 receipt number 111266) by Cleveland Tubing, Inc. (Attachments: #(1) Certificate of Good Standing) (dmn) (Entered: 08/24/2006) |
| 08/24/2006 | | Mail Returned as Undeliverable. 7 Order mailed to Total Containment, Inc. returned from the U. S. Postal Service with the following notation, "Not Deliverable as Addressed, Unable to Forward." (dmn) (Entered: 08/24/2006) |
| 08/24/2006 | 17 | Motion for T. Harold Pinkley, Jr. to Appear Pro Hac Vice (Filing fee $20.00 paid; receipt number 111285) by Cleveland Tubing, Inc. (Attachments: #(1) Certificate of Good Standing) (dmn) (Entered: 08/25/2006) |

| | | |
|---|---|---|
| 08/24/2006 | 18 | Return Receipt Card showing service of summons, Notice of Removal, Notice of Filing Notice of Removal, Fourth Amended Complaint & Motion for Summary Judgment signed by N. Morty (name illegible) for Total Containment, Inc. served on 8/21/2006, answer due 9/11/2006. (dmn) (Entered: 08/25/2006) |
| 08/25/2006 | 19 | ORDER granting 15 Motion for Leave for Lynda M. Hill to Appear Pro Hac Vice, granting 16 Motion for Leave James T. Williams to Appear Pro Hac Vice, granting 17 Motion for Leave for T. Harold Pinkley, Jr. to Appear Pro Hac Vice, granting 13 Motion for Leave for Seth A. Moskowitz to Appear Pro Hac Vice, and granting 14 Motion for Leave for Paul Michael O'Connor to Appear Pro Hac Vice . Signed by Judge Mark E. Fuller on 8/25/2006. (cb, ) (Entered: 08/25/2006) |
| 08/25/2006 | 20 | ORDER that the Rule 26(f) report containing the discovery plan shall be filed as soon as practicable but not later than 9/15/2006. Signed by Judge Mark E. Fuller on 8/25/2006. (cb, ) (Entered: 08/25/2006) |
| 08/28/2006 | | Documents addressed to Total Confinement, Inc. that were returned by the U. S. Postal Service have been remailed to Total Containment, Inc. c/o George L. Miller. (dmn) (Entered: 08/28/2006) |
| 08/28/2006 | 26 | Motion for Charles D. Marshall, III to Appear Pro Hac Vice (Filing fee paid $20.00, receipt number 111309) by Underwriters Laboratories, Inc. (dmn) (Entered: 08/29/2006) |
| 08/28/2006 | 27 | Motion for John F. Olinde to Appear Pro Hac Vice (Filing fee paid $20.00, receipt number 111309) by Underwriters Laboratories, Inc. (dmn) (Entered: 08/29/2006) |
| 08/28/2006 | 28 | Motion for Robert S. Rooth to Appear Pro Hac Vice (Filing fee paid $20.00, receipt number 111309) by Underwriters Laboratories, Inc. (dmn) (Entered: 08/29/2006) |
| 08/29/2006 | 21 | MOTION to Remand by May's Distributing Company, Inc.. (Drake, Russell) (Entered: 08/29/2006) |
| 08/29/2006 | 22 | BRIEF/MEMORANDUM in Support re 21 MOTION to Remand filed by May's Distributing Company, Inc.. (Drake, Russell) (Entered: 08/29/2006) |
| 08/29/2006 | 23 | NOTICE by May's Distributing Company, Inc. re 22 BRIEF/MEMORANDUM in Support, 21 MOTION to Remand OF FILING (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit E)(Drake, Russell) (Entered: 08/29/2006) |
| 08/29/2006 | 24 | MOTION to Stay re 20 Order, Set Deadlines ALL DEADLINES AND TO RELIEVE THE PARITES OF THE RULE 26(f) MEETING AND THE NECESSITY OF FILING A REPORT by May's Distributing Company, Inc.. (Drake, Russell) (Entered: 08/29/2006) |
| 08/29/2006 | 25 | Motion to Appear Pro Hac Vice by Dayco Products, Inc. (Attachments: #(1) Exhibit Blazek certificate of good standing; #(2) Exhibit Borello certificate of good standing; # (3) Exhibit Eason certificate of good standing)(Mosholder, Brian) [Modified on 8/31/2006 to replace the pdf. The original pdf was not in the proper format. The names/words were repeating.-DMN] (Entered: 08/29/2006) |
| 08/29/2006 | | Mail Returned as Undeliverable. 12 Order mailed to Total Confinement, Inc. returned by the U. S. Postal Service with the following notation, "Not Deliverable as Addressed, Unable to Forward." Document remailed on 8/30/2006 to current address noted on the docket for Total Confinement, Inc. (dmn) (Entered: 08/30/2006) |

| 08/30/2006 | 29 | ORDER granting 26 Motion for Charles D. Marshall, III to Appear Pro Hac Vice, granting 27 Motion for John F. Olinde to Appear Pro Hac Vice, granting 28 Motion for Robert S. Rooth to Appear Pro Hac Vice. Signed by Judge Mark E. Fuller on 8/30/2006. (dmn) (Entered: 08/30/2006) |
|---|---|---|
| 08/30/2006 | 30 | ORDER granting 24 Motion to Stay all deadlines, etc. Signed by Judge Mark E. Fuller on 8/30/06. (vma, ) (Entered: 08/30/2006) |
| 08/30/2006 | 31 | ORDER re 21 MOTION to Remand filed by May's Distributing Company, Inc., Response to Motion due by 9/14/2006. Reply Brief due by 9/21/2006. Signed by Judge Mark E. Fuller on 8/30/06. (vma, ) (Entered: 08/30/2006) |
| 08/31/2006 | 32 | NOTICE of Correction re 25 Motion to Appear Pro Hac Vice. This notice is docketed to enter the corrected pdf of the referenced document into the record. The original pdf was not in proper format. The names/words were repeating. (Attachments: #(1) Corrected pdf of Motion for Pro Hac Vice Admission of Counsel) (dmn) (Entered: 08/31/2006) |
| 08/31/2006 | 33 | Motion for James E. Blazek, Richard Eason, II, and Donna Borrello to Appear Pro Hac Vice (Filing fees paid $60.00 receipt number 111351) by Dayco Products, Inc., Mark IV Industries. Ltd. (Attachments: #(1) Certificate of Good Standing for James E. Blazek; #(2) Certificate of Good Standing for Richard Eason, II; #(3) Certificate of Good Standing for Donna Borrello) (dmn) (Entered: 09/05/2006) |
| 09/06/2006 | 34 | MOTION to Withdraw as Attorney by Dayco Products, Inc., Mark IV Industries. Ltd.. (Prater, Nathan) (Entered: 09/06/2006) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 09/06/2006 14:01:36 | | |
| PACER Login: | or0147 | Client Code: | 68632-001 |
| Description: | Docket Report | Search Criteria: | 2:06-cv-00702-MEF-DRB |
| Billable Pages: | 6 | Cost: | 0.48 |

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| MAY'S DISTRIBUTING COMPANY, INC., ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION NO. |
| | ) | |
| vs. | ) | 2:06cv702-DRB *MEF* |
| | ) | |
| TOTAL CONTAINMENT, INC., ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

### SUMMONS

(Issued pursuant to Rule 4 of the
Federal Rules of Civil Procedure
or other appropriate laws)

TO DEFENDANT:  Total Containment Inc.
c/o George L. Miller, Trustee
Miller, Coffey, Tate, LLP
1628 John F. Kennedy Blvd.
Suite 950
Philadelphia, PA 19103

YOU ARE HEREBY SUMMONED and required to serve upon Plaintiff's Attorney, Russell Jackson Drake, Whatley, Drake & Kallas, LLC, 2323 2nd Avenue North, Birmingham, Alabama 35203, an answer to the complaint which is herewith served upon you, within *20 days* after service of this summons upon you, exclusive of the day of service. IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT. You MUST also file your answer with the Clerk of this Court within a reasonable period of time after service.

*Debra P. Hackett*
_____
Clerk

*Charlene Campbell*
_____
By:  Deputy Clerk

*8-11-06*
_____
Date

## RETURN OF SERVICE

Date

<u>Service of the Summons and Complaint was made by me</u>
[¹]

Name of Server (PRINT)                    Title

*Check one box below to indicate appropriate method of service*

☐    Served personally upon the defendant.  Place where served:

☐    Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with who the summons and complaint were left:

☐    Returned unexecuted:

■    Other (specify):
     Certified Mail

## STATEMENT OF SERVICE FEES

TRAVEL                SERVICES                    TOTAL

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____
            Date                          Signature of Server

                                          _____
                                          Address of Server

_____
[¹] As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

1315
pigs.

IN THE CIRCUIT COURT OF BULLOCK COUNTY, ALABAMA

| | | |
|---|---|---|
| MAY'S DISTRIBUTING COMPANY, INC., ET AL., | ) ) ) | |
| Plaintiffs , | ) ) | Civil Action No. 03-02 |
| vs. | ) ) | |
| TOTAL CONTAINMENT, INC., ET AL., | ) ) | |
| Defendants. | ) | |

## FOURTH AMENDED COMPLAINT AND CLASS DEFINITION

### Parties

1.     Plaintiff, May's Distributing Company, Inc. ("May's") is an Alabama with its principle place of business at 102 Martin Luther King Blvd., Union Springs, Bullock County, Alabama. May's Distributing Company, Inc. distributes oil and gasoline products and operates convenience stores and motor fuel dispensing facilities, in Montgomery and Union Springs Alabama. May's brings this suit individually and on behalf of all similarly situated motor fuel dispensing facility owners.

2.     Defendant, Total Containment, Inc. ("TCI") is a Pennsylvania corporation which did business in the State of Alabama at all times relevant to this lawsuit, but has since gone bankrupt.   TCI manufactured, sold and distributed defectively designed and tested underground thermoplastic flexible pipe ("Enviroflex pipe" or "flex pipe") for use in TCI-designed gas conveying systems at motor fuel dispensing facilities.

3.     Defendant, Dayco Products, Inc. ("Dayco") designed, and from 1990 to 1997 manufactured, the part of the flex pipe at issue here—the primary inner pipe (of a layered pipe design)—sold as part of the "Enviroflex, Omniflex and Monoflex Systems" for the conveyance of gasoline from underground storage tanks to the consumer at the dispenser.

4.     Defendant, Mark IV Industries, Ltd. ("Mark IV") is a Canadian corporation doing business in the State of Alabama. Mark IV is the parent company of Defendant, Dayco Products, Inc.

5.     Defendant, Ticona Polymers, Inc. ("Ticona") is a Delaware corporation doing business in the State of Alabama.   Ticona supplies a polymer used in the manufacture of the flex pipe.

6.     Defendant, Cleveland Tubing, Inc. ("CTI") is a Tennessee corporation doing business in the State of Alabama. CTI manufactured component parts of the flexible pipe sold

by TCI, including but not limited to the primary inner pipe (of a layered design) from 1990 through 1999.

7.    Defendant, Underwriters Laboratories, Inc. ("UL") is a Delaware corporation doing business in the State of Alabama. UL developed a testing protocol for the primary hose which carries gasoline from the underground storage tank to the consumer at the pump. UL then gave the flex pipe its "UL Listing," certifying that the flex pipe had passed its safety and efficacy testing.

### Jurisdiction and Venue

8.    This Court has jurisdiction of this case pursuant to § 12-11-30 of the Code of Alabama.

9.    Defendants do business directly, indirectly or by agent in Alabama, including in this Circuit.

10,    Venue is proper in this Court pursuant to Rule 82, Ala.R.Civ.P. and Code of Alabama § 6-3-7.

### Statement of Facts

11.    In 1988, Defendants TCI  and Dayco began developing the flexible hose at issue here to be used in TCI's Enviroflex Retractable Double Wall Piping System ("Enviroflex System"), Omniflex Direct Bury Coaxial Piping System ("Omniflex System") and the Monoflex Piping System ("Monoflex System") for conveying gasoline from underground storage tanks to the customer at the gas dispenser. These systems were different from the steel pipe and fiberglass systems then on the market, as the piping used was flexible and easier to install and replace if necessary.

12.    The most important element in each of the TCI gas conveyance systems is the primary pipe that contacts the gasoline as it is conveyed to the dispenser. Dayco was responsible for the design and material selection of a number of similar primary pipes and manufactured them as well, until ending its relationship with TCI in 1997.  The three systems—Enviroflex, Monoflex and Omniflex—employ a variety of sizes and thicknesses of primary pipe, but the materials of the pipe are the same and each is defective.

13.    To increase sales of the Enviroflex system, particularly to major oil companies, it was necessary to obtain a "UL listing" from Defendant, UL, certifying the safety and efficacy of the gasoline-carrying flex pipe. Obtaining the listing was a high priority for Dayco and TCI.

14.    The entire gas conveying systems—including all the sumps and component parts—were not tested or certified by UL as safe and effective. Instead, only the primary pipe which conveys the gasoline was tested. This was done to hasten obtaining the UL Listing.

15.    UL designed and conducted tests that set an extremely low threshold for the safety and quality of the flex pipe. UL's testing allowed pipe that is highly permeable to gas

2

and susceptible to degradation and elongation problems caused by exposure to moisture and gasoline to pass and be certified as "UL Listed."

16.     For example, instead of tolerating no permeation of gas through the gas conveying inner pipe at all—a zero permeation standard—the standard was increased to 1%. Ignoring the real world realities that a gas station and its gasoline conveyance system will be exposed to moisture and to gasoline, UL allowed just the inner layer of the gas conveying pipe—not the outer layer—to be tested for resistance to gas. UL's testing contemplated that not only would the pipe never be touched by spilled gasoline, but that it would not be affected by gasoline vapors—even though the pipe is, by UL's standards, allowed to permeate at such a high rate.

17.     UL relied heavily on members of industry to develop its testing and standards for the gas conveying flex pipe. This reliance included taking the advice of an Industry Advisory Group with regard to testing and permeation levels. It also included having regular contact with manufacturers such as Dayco. Employees of Dayco visited UL, criticized UL's proposed testing programs and provided UL with "tips" on how to properly conduct testing.

18.     Dayco continued to be heavily involved in the development of various generations of various sizes of the TCI primary pipe used to convey the gasoline—each generation based on the same design. Dayco contracted with Cleveland Tubing, Inc. to manufacture the inner part of the defective primary pipe at issue in this case. CTI relied heavily on Dayco in setting up its manufacturing process for the TCI primary pipe. Dayco provided CTI with supervision, advice, and tips on the manufacturing process. Furthermore, CTI manufactured the TCI primary inner pipe for Dayco through 1997. CTI provided Dayco with defective inner pipes and experienced ongoing problems with quality assurance and performance. Dayco accepted the poor quality inner pipes and incorporated them in the primary hose nonetheless. Dayco failed to adequately supervise CTI to ensure that CTI was providing an inner pipe that would be free of defects and safe for the environment. CTI continued to manufacture TCI primary pipe through 1999.

19.     Between 1990 and 1997 the plastics and polymers Dayco selected varied, but each was defective from its inception because the materials chosen were highly permeable and unsuitable for the application of carrying gasoline. The reason for these plastics variations was that Dayco and TCI were in the business of selling a product that they knew was defective, yet, they continued to pocket profits as they attempted to find a design and materials that would actually contain and carry gasoline.

20.     One variation in materials was made when TCI and Dayco realized that the outer covering of the first generation of its primary pipe was not compatible with alcohol, which was detrimental to the integrity of the pipe when used with the many gasoline products containing alcohol.

21.     Another polymer switch was made because the polyester urethane outer cover of the pipe was subject to degradation from water in the environment and also microbial attack. The generation of pipe which was not resistant to moisture was so defective that TCI began a program to replace all that type of pipe. This "voluntary" pipe replacement program caused finger-pointing between TCI and Dayco regarding who was to blame and who was to pay.

3

22.     The voluntary replacement program dealt with, by TCI and Dayco's estimation, 3800 gas stations around the country and would cost $21 Million. Some, but not all of those gas stations had this early generation of primary pipe replaced. The major oil companies' stations like Exxon and Southland were made a priority by TCI and Dayco for replacement, but Mom and Pop operations were not a priority and did not have the defective pipe replaced.

23.     Despite any variations in the plastics chosen for the various generations of TCI primary piping, there is one constant—that the plastic materials chosen were defective and unsafe for the intended application of conveying gasoline. These plastics were overly permeable to gasoline and hydrocarbon liquids and gases. Since the layered pipe design did not provide any pathway for hydrocarbons to escape the entire primary pipe is susceptible to softening, swelling and losing its integrity. Soil humidity, liquids and gases cause plasticization—weakening—of the materials chosen by Dayco to build the primary pipe. This weakening leads to significant changes in the dimensional stability of the pipe. It also leads to pipe breaches. Polyurethane and polyethylene, the primary materials for the covers of the primary pipe, are known to be attacked by microbial bacterial. This microbial attack and hydrolysis can lead to pipe breaches. Thermoplastics such as those used in the primary pipe exhibit viscoelasticity—creep and stress relaxation. These properties lead to breaches of the plastic. The layered design of the primary pipe exacerbates modes of failure related to stress because the interlayer regions can act as crack initiators. Finally, when two or more plastics with varying thermal properties are joined together such as in the TCI primary pipe, changes in the environment temperature can lead to delamination of the layers.

24.     Even brand new TCI primary pipe has failed from the standpoint of its high permeability and its inherent defects in material selection. TCI, UL and Dayco's failure to take into account the environment in which the pipe would be conveying gasoline exacerbates the defective nature of the pipe and causes more serious failures such as microbial attack, hydrolysis, softening, weakening, changing of dimension, and delamination.

25.     In 2000, state regulators of underground storage tanks in Mississippi and Florida noticed increasing numbers of reported failures in flexible piping systems, particularly TCI's primary pipe, and made their findings public, including beginning a database to track the serious, reported leaks.

26.     Two of three gasoline distributing facilities owned and operated by Plaintiff, have or had, TCI primary pipe installed. The Montgomery gas station's TCI flex pipe was installed in 1997 and replaced periodically from 1997 until 2005, at which time it was re-fitted. The Union Springs TCI pipe was installed in 1994 and additional TCI pipe was installed in Union Springs in an upgrade in 1997. The Union Springs station has some TCI pipe under the concrete, even after the upgrade in 1997, but the Montgomery station had so many serious leaks, requiring repair, that all of the TCI pipe was removed.

27.     The four serious leaks at the Montgomery station alerted May's that the defective TCI primary pipe was failing in the ways that state regulators had warned about. The installer inspected and tested the TCI flexible pipe and discovered that, in addition to its inherent defect of allowing permeation of gas, that the pipe had failed to retain its shape and rigidity, by elongation, swelling and other defects, and had experienced rupture sufficiently sized to cause major leaks. May's has since had all that TCI primary pipe removed from its Montgomery station and that pipe is stored in its warehouse.

4

28.    Plaintiff May's suffered damages as a result of the defective TCI flexible pipe, including being forced to shut down the gas dispensers to allow repair work, and having gas pipe contractors seen at its store, causing damage to Plaintiff's reputation for providing high quality, unadulterated gasoline. Plaintiff was damaged by being forced to shut down its entire Montgomery gas distributing operation for a period of time sufficient to facilitate replacing all the defective TCI pipe.

29.    Members of the putative class who own and operate gas stations with TCI flex pipe are damaged in that the pipe's high permeation rate allows a constant escape of gas and gas vapors. Members of the putative class with the first generation of TCI flex pipe have been damaged in that they may have been left out of TCI and Dayco's voluntary pipe replacement program, therefore leaving pipe that even Defendants admit is defective, in the ground and posing a risk of environmental contamination and lost profits. Members of the putative class have been damaged in that they need to stop operations at their gas stations and convenience stores and replace the defective TCI flex pipe with pipe that is not constantly permeating gas and gas vapors. Such a total pipe replacement is costly in terms of paying a contractor to tear up the concrete to install new pipe, as well as in lost profits.

### Class Action Allegations

30.    The Plaintiff brings this action individually and on behalf of a class of those similarly situated entities and persons in the United States and Puerto Rico who own retail gasoline operations that use TCI pipe to convey gasoline from the underground storage tank to the dispenser.

31.    The class is so numerous that joinder of all members of the class is impracticable. TCI and Dayco's own estimation of the number of gas stations using just the initial generation of the pipe they admit is defective is 3800. In addition, after TCI sold the initial generation of pipe it admits is defective and needs to be replaced, sales of additional generations of TCI flex pipe, which is also defective, continued. The U.S. EPA reports that there are 257,143 regulated underground storage tanks. This figure represents the tanks in the ground—not the number of retail gas stations. Because of the wide use of flex pipe of various brands at motor fuel dispensing facilities over a substantial period of time in the United States, Plaintiff believes there are tens of thousands of members of the class.

32.    There are questions of law and fact common to the class, including,

- Whether all the various generations of primary pipe are defectively designed;

- Whether Defendants TCI, Dayco and CTI breached their duty to Plaintiff and the class to design, manufacture and sell a gasoline conveying hose that was safe for the environment and suitable for its intended use;

- Whether Dayco breached its duty to Plaintiff and the class to select materials for the various generations of primary hose that would be suitable to conveying gasoline;

- Whether CTI breached its duty to the class to manufacture components of the various generations of primary pipe that are consistent and not defective;

- Whether Dayco negligently supervised CTI and then negligently accepted and used defective CTI components in the manufacture of the various generations of primary pipe;

- Whether Dayco and UL breached their duty to Plaintiff and the class to adequately inform themselves about the real world conditions the flex pipe would operate under before undertaking the duties they did to design, test and certify the primary gas conveying pipe;

- Whether UL breached its duty to Plaintiff and the class to conduct testing that adequately ensures the safety and efficacy of the primary pipe for holding and conveying gasoline; and

- Whether the conduct of each defendant was negligent.

33.    The claims of the Plaintiff are typical of the claims of the putative class and are based on and arise out of the same facts constituting the negligent conduct of the defendants.

34.    The Plaintiff will adequately protect the interest of the class and has no interests antagonistic to any putative class member. Plaintiff's counsel is experienced in class action litigation, will vigorously pursue the litigation, has no conflicts which would impede counsels' adequacy and has the resources necessary to successfully litigate the action.

35.    The prosecution of separate actions by individual members of the putative class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the Defendants.

36.    A class action is superior to any other available method for the fair and efficient adjudication of this controversy.

37.    There will be no difficulty in the management of this action as a class action. The sole cause of action in this complaint is based on negligence. The law of the fifty (50) states is consistently the same for negligence except three (3) states recognize the defense of contributory negligence. Management of this class action at trial will present no particular difficulties. Jury charges and verdict forms can be tailored to fit this relatively simple set of facts and legal questions. The Court has available to it many management techniques, including special interrogatory verdicts and, if needed, bifurcation of the trial proceedings.

## CLASS DEFINITION

38.    Upon certification, the Class will consist of all retail gasoline distribution facilities in the United States and Puerto Rico where any generation of TCI primary flex pipe is, or was, installed and used for the conveyance of petroleum products.

## NEGLIGENCE

39.    Plaintiff adopts and incorporates the facts and allegations of the prior paragraphs.

40.    Each defendant had a duty to ensure that TCI flex pipe was designed, manufactured, tested, inspected and certified in a manner that rendered the pipe safe for its intended use and each defendant failed in their duty.

41.    As a proximate result of the defendants' negligence, the TCI flex pipe is defective and has failed to operate as it was intended. To prevent the ongoing permeation of gas and gas vapors from the primary pipe, Plaintiff and the Class must replace the defective TCI flex pipe, and will suffer damages as a result. These damages include the cost of parts and labor for the replacement of the TCI flex pipe, and lost profits and other costs associated with being forced to close the retail operation for the repiping. Each member of the class has suffered injury in that, the pipe in question has failed because it is inherently defective.

WHEREFORE, the premises considered, Plaintiff demands judgment against defendants for such compensatory damages as the evidence supports, costs of suit and such other and further relief as may be equitable.

### PLAINTIFF DEMANDS TRIAL BY STRUCK JURY

Respectfully Submitted,

*Nigel T. Dule*

Counsel for Plaintiff and the Putative Class

7

**OF COUNSEL:**

Lynn Jinks
Christy Crow
JINKS, DANIEL & CROW, LLC
Post Office Box 350
Union Springs, Alabama 36089

Russell Jackson Drake
Nicola Thompson Drake
WHATLEY DRAKE & KALLAS, L.L.C.
2323 Second Avenue North
P.O. Box 10647
Birmingham, AL 35202-0647
(205) 328-9576
Facsimile (205) 328-9669

Wesley L. Laird (LAI005)
LAIRD, BAKER & BLACKSTOCK, LLC
501 North Main Street
Opp, Alabama 36467

L. Cooper Rutland, Jr. (RUT010)
RUTLAND AND BRASWELL, LLC
208 North Prairie Street
Union Springs, AL 36089

## CERTIFICATE OF SERVICE

I certify that a copy of the above and foregoing has been served upon the following counsel by email and by placing a copy in the U.S. Mail on this the 13th day of July, 2006.

Attorneys for Ticona Polymers, Inc.
Alan T. Rogers, Esq.
BALCH & BINGHAM, LLP
Post Office Box 306
Birmingham, AL 35201-0306
arogers@balch.com

Paul A. Clark, Esq.
BALCH & BINGHAM, LLP
Post Office Box 78
Montgomery, AL 36101
pclark@balch.com

Paul M. O'Connor III, Esq.
Seth A. Moskowitz, Esq.
Jon Avins, Esq.
KASOWITZ, BENSON, TORRES & FRIEDMAN
1633 Broadway
New York, NY 10019-6799
poconnor@kasowitz.com
smoskowitz@kasowitz.com

Walter B. Calton, Esq.
Post Office Box 696
Eufaula, AL 36072-0696
wcalton@bellsouth.net

8

Attorneys for Cleveland Tubing, Inc.
James H. McLemore, Esq.
CAPELL & HOWARD, P.C.
150 South Perry Street (36104)
Post Office Box 2069
Montgomery, Alabama 36102-2069
jhm@chlaw.com

T. Harold Pinkley, Esq.
MILLER & MARTIN, LLP
1200 First Union Tower
150 Fourth Avenue North
Nashville, TN 37219
hpinkley@millermartin.com

Lynda M. Hill, Esq.
James Williams, Esq.
MILLER & MARTIN, PLLC
Suite 1000, Volunteer Bldg.
832 Georgia Avenue
Chattanooga, TN 37402
lhill@millermartin.com
jwilliams@millermartin.com

Attorneys for Dayco Products, Inc.
and Mark IV Industries, Ltd.
Joseph T. Carpenter Esq. (CAR038)
Nathan C. Prater, Esq.
Brian Mosholder, Esq.
John DeShazo, Esq.
CARPENTER, PRATER, INGRAM
& MOSHOLDER LLP
303 Sterling Centre
4121 Carmichael Road
Montgomery, AL 36106
jccarpenter@carpenterfirm.com
nprater@carpenterfirm.com
bmosholder@carpeterfirm.com
jdeshazo@carpenterfirm.com

Kimberly W. Sayoc, Esq.
LIPPES SILVERSTEIN MATHIAS &
WEXLER 700 Guaranty Building
28 Church Street
Buffalo, NY 14202-3950
ksayoc@lippes.com

L. Shane Seaborn, Esq.
Myron C. Penn, Esq.
PENN & SEABORN, LLC
Post Office Box 688
Clayton, AL 36106

Attorneys for Underwriters
Laboratories, Inc.
Walter E. McGowan, Esq.
GRAY, LANGFORD, SAPP,
MCGOWAN, GRAY &
NATHANSON
P.O. Box 830239
Tuskegee, AL 36083-0239
wem@glsmgn.com

Charles Donald, Marshall, III, Esq.
John Olinde, Esq.
Brent Arnold Talbot, Esq..
Robert S. Rooth, Esq.
CHAFFE McCALL, PHILLIPS, TOLER &
SARPY
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163
(504) 585-7000
talbot@chaffe.com
olinde@chaffe.com
marshall@chaffe.com
rooth@chaffe.com

9

James E. Blazek
Adams & Reese, LLP
One Shell Square
701 Poydras Street, Suite 4500
New Orleans, LA 70139

OF COUNSEL

10

**EXHIBIT D**



JACKSON & CAMPBELL

*A Professional Corporation*

ATTORNEYS AT LAW

1120 Twentieth Street, N.W.
South Tower
Washington, D.C. 20036-3437
202·457·1600
Fax: 202·457·1678
www.jackscamp.com

PAUL D. SMOLINSKY
202·457·4265
psmolinsky@jackscamp.com

September 20, 2006

**VIA EMAIL & FIRST-CLASS MAIL**

William K. Pelosi, Esq.
Obermayer, Rebmann Maxwell & Hippel, LLP
One Penn Center – 19th Floor
1617 John F. Kennedy Blvd.
Philadelphia, PA 19103-1895

   Re: *May's Distributing Co., Inc. v. Total Containment, Inc.*, No. 2:06-cv-00702 (M.D. Ala. removed Aug. 8, 2006).

Dear Mr. Pelosi:

  On behalf of our client, Commerce & Industry Insurance Company of Canada (C&I), we are writing in response to your letter dated September 6, 2006. In that letter, the Trustee for the bankruptcy estate of Total Containment, Inc. (TCI), requests a defense and indemnity for TCI in the matter referenced above.

  The matter was originally filed on January 3, 2003, in Alabama state court. In an order entered by default on December 14, 2004, the bankruptcy court modified the automatic stay under Bankruptcy Code §362 to permit the plaintiff to "proceed with the prosecution of its damage claims in the Alabama State Court civil litigation limiting any recovery to insurance proceeds, if any exist." C&I has issued four policies to TCI covering the period June 30, 1999, to December 24, 2002: (1) No. 546-85-09, effective June 30, 1999, to June 30, 2000; (2) No. 546-87-45, effective June 30, 2000, to June 30, 2001; (3) No. 546-89-97, effective June 30, 2001, to June 30, 2002; and (4) No. 546-93-58, effective June 30, 2002, to December 24, 2002.[1] C&I has no record of any request for a defense or indemnity from TCI with respect to this suit until your September 6, 2006, letter.

---

[1] The 2002 policy would have expired on June 30, 2003, but it was cancelled.

111 South Calvert Street
Baltimore, Maryland 21202
410·385·3330

200 A Monroe Street
Rockville, Maryland 20850
301·340·0450

8300 Boone Boulevard
Vienna, Virginia 22182
703·522·1330

# JACKSON & CAMPBELL, P.C.

*Attorneys and Counselors at Law*

William K. Pelosi
September 20, 2006
Page 2

C&I has determined that for business reasons, subject to a full reservation of rights, it will share in the defense of TCI's underlying liability in the lawsuit. C&I's understanding is that TCI will not be required to pay any judgment against it in this matter. Instead, the insurers may be required to pay any judgment, subject to their policy provisions. C&I further understands that the proceeds of the insurers' policies are not property of TCI's bankruptcy estate and that those proceeds are not available to satisfy creditors' claims against the bankruptcy estate. Accordingly, a judgment against TCI in this matter would have no impact on the bankruptcy estate but it may create potentially significant exposure for C&I and the other insurers.

By defending the liability, C&I has not agreed to cover TCI under any policy or made a determination regarding whether any policy provides coverage for the plaintiff's claims. C&I believes that TCI may not entitled to a defense and the plaintiff may not be entitled to recover under each policy for any damages it has suffered. Among other things, the policy requires that a claim be first made during the policy period. C&I has not been provided with any evidence that the plaintiff first made a claim against TCI during a policy period. In addition, each policy has a $100,000 self-insured retention and C&I has the right but not the duty to defend losses or claims within the self-insured retention. Underlying coverage may also exist. C&I has not received any information indicating that TCI has exhausted the retention or underlying coverage. There may be additional grounds, including several exclusions, for declining coverage and C&I reserves it right to raise them in the future. C&I also reserves its right to withdraw from defending TCI's liability in this matter at any time.

During our September 8, 2006, conversation, you indicated that although you expect C&I to provide a defense, you do not anticipate that the Trustee will have any further involvement in the lawsuit. It is also our understanding that you do not expect that any counsel C&I retains to defend TCI's liability will report to the Trustee. Our understanding is that C&I will be permitted to direct the defense even though it will assert that it may not have any obligation under the policy to pay any judgment in the plaintiff's favor.

C&I reserves any contractual, legal or equitable rights it may have now or in the future with respect to the policy. No action taken by, or on behalf of, C&I with respect to the suit constitutes an admission of liability, an admission of coverage under any policy or a waiver of any rights C&I or any other AIG-member company may have. Furthermore, C&I reserves the right to assert any available defenses to coverage of this or any other claim, modify its position or amend this letter as it deems necessary.

315321v1

JACKSON & CAMPBELL, P.C.

*Attorneys and Counselors at Law*

William K. Pelosi
September 20, 2006
Page 3

Please contact us if you have any questions.

Sincerely,

JACKSON & CAMPBELL, P.C.

Paul D. Smolinsky

cc:    Richard W. Bryan, Esq.

315321v1